IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————————

No. 26-1665

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

GREGG AMORE, in his official capacity as Secretary of State
of Rhode Island,

Defendant-Appellee

COMMON CAUSE, *et al.*,

Defendants-Intervenors-
Appellees

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

———————————————

UNITED STATES' OPPOSED MOTION TO EXPEDITE BRIEFING
UNDER INTERNAL OPERATING PROCEDURE VII(B)
EMERGENCY MOTION UNDER LOCAL RULE 27.0(B)
THIS MOTION REQUESTS RELIEF BY JULY 7, 2026

# INTRODUCTION

Pursuant to 28 U.S.C. 1657, First Circuit Local Rule 27.0(b), and First Circuit Internal Operating Procedure VII(B), plaintiff-appellant United States hereby respectfully requests that this Court expedite the briefing and argument date on this appeal because it raises an issue of urgency with regard to the security of elections in the United States.

This appeal is about the United States' ability under the Civil Rights Act of 1960 to investigate Rhode Island's compliance with federal law regarding voter registration under the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA). In passing the NVRA, Congress recognized the importance of properly maintained voter-registration systems in "increas[ing] the number of eligible citizens who register to vote in [federal] elections" and "protect[ing] the integrity of the electoral process." 52 U.S.C. 20501(b)(1) and (3). HAVA requires States to implement a single centralized computerized statewide voter registration list (SVRL), and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52

U.S.C. 21083(a)(1)(A) and (a)(2)(A). The district court's Order prohibits the United States from carrying out its investigation.

Rhode Island's next federal election is rapidly approaching, with primaries on September 1, 2026, and the general election on November 3, 2026. Weeks before September 1, the State will be mailing absentee and mail-in ballots to millions of Rhode Island voters, many of them potentially registered ineligible voters, fraudulent registrants, or individuals who should not have been registered. Even if resolution of this appeal only affects the integrity of the general election, Rhode Island voters need to know that that election is secure and that non-citizens, deceased, former residents, non-residents, and voters with multiple records are not registered to vote in that election.

Given this timeline, there is good cause to expedite the appeal. *See* 28 U.S.C. 1657(a). This case should be expedited, with resolution as soon as practicable, as a matter of fairness to all sides. Rhode Island's voters and elections officials need a quick answer. The Department of Justice regrets asking for such speedy work from this Court, but as this Motion details, this timing is not of United States' making.

The United States respectfully requests that the Court set a briefing schedule as follows:[1]

- United States' opening brief would be due on Wednesday, July 8, 2026;

- Response briefs would be due on Wednesday, July 29, 2026; and

- United States' reply brief would be due on Wednesday, August 5, 2026.

The United States also suggests that any *amicus curiae* briefs be due on the same day as the party an *amicus* supports. The United States also is willing to waive oral argument, despite the great importance of the issues here, to allow faster resolution of this case. Of course, the United States will participate in oral argument if the Court believes that the benefit of oral argument would outweigh the time concerns and would request that argument take place during the September 2026 sitting or at an earlier special hearing.

---

[1] The United States plans to move to consolidate this appeal with its appeals from the district courts' dismissals of the United States' Complaints in *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) (docketed as No. 26-1657), and *United States v. Bellows*, No. 1:25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026) (docketed as 26-1676). The United States is filing motions to expedite in all three appeals seeking the same briefing schedule.

Counsels for defendant-appellee Secretary of State Gregg Amore and for defendants-intervenors-appellees have informed the United States that they oppose the Motion to Expedite Briefing and intend to file an opposition.

## PROCEDURAL BACKGROUND

This is an appeal from the district court's Order in *United States v. Amore*, No. 25-cv-639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026), granting Secretary Amore's Motion to Dismiss the United States' Complaint based on Title III of the Civil Rights Act of 1960 (CRA).

1. The CRA was passed by Congress to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703. Under 52 U.S.C. 20705, "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper."

The NVRA, along with HAVA, contains provisions designed to help the federal government ensure that States are overseeing federal

elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3). Those statutes' requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B), 21083(a)(1)(A). In HAVA, Congress explicitly established standards for states' voting systems and statewide voter registration lists. 52 U.S.C. 21081, 21083.

Of highest importance to this litigation, HAVA requires states to implement a single centralized computerized SVRL, and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). This process includes removing "individuals," "registrant[s]," and "ineligible voters," who should not appear on the lists. 52 U.S.C. 21083(a)(2)(A)(i)-(iii). The Attorney General may also bring a civil action against any state to enforce HAVA's requirements. 52 U.S.C. 21111.

2. On September 8, 2025, the United States Department of Justice (the Department or DOJ) sent a letter to Secretary of State Gregg Amore,

- 7 -

requesting an unredacted copy of Rhode Island's SVRL "to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and the HAVA." *See Amore*, 2026 WL 1040637, at \*1-2 (citation omitted). Secretary Amore refused to provide the Attorney General with an unredacted electronic copy of Rhode Island's SVRL, instead offering to supply the DOJ with a copy of the State's publicly available list. *Id.* at \*3. Accordingly, on December 2, 2025, the DOJ brought suit, alleging that this refusal violated the CRA. *Ibid.*

On April 9, 2026, the district court entered an Order dismissing the United States' Complaint. *Amore*, 2026 WL 1040637, at \*6. The district court rejected the DOJ's Title III enforcement action on two grounds.

First, the district court concluded that the Attorney General's written demand under Section 303 of Title III must provide "a factual, not legal basis" because to "[t]o read 'basis' as meaning a legal basis would conflate that requirement with the required statement of the demand's 'purpose.'" *Amore*, 2026 WL 1040637, at \*5. The court held that the United States' demand was statutorily insufficient because it lacked "any factual allegations suggesting that Rhode Island may be violating the list maintenance requirements of the NVRA and HAVA, let alone the CRA."

*Ibid.*

Second, the district court held that, even if the Attorney General's demand had specified a sufficient basis, it would still have been inadequate because it "lack[ed] a legally sufficient purpose." *Amore*, 2026 WL 1040637, at \*6. In this respect, the court determined that "Title III's purpose is to enable the federal government to detect voting-related racial discrimination," *id.* at \*4, and further concluded that the purpose required in a demand for federal election records under Section 303 of Title III "must relate to a purpose of investigating violations of individuals' voting rights," *id.* at \*6. In the court's view, the Attorney General's stated purpose of ensuring compliance with the NVRA and HAVA did not do so. *Ibid.*

The United States appeals from the Order of Dismissal. The district court's rulings are contrary to the law as written and the facts of the case. An expedited appeal is necessary to secure the elections in Rhode Island, and permit Rhode Island the time to clean its voter rolls prior to the election this fall.

## ARGUMENT

The United States recognizes that it seeks a tight window for briefing and decision but urges that the Court should expedite the appeal because time is short, and Rhode Island voters deserve an answer from this Court on such a major issue. In the absence of a prompt resolution of the issue this appeal presents, irreparable harm will occur to voters of Rhode Island and the United States in enforcing laws designed to protect the integrity of elections. Indeed, other federal courts of appeals have expedited appeals in parallel cases brought by the United States demanding SVRLs under the CRA and raising similar issues. *See United States v. Benson*, No. 26-1225 (6th Cir. argued May 13, 2026); *United States v. Oregon*, No. 26-1231 (9th Cir. argued May 19, 2026); *United States v. Weber*, No. 26-1232 (9th Cir. argued May 19, 2026). Moreover, this Court routinely expedites appeals in election cases, given their time-sensitive nature. *See, e.g.*, *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 71 (1st Cir. 2001) (expediting appeal in case seeking to compel the holding of an election); *Uno v. City of Holyoke*, 72 F.3d 973, 978 (1st Cir. 1995) (expediting appeal in a Voting Rights Act case).

**First**, this appeal presents the important purely legal question of how a court is to adjudicate the United States' demand for federal election records to enforce the CRA and the NVRA.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). It provides that "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701 (formerly 42 U.S.C. 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying . . . by the Attorney General or his representative." 52 U.S.C. 20703. The written demand need only "contain

a statement of the basis and the purpose therefor." *Ibid.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

The district court erred in concluding that the United States' demand for Rhode Island's SVRL failed to state a sufficient basis and purpose. "[T]he factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226 (citation omitted). Courts may not inquire as "to the reasons why the Attorney General considers the records essential." *Ibid.* All that matters is whether the Attorney General provides the written "statement of the basis and the purpose" for the demand. 52 U.S.C. 20703. Here, the letter did so when it described the records requested and notified Secretary Amore that the Attorney General was seeking the records under Title III of the CRA.

The district court further erred in concluding that Title III's purpose is limited to detecting "voting-related racial discrimination," *Amore*, 2026 WL 1040637, at *4, and that the Attorney General's stated purpose of ensuring compliance with the NVRA and HAVA was a legally insufficient purpose because it did not "relate to a purpose of

- 12 -

investigating violations of individuals' voting rights," *id.* at \*6. No language limiting Title III to voting-rights violations based upon racial discrimination appears anywhere in the statutory text. *See* 52 U.S.C. 20701-20706. By contrast, Congress made clear elsewhere in the CRA that it intended a remedy to be limited to racial discrimination. *See* Section 601 of the CRA, Pub. L. No. 86-449, 74 Stat. 90 (applying Title VI of the CRA to violations of rights "on account of race or color") (52 U.S.C. 10101). As another district court addressing the United States' demand for an SVRL correctly concluded, "[t]he CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights; the NVRA is a federal election law that protects voting rights." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich. 2026), *appeal pending*, No. 26-1225 (6th Cir. argued May 13, 2026). Accordingly, "the DOJ may use the CRA to investigate possible violations of the NVRA." *Ibid.*

**Second**, an expedited appeal will allow the United States to confirm that Rhode Island's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal statewide elections.

Rhode Island's next federal election is rapidly approaching, with primaries on September 1, 2026, and the general election on November 3, 2026. Although the NVRA limits "systematic[] remov[als]" within 90 days of "the date of a primary or general election for Federal office," *see* 52 U.S.C. 20507(c)(2)(A), States retain authority to engage in plenty of list-maintenance activities after that date. *See Bell v. Marinko*, 367 F.3d 588, 591-592 (6th Cir. 2004); *cf. Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1344-1346 (11th Cir. 2014); *Virginia Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at \*1 (4th Cir. Oct. 27, 2024). Among other things, all States, including Rhode Island, are required by the NVRA to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . change in the residence of the registrant . . . ." 52 U.S.C. 20507(a)(4). Similarly, HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(2)(A).

Rhode Island would not be prejudiced by expediting the appeal. If anything, a rapid resolution of this matter will permit Rhode Island to

properly conduct an election this fall without the specter of non-citizens and ineligible voters remaining on its voter rolls.

# CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to expedite this case. The United States urges the adoption of the schedule listed above, or any alternative schedule that would allow a decision in time.

Respectfully submitted,

HARMEET K. DHILLON
 Assistant Attorney General

JESUS A. OSETE
 Principal Deputy Assistant
 Attorney General

s/ James T. Tucker
JAMES T. TUCKER
 Attorney

ANDREW G. BRANIFF
CHRISTOPHER C. WANG
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 532-3803

Date: June 17, 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2619 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

This emergency motion also complies with First Circuit Internal Operating Procedure VII(B). The United States filed this motion shortly after the appeal was docketed in the First Circuit on June 10, 2026.

s/ James T. Tucker
JAMES T. TUCKER
 Attorney

Date: June 17, 2026

## CERTIFICATE OF SERVICE

I certify that on June 17, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ James T. Tucker<br>
JAMES T. TUCKER<br>
Attorney

Date: June 17, 2026