# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### No. 26-1665

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

GREGG AMORE, in his official capacity as Secretary of State of Rhode Island;

Defendant-Appellee

COMMON CAUSE, et al.

Defendants-Intervenors-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

## SECRETARY OF STATE GREGG AMORE'S OPPOSITON TO THE UNITED STATES' MOTION TO EXPEDITE BRIEFING

The Plaintiff-Appellant United States' motion to expedite briefing should be denied. The only "urgency" the United States, through its Department of Justice (DOJ), identifies to justify a deviation from the ordinary briefing schedule is its unfounded speculation that "*potentially* registered ineligible voters" may receive absentee or mail-in ballots in preparation for upcoming primary and general elections. Mot. at 3 (emphasis added). But unfounded speculation is not "good cause" sufficient to warrant expedited briefing under 28 U.S.C. § 1657(a) nor

emergency relief under Local Rule 27.0, much less the inequitable briefing schedule DOJ proposes.

## ARGUMENT

### A. DOJ did not act promptly

Contrary to DOJ's representation that its proposed "timing is not of the United States's making," Mot. at 3, the situation is entirely the product of DOJ's own delay. The district court's decision in this case was entered on April 17, 2026. *United States v. Amore*, No. 25-00639-MSM, 2026 WL 1040367 (Apr. 17, 2026). Yet, DOJ waited 47 days (until June 3, 2026) to file its notice of appeal (ECF No. 53), which was docketed in this court on June 10, 2026. Although DOJ filed its motion to expedite briefing seven days after docketing (June 17, 2026), it offers no explanation at all for why its request to expedite briefing comes two full months after the district court entered the decision challenged on appeal. By no stretch does this lackadaisical approach satisfy Local Rule 27.0's promptness requirement or otherwise demonstrate good cause. *See Texaco P.R., Inc. v. Department of Consumer Affs.*, 60 F.3d 867, 879 (1st Cir. 1995) ("equity ministers to the vigilant, not to those who sleep upon their rights").

### B. DOJ fails to establish any risk to election security

DOJ's vague and unsubstantiated references to the "security of elections" (Mot. at 's 2-3, 9-10) also fail to demonstrate good cause. DOJ filed its complaint

on December 2, 2025, seeking to compel compliance with a September 8, 2025 demand letter served on Rhode Island's Secretary of State. *Amore*, 2026 WL 1040367, at *1. The demand letter sought an unredacted, electronic copy of Rhode Island's statewide voter registration list, including confidential and sensitive information consisting of each registered voter's state driver's license number and last four digits of their Social Security number. *Id.* at **2-3. The only reason DOJ offered for this unprecedented demand was its desire to "ascertain Rhode Island's compliance with the list maintenance requirements" imposed on states under the National Voter Registration Act (NVRA) and Help America Vote Act (HAVA). *Id.* at 2. DOJ's demand letter, however, did not "identify any facts suggesting that Rhode Island has not complied" with list maintenance requirements, and "it did not otherwise expressly identify any factual basis" at all for its demand that Rhode Island produce confidential and sensitive information relating to nearly 750,000 active registered voters. *Id.*; ECF No. 26 at 1. At oral argument before the district court, DOJ expressly "acknowledged that the Demand Letter stated no factual basis." *Amore*, 2026 WL 1040367, at *3. The district court, therefore, correctly concluded that DOJ's demand was nothing more than a "groundless fishing expedition," without any factual or legal basis. *Id.* at **5-6.

DOJ's unfounded invocation of concerns regarding election security are also refuted by the public record presented to the district court. That public record

demonstrates Rhode Island's multifaceted approach to required list maintenance activities—all of which are reasonably designed to "prevent duplication, confirm residence, and remove deceased or otherwise ineligible voters from its voter registration list." *Id.* at *2. DOJ did not and has not disputed any of those reasonable efforts.

Instead, DOJ claims it is pursuing a "trust but verify" approach to seek out potential violations that may or may not exist. ECF No. 47 at 49, 69, 86. But this approach turns settled principles of federalism on their head. As the district court correctly recognized, the Constitution entrusts states—not the federal government—with "substantial discretion in regulating elections, including maintaining voter registration lists." *Id.* at *1 (citing *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013)). The NVRA and HAVA do not change this. To the contrary, the NVRA directs only that states must conduct a "general program" that reflects "reasonable efforts" to remove from their lists the names of voters who have moved, died, or are otherwise ineligible under state law but leaves the methods for achieving this to the states. 52 U.S.C. § 20507(a)(3)-(4). HAVA similarly leaves maintenance of voter registration lists "to the discretion of *the State*." 52 U.S.C. § 21085 (emphasis added). DOJ's speculation that something might possibly be lacking in the state's general program or reasonable efforts, therefore, is not only entirely

4

without factual basis but also fundamentally at odds with the broad discretion the Constitution and Congress have conferred on states, not DOJ.

Furthermore, to the extent DOJ has any legitimate need to confirm the state's reasonable efforts to undertake a general program of list maintenance activities (Mot. at 9, 13), the Secretary of State has already offered to provide DOJ with Rhode Island's publicly-available voter registration list that, consistent with state and federal privacy laws, omits personally identifiable information belonging to individual voters. *Id*. at *3. DOJ has never explained why it requires a complete, unredacted list to confirm what the public record already shows relating to Rhode Island's list maintenance activities, let alone why expediting this appeal is necessary to achieve that end.

Indeed, even if DOJ had a factual basis for its assertion that Rhode Island's registered voter list may "potentially" contain names of ineligible voters, Mot. at 3, no expedited briefing schedule would remedy that situation. The NVRA prohibits states from any systematic removal of the names of ineligible voters from its list within 90 days before a federal primary or general election. 52 U.S.C. § 20507(c)(2)(A). That time has already passed for the upcoming primary election to be held on September 9, 2026.[1] And, following the primary, there will be fewer than

---

[1] DOJ incorrectly states that Rhode Island's upcoming primary election will be held on September 1, 2026. Mot. at 3, 14. However, Rhode Island's primary is

90 days remaining before the November general elections, thereby precluding any systematic removal of any allegedly ineligible voter's name from the statewide list.

DOJ's assertion that states retain authority to engage in "plenty of list-maintenance activities" within the NVRA's 90-day quiet period, Mot. at 14, relates to entirely different activities than the "general program" of list maintenance on which DOJ's demand letter was based. *See Amore*, 2026 WL 1040367, at *2. Those general programs must be complete 90 days before a federal election. 52 U.S.C. § 20507(2)(A). None of the cases on which DOJ mistakenly relies holds otherwise. *See, e.g., Arcia v. Florida Sec'y of State*, 772 F.3d 588, 1344 (11th Cir. 2014) (systematic effort to remove names of ineligible non-citizens from voting list within 90 days of general election was prohibited under NVRA); *Virginia Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at *1 (4th Cir. Oct. 27, 2024) (systematic effort to remove names of ineligible voters from voting list within 90 days of federal election is prohibited under NVRA).

In short, DOJ's vague and unfounded suppositions about the security of elections do not demonstrate good cause for expedited briefing. This case is not about the security of elections at all; it is about whether DOJ is entitled to demand production of confidential and sensitive information relating to hundreds of

---

scheduled for September 9, 2026. *See* vote.sos.ri.gov/forms/elections/Election Page/PPPEng.html.

thousands of active registered voters in Rhode Island without any factual or legal basis to do so. *Amore*, 2026 WL 1040367, at **5-6. Tellingly, DOJ has never demanded this sort of information before and, at the hearing in this case, it could not explain exactly how the information would be used nor guarantee that confidentiality would be preserved. ECF No. 47 at 66 (conceding that DOJ's "Civil Rights Division cannot promise what any other agency will or will not do" with the confidential information).

### C. Motions to expedite briefing are not routinely allowed

DOJ attempts to dilute its burden of demonstrating good cause by incorrectly stating that this Court "routinely expedites appeals in election cases, given their time sensitive nature." Mot. at 10. The Court has done no such thing; the two cases on which DOJ relies certainly do not evidence any "routine" dilution of the statutory requirement for good cause. In both of those cases, good cause existed because the potential violation of individual rights was readily apparent. *See Bonas v. Town of N. Smithfield*, 265 F.3d 69, 71 (1st Cir. 2001) (expedited appeal where town canceled regular election for town council and school committee, resulting in "total and complete disenfranchisement of electorate" in violation of due process); *Uno v. City of Holyoke*, 72 F.3d 973, 978 (1st Cir. 1995) (expediting appeal and granting stay of district court remedial order intended to correct alleged dilution of Hispanic vote in city election). No similar demonstration has been made here. Indeed, DOJ's demand

for the production of confidential and sensitive information for hundreds of thousands of registered voters in the hopes of finding some basis for ineligibility "would have a chilling effect on voter registration which would inevitably lead to decreasing voter turnout as voters fear that their information [could be] used for some inappropriate or unlawful purpose." *United States v. Weber*, 816 F. Supp.3d 1168, 1196 (C.D. Cal. 2026), *appeal filed* (9th Cir. Mar. 3, 2026).

DOJ's further assertion that the Ninth Circuit and Sixth Circuit recently allowed similar requests to expedite appeals in voter list cases pending before those courts, Mot. at 10, is not binding on this Court. *In re Rockwell*, 968 F.3d 12, 23 (1st Cir. 2020). Even if it were, both of those courts granted DOJ's requests only in part, and the briefing schedules issued by the courts were *not* the expedited (and grossly unfair) schedules DOJ proposed. *See United States v. Oregon*, No. 26-1231, Docket Entry 25.1 (Order entered Mar. 17, 2026); *United States v. Weber*, No. 26-1232 (same); *United States v. Benson*, No. 26-1225, Docket Entry 20-1 (Order entered Mar. 11, 2026).

Remarkably, DOJ suggests in passing that it will waive oral argument. Mot. at 4. It is difficult to see (and DOJ makes no effort to explain) how the public interest could possibly be served by such a cavalier approach to the novel and complex issues presented by this appeal. Those broader interests can only be served by allowing the parties sufficient time to thoroughly research, brief, and present their arguments in

open court. The truncated schedule DOJ proposes is decidedly one-sided and unfair. *Id.* It would provide DOJ with nearly three months from issuance of the district court's decision to prepare its brief, while leaving the Secretary with only a scant 21 days to respond.[2] Moreover, DOJ's proposed schedule would preemptively deprive the Secretary of any opportunity to seek a reasonable extension of time that might otherwise be available under Fed. R. Civ. P. 26(b).

## CONCLUSION

For all of these reasons, DOJ's motion to expedite briefing should be denied.

Respectfully submitted,

SECRETARY OF STATE
GREGG M. AMORE

By his counsel,
PETER F. NERONHA
ATTORNEY GENERAL

*/s/ James J. Arguin*
James J. Arguin (#39225)
Special Assistant Attorney General
R.I. Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400 x2078
Facsimile: (401) 222-3016
jarguin@riag.ri.gov

Dated: June 24, 2026

---

[2] As noted above, the challenged decision was issued on April 17, 2026. DOJ, therefore, had ample time to prepare its brief for filing when or shortly after its appeal was docketed on June 10, 2026, obviating any need for this motion.

## CERTIFICATE OF COMPLIANCE

I, the undersigned, hereby certify that the foregoing opposition complies with the length limits set forth in Fed. R. App. P. 27(d)(2), because this document contains 1,886 words excluding the items exempted by Fed. R. App. P. 32(f).  Additionally, the foregoing opposition's type size and typeface comply with Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ James J. Arguin*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have filed the foregoing opposition with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the CM/ECF System.  I further certify that all participants in this appeal are registered CM/ECF uses and that this document is available for viewing and downloading on this 24th day of June 2026.

*/s/ James J. Arguin*