**No. 26-1665**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*

v.

GREGG M. AMORE, in his official capacity as Secretary of the State of
Rhode Island, et al.,
*Defendant-Appellee*

COMMON CAUSE, CATHERINE SAUNDERS, STUART WALDMAN,
JULIA SANCHES,
*Defendants-Intervenors-Appellees*

ON APPEAL FROM THE ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

**COMMON CAUSE APPELLEES' OPPOSITION TO
UNITED STATES'S MOTION TO EXPEDITE BRIEFING AND
MOTION TO CONSOLIDATE APPEALS**

Lynette Labinger (No. 23027)
LYNETTE LABINGER,
ATTORNEY AT LAW
128 Dorrance Street, Box 710
Providence, RI  02903
(401) 465-9565
Cooperating Counsel, American
Civil Liberties Union Foundation of
Rhode Island

Ari Savitzky (No. 1175676)
Theresa J. Lee (No. 1213918)
Sophia Lin Lakin (No. 1214581)
Patricia J. Yan (No. 1221839)
William Hughes (No. 1221838)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org

*Counsel for Defendants-Intervenors-Appellees*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ..........................................................................1

BACKGROUND ...........................................................................3

ARGUMENT ...............................................................................6

    I.  The United States Has Not Shown Good Cause. ........................6

    II. If the Court Grants Expedited Briefing, It Should Set Its
        Own Schedule ................................................................12

CONCLUSION .........................................................................13

CERTIFICATE OF COMPLIANCE ......................................................15

CERTIFICATE OF SERVICE..............................................................16

# TABLE OF AUTHORITIES

**Cases**

*Arcia v. Florida Secretary of State,*
  772 F.3d 1335 (11th Cir. 2014)............................................................11

*Bonas v. Town of North Smithfield,*
  265 F.3d 69 (1st Cir. 2001) ................................................................11

*Grundmann v. Trump,*
  786 F. Supp. 3d 188 (D.D.C. 2025)......................................................12

*United States v. Amore,*
  No. 25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026)
  ..............................................................................................4, 5, 7, 8

*United States v. Benson,*
  No. 26-1225, 2026 WL 1815425 (6th Cir. June 24, 2026) ..................... 2

*United States v. Galvin,*
  No. 1:25-CV-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026)......8

*United States v. Weber,*
  816 F. Supp. 3d 1168 (C.D. Cal. 2026)..............................................8, 9

*Uno v. City of Holyoke,*
  72 F.3d 973 (1st Cir. 1995) ................................................................11

**Statutes**

52 U.S.C. § 20301.................................................................................4

52 U.S.C. § 20507.......................................................................8, 10, 11

52 U.S.C. § 20703.......................................................................6, 10, 11

52 U.S.C. § 21083(a)(4)(A).................................................................10

52 U.S.C. § 21085...............................................................................10

**Other Authorities**

Emily Bazelon & Rachel Poser,
*The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16,
2025, https://perma.cc/L39A-S5VZ ......................................................... 9

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry,
*Tracker of Justice Department Requests for Voter Information*,
Brennan Center for Justice (updated Mar. 10, 2026),
https://perma.cc/UT2L-CDVG ............................................................... 3

**Rules**

First Circuit Rule 2(a) ........................................................................ 1, 7

First Circuit Rule 26(b)(1) ...................................................................... 2

First Circuit Rule 27.0(b) ...................................................................... 12

## INTRODUCTION

Appellant, the United States through its Department of Justice (DOJ), waited forty-two days to file the Notice of Appeal in this case, and then another fourteen days to file a motion to expedite. Those decisions confirm what the record and the DOJ's own briefing make clear—there is not good cause to justify expediting this appeal. DOJ has not, and cannot, demonstrate that absent expedition, a right under the Constitution or a federal statute would not be maintained, or that it will suffer irreparable harm, or that this appeal may become moot. *See* 1st Cir. R. 2(a); *see also* 28 U.S.C. § 1657(a).

The United States's motion makes unspecified and unsupported allusions to "election security" and the November 2026 midterms but never identifies any actual election issue in Rhode Island of any kind, let alone one implicating the violation of any federal right or any sort of irreparable harm. Nor does it explain how this appeal—involving DOJ's attempt to misuse the Civil Rights Act of 1960 (CRA) to commandeer the private data of hundreds of thousands of Rhode Island voters—could have any legitimate bearing on the 2026 midterms, or how an expedited ruling could serve any legitimate purpose relating to those upcoming

1

elections. And the United States's lengthy delays in initiating this action, filing its Notice of Appeal, and then making its motion further undermines its claims of urgency now.

Moreover, the compressed briefing schedule proposed by the United States is unwarranted, giving Appellees just three weeks to respond to briefing that Appellants will have nearly thirteen weeks to prepare, compressing the period for any amici to prepare their filings, and eliminating the option, if needed, of using the streamlined extension available under First Circuit Rule 26(b)(1). Even if expedition were warranted under this Court's rules and practices (and it isn't), the United States's proposed schedule is not.

All nine federal courts that have issued merits rulings on the United States's materially identical lawsuits around the country (including most recently the Sixth Circuit) have rejected the United States's CRA claims. *E.g.*, *United States v. Benson*, No. 26-1225, 2026 WL 1815425 (6th Cir. June 24, 2026). The United States's appeal of the district court's dismissal of its lawsuit is unlikely to result in reversal here, and even if it did, multiple issues would remain to be addressed in

2

the district court. The United States's motion to expedite should be denied.[1]

## BACKGROUND

Beginning in May 2025, DOJ began sending letters to election officials in at least forty states, making escalating demands to produce voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated June 24, 2026), https://perma.cc/9T6D-X8SD . DOJ has now sued thirty states and Washington D.C. in courts across the country, demanding access to sensitive, state-held, unredacted voter data without explaining its intended use of this data or identifying any particular election or voter list maintenance issues in states like Rhode Island that require investigation. This appeal arises out of one of the over thirty similar suits DOJ has filed—this one in Rhode Island.

---

[1] The Common Cause Appellees join the other Defendants-Appellees in opposing consolidation. The Common Cause Appellees agree that the Maine, Rhode Island, and Massachusetts appeals can be treated as related, so that the Court could schedule oral argument in them on the same day before the same panel. To the extent the appeals are consolidated, Common Cause Appellees request that there be separate appellee briefing and oral argument.

On September 8, 2025, DOJ sent a letter to Rhode Island Secretary of the State, Gregg M. Amore, demanding Rhode Island's full and unredacted voter file, including the personal identifying information of hundreds of thousands of Rhode Island voters. *See United States v. Amore*, No. 25-CV-00639, 2026 WL 1040637, at *2 (D.R.I. Apr. 17, 2026). DOJ did this supposedly to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and [the Help America Vote Act, also known as ] HAVA." *Id.* The letter also invoked Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701 *et seq.,* as supposed grounds for DOJ's request. *Id.* DOJ's letter "did not identify any facts suggesting that Rhode Island" was not complying with federal law, nor did it provide a "factual basis for DOJ's demand." *Id.*

Secretary Amore informed Justice Department officials that Rhode Island would not comply with the request for Rhode Island's full and unredacted voter file. *Amore*, 2026 WL 1040637, at *3.

Two and a half months later, on December 2, 2025, the United States initiated a civil action against Secretary Amore for failure to produce the full and unredacted statewide voter file. *See* Compl., Dist. Ct. Dkt. 1. The complaint set forth one cause of action under Title III of the

4

Civil Rights Act of 1960. *Id.* The Complaint did not assert any claims under the NVRA or HAVA, the two federal statutes that relate to voter list maintenance. *Id.*

Secretary Amore and various Intervenor-Defendants, including Common Cause and Rhode Island voters Catherine Saunders, Stuart Waldman, and Julia Sanches (the Common Cause Intervenors), moved to dismiss. Def.'s and Def.-Intervenors' Mots. to Dismiss, Dist. Ct. Dkt. 25; Dist. Ct. Dkt. 26; Dist. Ct. Dkt. 28. The parties then briefed the motion on the non-expedited schedule that they had agreed upon. *See* Joint Stipulation and Proposed Scheduling Order, Dist. Ct. Dkt. 23.

On April 17, 2026, the district court entered an order dismissing the United States's complaint without leave to amend. *Amore*, 2026 WL 1040637. The district court concluded that DOJ was not entitled to demand Rhode Island's voter file under Title III because the statute requires a written demand that sets forth "the basis and the purpose" for the request, and DOJ had not identified any factual basis for its demand for the Rhode Island voter information. *Id.* at *5–*6; *see* 52 U.S.C. § 20703. The district court further concluded that even if DOJ's letter had contained a factual basis, the complaint "would still fail to

5

state a claim under Title III because it lacks a legally sufficient purpose." *Id.* at *6.

On June 3, 2026, the United States filed a notice of appeal. Dist. Ct. Dkt. 53. Two weeks after that, the United States filed this Motion to Expedite, seeking a briefing schedule with the opening brief due on July 8, 2026, the answering brief due three weeks later, on July 29, 2026, and the reply brief due one week later, on August 5, 2026. U.S. Mot. to Expedite at 4. The United States claims, without any factual support, that "[a]n expedited appeal is necessary to secure the elections in Rhode Island, and permit Rhode Island the time to clean its voter rolls prior to the election this fall." *Id.* at 9.

## ARGUMENT

### I.    The United States Has Not Shown Good Cause.

The United States has failed to show good cause that necessitates expediting the appeal. *See* 1st Cir. R. 2(a); 28 U.S.C. § 1657(a) (allowing for expedited review "if good cause therefor is shown" based on the "factual context").

The United States argues that extremely expedited briefing is necessary because Rhode Island's voter rolls "potentially" include

"ineligible voters, fraudulent registrants, or individuals who should not have been registered" and Rhode Island voters "need to know that their election is secure" in advance of the coming midterm elections or else they will experience "irreparable harm." U.S. Mot. to Expedite at 3, 10; *see also id.* at 13–15. An identical request was recently rejected by the Seventh Circuit, *see* Order, *United States v. Wisconsin Election Commission*, No. 26-2217 (7th Cir. Jun. 23, 2026), Dkt. 20, and the same result should follow here. The United States's argument for expedition is fatally flawed for at least three reasons.

*First*, the United States's motion is completely devoid of factual support. As with its letter demanding the sensitive voter information of millions of Rhode Island voters, the United States's motion identifies no factual basis to think that Rhode Island is improperly registering voters or failing to make a "reasonable effort" to maintain its voter lists, which is what federal law requires, 52 U.S.C. § 20507(a)(4); 52 U.S.C. § 21083(a)(4)(A). *Amore*, 2026 WL 1040637, at *1–*2. Without any evidence, DOJ offers only raw speculation that the voter rolls "potentially" might include improperly registered persons combined with the assertion that voters "need to know" one way or the other. U.S. Mot.

7

to Expedite at 3; *see also id.* at 13–15 (asserting without citation that, without expeditious relief for DOJ, this fall's elections would include "the specter of non-citizens and ineligible voters remaining on its voter rolls."). This is the same type of specious, "fishing expedition" logic that the DOJ deployed to advance its argument on the merits, which was rightly rejected by the district court here and in other cases. *Amore*, 2026 WL 1040637, at \*6; *accord United States v. Galvin*, No. 1:25-CV-13816-LTS, 2026 WL 972129, at \*3–\*6 (D. Mass. Apr. 9, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168, 1184 (C.D. Cal. 2026); *see also* Compl., Dist. Ct. Dkt. 1 (containing no allegations concerning the accuracy of Rhode Island's voter rolls or discussion of the upcoming midterms).

The United States's assertion of "irreparable harm" without a scrap of factual detail or substantiation is similarly fatal to its motion to expedite. Indeed, the United States's claimed, and yet completely unsupported, concern for election security in Rhode Island is especially difficult to credit in light of the extensive reporting and documentary evidence that the United States's attempts to obtain voters' sensitive data through litigation is part of an effort to disenfranchise voters and improperly amass voter information in an unauthorized federal

8

database. *See* Common Cause Mot. to Dismiss 5–8, Dist. Ct. Dkt. 25 & Common Cause Reply in Support of Mot. to Dismiss 11–13, Dist. Ct. Dkt. 35 (detailing some of this evidence); *see also, e.g.*, *Weber*, 816 F. Supp. 3d at 1185.[2] Any desire to use this litigation to build an unauthorized national voter database, or to improperly disenfranchise voters, or to baselessly sow doubt about voter roll maintenance programs or election integrity in Rhode Island and elsewhere is not a justification for expedited briefing.

*Second*, even if the United States had demonstrated a harm—though it has not—DOJ still does not explain how expediting this appeal would alleviate such purported harm. It does not explain how it is

---

[2] These efforts have been the subject of detailed reporting for the better part of a year. One article, for example, quoted at length an attorney who had recently departed from DOJ's Civil Rights Division, who explained that,

> "We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data . . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division."

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://perma.cc/L39A-S5VZ.

9

likely to succeed in obtaining both a reversal in this appeal and a judgment in its favor on remand, when it failed to set forth the factual "basis" for demanding Rhode Island voters' data, which Title III of the CRA expressly requires. *See* 52 U.S.C. § 20703. Nor does the United States explain what exactly it would do with a static copy of Rhode Island voters' private data to alleviate the purported harm even if it could secure reversal and secure a judgment in its favor on the CRA issue, especially given that federal law gives Rhode Island, not DOJ, the ongoing and primary responsibility for maintaining and updating its own voter rolls. *See* 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A), 21085. And even if DOJ was likely to succeed on the ultimate merits in this case *and* had the authority to supplant the States' role in voter list maintenance, DOJ fails to explain how its proposed expedited schedule, under which reply briefs are due in early August, would allow it to do whatever it intends to do prior to the mandatory ninety-day quiet period for systematic list maintenance under the NVRA—which begins in early August for the November midterms. *See* 52 U.S.C. § 20507(c)(2)(A); *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014) (using "a mass computerized data-matching process to compare the voter rolls with . . . federal databases"

10

is a "systematic" removal program for purposes of the ninety-day quiet period).

The fact that there are midterm elections approaching is thus irrelevant to the disposition of this motion. The question in this case is whether the DOJ can compel the production of unredacted voter data from Rhode Island via invocation of the CRA of 1960 without setting forth "the basis and the purpose" for its request as required by statute. 52 U.S.C. § 20703. Resolving that question will not have any impact on Rhode Island's routine and ongoing obligations to maintain accurate voter rolls, nor is it tied to any particular election. This stands in stark contrast to the cases the United States cites, where expedition was warranted because there was a concrete and factually supported need for resolving the issue on appeal prior to the upcoming election. *See Bonas v. Town of N. Smithfield,* 265 F.3d 69, 71 (1st Cir. 2001) (expedited briefing in challenge to town's decision not to hold municipal elections in 2001, where shortened schedule allowed the Court to rule ahead of the election date); *Uno v. City of Holyoke,* 72 F.3d 973, 978 (1st Cir. 1995) (expedited appeal in a Voting Rights Act case where the district court sought to remedy violations ahead of 1995 municipal elections). That is simply not

11

the case here.

*Third*, the United States's conduct in this litigation is an independent reason to deny expedited treatment. The United States waited until December 2025 to file this action, even though it began filing near-identical CRA lawsuits against various other states in September 2025. After the District Court granted dismissal, the United States waited over forty days to notice its appeal and then took an additional two weeks before filing this motion for expedited treatment.

Under these circumstances, the United States's claims of urgency due to the upcoming November 2026 midterms should not be countenanced. *See* 1st Cir. R. 27.0(b) ("Motions for stay, or other emergency relief, may be denied for failure to present promptly."); *cf.* *Grundmann v. Trump*, 786 F. Supp. 3d 188, 193 (D.D.C. 2025) (no irreparable harm under standard for stay where federal government waited nearly two months to file notice of appeal). The United States's delay is independent grounds to deny its motion.

## II. If the Court Grants Expedited Briefing, It Should Set Its Own Schedule

Even if some expedition were warranted, the Court should fashion its own schedule and reject the one proposed by the United States. The

12

United States asks this Court to give Appellees much less time than the United States to formulate arguments on appeal. The United States will have had nearly thirteen weeks to draft its brief, and Appellees would then only get three weeks to respond. Appellees anticipate raising additional, independent grounds for affirmance in addition to defending the bases for dismissal relied upon by the district court. And Appellees anticipate that, as in the district court, there may be amici curiae who wish to submit briefs in support of Appellees' position. *See* Amicus Br. by Seventeen States and the District of Columbia, Dist. Ct. Dkt. 32.

While there is no need to expedite this appeal in the first place, if the Court concludes otherwise, any expedited schedule should, at a minimum, provide Appellees the full thirty days contemplated by the Federal Rules of Appellate Procedure to prepare their responsive briefs, and compress the deadlines for the United States.

## CONCLUSION

The United States's Motion to Expedite Appeal and the United States's Motion to Consolidate should be denied.

13

Dated: June 29, 2026                    Respectfully submitted,

                                        */s/ Ari Savitzky*

Lynette Labinger (No. 23027)            Ari Savitzky (No. 1175676)
LYNETTE LABINGER,                       Theresa J. Lee (No. 1213918)
ATTORNEY AT LAW                         Sophia Lin Lakin (No. 1214581)
128 Dorrance Street, Box 710            Patricia J. Yan (No. 1221839)
Providence, RI  02903                   William Hughes (No. 1221838)
(401) 465-9565                          AMERICAN CIVIL LIBERTIES
Cooperating Counsel, American           UNION FOUNDATION
Civil Liberties Union Foundation of     125 Broad Street, 18th Floor
Rhode Island                            New York, NY 10004
                                        (212) 549-2500
                                        asavitzky@aclu.org

# CERTIFICATE OF COMPLIANCE

I certify this motion complies with the length limits set forth in Fed. R. App. P. 27(d)(2), because this motion contains 2,727 words excluding the items exempted by Fed. R. App. P. 32(f). The motion's type size and typeface comply with Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: June 29, 2026

*/s/ Ari Savitzky*
Ari Savitzky
*Counsel for the Common Cause Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2026, I electronically filed the foregoing motion by using the appellate ECF system.

I certify that the participants in the case are registered ECF users and that service will be accomplished by the appellate ECF system.

Dated:  June 29, 2026

/s/  Ari Savitzky_____
Ari Savitzky
*Counsel for the Common Cause Appellees*