IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————————

No. 26-1665

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

GREGG AMORE, in his official capacity as Secretary of State
of Rhode Island,

Defendant-Appellee

COMMON CAUSE, *et al.*,

Intervenors-Defendants-
Appellees

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

———————————————

UNITED STATES' REPLY TO APPELLEES' RESPONSES IN
OPPOSITION TO UNITED STATES' MOTIONS TO EXPEDITE AND
CONSOLIDATE

———————————————

The United States has moved to expedite this appeal (Mot.) and consolidate it with *United States v. Galvin*, No. 26-1657, and *United States v. Bellows*, No. 26-1676. Appellees Rhode Island Secretary of State Gregg Amore (Amore Opp'n to Mot. to Expedite, Amore Opp'n to Mot. to Consolidate); Common Cause, Catherine Saunders, Stuart Waldman, and Julia Sanches (Common Cause Opp'n); and SEIU District 1199NE, Rhode Island Alliance for Retired Americans, Carolyn Betensky, and Michael "Zack" Mezera (District 1199NE Opp'n) oppose these Motions. For the reasons explained herein, their Oppositions are unpersuasive, and the Motions should be granted.

## I.    The Court should expedite this appeal.

As the United States explained in its Motion, an expedited appeal is necessary to allow the United States to confirm—before the 2026 federal elections—that Rhode Island's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections. Mot. 13-14. Absent a prompt resolution of this appeal, there is a significant prospect of harm to individual voter rights due to the risk of non-citizens and ineligible voters remaining on Rhode Island's voter rolls. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021)

("[F]raudulent votes dilute the right of citizens to cast ballots that carry appropriate weight."); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) ("Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.").

Appellees' counterarguments are unpersuasive.

*First*, appellees contend that the DOJ will not suffer any irreparable harm because it lacks factual evidence of illegal voting. Secretary Amore claims that the United States' "vague and unsubstantiated references to the security of elections . . . fail to demonstrate good cause" because the United States "did not identify any facts suggesting that Rhode Island has not complied with list maintenance requirements" imposed on States under the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq.*, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq.* Amore Opp'n to Mot. to Expedite 2-3 (citation and internal quotation marks omitted). Intervenors likewise cast the United States' argument as "entirely unsupported" (District 1199NE Opp'n 9) and "completely devoid of factual support" (Common Cause Opp'n 7).

- 3 -

Appellees essentially argue that this appeal should not be expedited because they will win the appeal. Title III provides that specified voting records "shall . . . be made available" to the Attorney General as long as he provides "a statement of the basis and the purpose therefor." 52 U.S.C. 20703. Appellees criticize the United States for purportedly failing to include a factual basis suggesting that Rhode Island was not complying with the list maintenance requirements of the NVRA and HAVA in its demand to the Secretary (*e.g.*, Amore Opp'n to Mot. to Expedite 3; District 1199NE Opp'n 9-10; Common Cause Opp'n 7-8), but they confuse a merits question—what the Title III requires in a demand—with the potential harms that warrant expediting this appeal.

*Second*, appellees contend that the United States fails to show irreparable harm because the NVRA and HAVA entrust maintenance of the list of eligible voters to the States. Amore Opp'n to Mot. to Expedite 4-5; District 1199NE Opp'n 10-11; Common Cause Opp'n 10. Appellees overlook that the United States maintains an important role in ensuring that voter lists are properly kept. The Attorney General has enforcement authority under both the NVRA and HAVA. 52 U.S.C. 20510(a) and 21111. Additionally, the United States may prosecute those who

"knowingly and willfully deprive[], defraud[], or attempt[] to deprive or defraud the residents of a State of a fair and impartially conducted election process" by "procur[ing] . . . voter registration applications," or "tabulat[ing] ballots," if those applications or ballots "are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held." 52 U.S.C. 20511(2).

To be sure, Rhode Island has the ultimate authority and obligation under the NVRA, 52 U.S.C. 20507(a)(4), and HAVA, 52 U.S.C. 21083(a)(2)(A), to conduct list maintenance, which would result in removing improperly registered voters from the SVRL. But even assuming that there is not a single case of fraudulent or erroneous voter registration, Rhode Island residents need to know—before the election— that the SVRL is accurate.

*Third*, appellees contend that the NVRA is a barrier to pre-election removal of ineligible voters from the SVRL that an expedited briefing schedule would not resolve. Amore Opp'n to Mot to Expedite 5-6; District 1199NE Opp'n 12-13; Common Cause Opp'n 10-11. The NVRA prohibits states from "systematically remov[ing] the names of ineligible voters from the official lists of eligible voters" within 90 days of an election. 52

U.S.C. 20507(c)(2)(A). However, any removal of ineligible voters from the SVRL based on an individualized recommendation or alert from the United States is not a "systematic" removal by the State and thus does not implicate the NVRA's 90-day quiet period. *See Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) ("[T]he 90 Day Provision permits removals based on individualized information at any time."). Contrary to District 1199NE's assertion that "the ship has sailed" on the United States' goal of Rhode Island removing ineligible voters from its rolls before the 2026 elections (District 1199NE Opp'n 13), if this Court rules in favor of the United States in August or September, it is possible to identify and permit Rhode Island to remove at least some ineligible voters from the SVRL before the November 3, 2026, general election. A period of up to two months is enough time to identify voters, verify eligibility, and contact affected individuals.

*Fourth*, Secretary Amore argues that expedited treatment is improper because the "public interest" in addressing "the novel and complex issues presented by this appeal . . . can only be served by allowing the parties sufficient time to thoroughly research, brief, and present their arguments in open court." Amore Opp'n to Mot. to Expedite

8-9; *see also* District 1199NE Opp'n 8. This Court can decide this pure question of law on an expedited basis. Courts have confronted far more difficult and fact-intensive questions in much less time. *See, e.g.*, *Tiktok Inc. v. Garland*, 604 U.S. 56, 62 n.1 (2025) (per curiam) (indicating that roughly one month passed between applications for an injunction pending review and the Supreme Court's decision in a complex case regarding national security and the First Amendment).

*Fifth*, District 1199NE argues that "practical obstacles also foreclose DOJ's desire to force voter purges before the November election." District 1199NE Opp'n 16. District 1199NE presumably refers to *ineligible* voters, and its supposedly practical obstacles are surmountable. There is no need for a remand to resolve "underlying factual disputes" because there are no disputed material facts. *Ibid.* The facts are clear: the United States demanded Rhode Island's SVRL, and Rhode Island refused to provide it. If this Court rules in favor of the United States, it can—and should—order the district court to immediately require Rhode Island to produce the SVRL pursuant to Title III. Further, District 1199NE and Common Cause wrongly assert that the United States must bring a second lawsuit against Rhode Island to

obtain meaningful relief. District 1199NE Opp'n 17; Common Cause Opp'n 9-10. Although such suits are one means of ensuring proper list maintenance, the United States trusts that States will not ignore out-of-hand alerts from the federal government that their SVRLs are out of compliance or that individual voters are ineligible and should be removed as a matter of federal law.

## II.   The United States has not delayed this case.

Appellees insist that the United States' "lackadaisical" approach to this litigation necessitates denying its Motion to Expedite. Amore Opp'n to Mot to Expedite 2; District 1199NE Opp'n 4. The United States has not been "lackadaisical."

District 1199NE relies on the false premise that the United States did not promptly prosecute this case in district court. They accuse the United States of "wait[ing] nearly three months before filing suit on December 2, 2025, even though Rhode Island promptly made clear on September 16, 2025[,] that it had no intention of producing the unredacted voter list." District 1199NE Opp'n 4. This argument overlooks two important facts. First, by early September the DOJ was already litigating parallel cases in California, Oregon, and Michigan, all of which

- 8 -

were on an earlier timeline with earlier demands for State SVRLs. Second, the DOJ was limited in what it could do during this time, as the federal government was shut down between October 1 and November 12, 2025. Cong. Res. Serv., R48832, *The 2025 (FY2026) Government Shutdown: Economic Effects* 1 (Jan. 29, 2026); *see* 31 U.S.C. 1342 (prohibiting federal employees from working during government shutdowns, with irrelevant exceptions).

As District 1199NE observes (*see* District 1199NE Opp'n 4), the United States did not seek to expedite this case in district court, but there was no need to do so. The United States sought access to Rhode Island's SVRL under Title III of the Civil Rights Act, which provides an inherently expedited process. Title III provides "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's exercise of his investigative powers. *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962). The Attorney General may come to court and seek an order to produce the requested records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Ibid.* The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F.

Supp. 826, 826-827 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). Once the Attorney General provides a "simple statement" that his demand has been made and refused, "[t]he Court, *with expedition*, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down *without delay* for suitable hearing on the matters open for determination." *Lynd*, 306 F.2d at 226 (emphasis added).

If the district court had held the requisite "summary" and non-adversarial proceedings, the United States would have had access to Rhode Island's SVRL—or an adverse decision to take to this Court—months ago. Even in the absence of these "summary" proceedings, the district court dismissed the Complaint on April 17, 2026. Had the United States prevailed, it would have had ample time before the September 9, 2026, primary election to confirm the integrity of Rhode Island's SVRL.

Appellees add that the United States' proposed briefing schedule is "decidedly one-sided and unfair" (Amore Opp'n to Mot to Expedite 9) and "lopsided" (District 1199NE Opp'n 5). The United States disagrees. Its proposed schedule gives Appellees 21 days to file their briefs—only nine

days less than the 30-day default schedule under Federal Rule of Appellate Procedure 31(a)(1).

Secretary Amore complains that the United States' briefing schedule "would provide DOJ with nearly three months from issuance of the district court's decision to prepare its brief, while leaving the Secretary with only a scant 21 days to respond." Amore Opp'n to Mot to Expedite 9; *see also* District 1199NE Opp'n 5; Common Cause Opp'n 12-13. But Appellees use the wrong baseline—namely, the date the district court issued its decision. Deadlines to file briefs are not measured by the date the district court order was issued; they are, by default, measured by the date the record is filed in the Court of Appeals. Fed. R. App. P. 31(a). In any event, if this Court disagrees with the proposed briefing schedule, it can expedite this appeal and enter a different scheduling order, as Secretary Amore acknowledges the Sixth and Ninth Circuits have done. Amore Opp'n to Mot to Expedite 8.

District 1199NE suggests that the United States "could file its merits brief now, thereby speeding up the schedule by operation of the ordinary rules." District 1199NE Opp'n 6. Although that is an option, it would not aid the United States absent an early decision from this Court.

### III. This Court should grant the United States' Motion to Consolidate.

This case should be consolidated with the appeals in *Galvin* and *Bellows*. As appellees do not dispute, all three appeals address whether the United States may obtain SVRLs pursuant to Title III. Consolidation therefore will promote judicial economy and facilitate an expeditious resolution of these appeals.

Secretary Amore points out that "the three appeals comprise different cases that DOJ brought in different venues, against different sovereign states, on different factual and legal theories, and each appeal arises from different rulings and reasoning issued by three different judges." Amore Opp'n to Mot. to Consolidate 1-2. However, these demands are materially identical, and as District 1199NE observes, have led to "substantially identical suits." District 1199NE Opp'n 7. In fact, in a recent case, this Court granted the plaintiffs' motion to consolidate appeals when the plaintiffs had brought "materially identical" complaints against three different sets of defendants. *Bourgeois v. TJX Cos.*, 129 F.4th 28, 31 (1st Cir. 2025).

## CONCLUSION

For the foregoing reasons, this Court should grant the United States' Motion to Expedite and Motion to Consolidate.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-5083

Date: June 30, 2026

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2211 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
 Attorney

Date: June 30, 2026

## CERTIFICATE OF SERVICE

I certify that on June 30, 2026, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
 Attorney

Date: June 30, 2026