No. 26-1665

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

GREGG AMORE, in the official capacity as Secretary of State of Rhode Island;
COMMON CAUSE; CATHERINE SAUNDERS; STUART WALDMAN;
JULIA SANCHES; SEIU DISTRICT 1199NE; RHODE ISLAND ALLIANCE FOR
RETIRED AMERICANS; CAROLYN BETENSKY; MICHAEL ZACK MEZERA,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BRIEF FOR THE UNITED STATES AS APPELLANT

> HARMEET K. DHILLON
>   Assistant Attorney General
> JESUS A. OSETE
>   Principal Deputy Assistant Attorney
>   General
> ANDREW G. BRANIFF
> DAVID N. GOLDMAN
> CHRISTOPHER C. WANG
>   Attorneys
>   Department of Justice
>   Civil Rights Division
>   Appellate Section
>   Ben Franklin Station
>   P.O. Box 14403
>   Washington, D.C.  20044-4403
>   (202) 532-3803

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................. 1

STATEMENT OF JURISDICTION ........................................................ 2

STATEMENT OF THE ISSUES............................................................. 2

STATEMENT OF THE CASE ................................................................ 3

SUMMARY OF THE ARGUMENT ....................................................... 11

STANDARD OF REVIEW..................................................................... 12

ARGUMENT

    I.    The DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL satisfied Title III's requirements. ........................................................ 13

        A.    Courts play a limited role in assessing the Attorney General's demand under Title III................. 14

        B.    The DOJ provided a valid basis for its demand. ......... 21

        C.    The DOJ's stated purpose of ascertaining Rhode Island's compliance with the NVRA and HAVA was sufficient. ............................................................. 25

        D.    Rhode Island's scope-of-production argument is no basis to reject the DOJ's demand............................ 36

    II.    The DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL does not violate federal or state privacy laws.................................................................... 37

**TABLE CONTENTS (continued):**                                    **PAGE**

A.   The DOJ's demand complied with the
Privacy Act. ................................................................ 38

B.   The E-Government Act does not prevent
the DOJ from obtaining data supporting
its NVRA and HAVA claims. ....................................... 41

C.   Federal law preempts any contrary Rhode Island
privacy law. ................................................................ 45

CONCLUSION ................................................................................. 49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**                                                                                            **PAGE**

*Alabama ex rel. Gallion v. Rogers,*
   187 F. Supp. 848 (M.D. Ala. 1960),
   *aff'd sub nom. Dinkens v. Attorney General of the U.S.,*
   285 F.2d 430 (5th Cir. 1961) ........................................................... 14

*American Oversight v. Department of Just.,*
   45 F.4th 579 (2d Cir. 2022) ........................................................... 40

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
   570 U.S. 1 (2013) .................................................................. 45, 47-48

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................. 12

*Brnovich v. Democratic Nat'l Comm.,* 594 U.S. 647 (2021) .............. 28, 41

*Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001) .............. 48

*Cablevision of Bos., Inc. v. Public Improvement Comm'n,*
   184 F.3d 88 (1st Cir 1999) ........................................................... 25-26

*Clemente Props., Inc. v. Pierluisi-Urrutia,*
   165 F.4th 1 (1st Cir.),
   *petition for cert. pending,* No. 25-1426 ........................................... 12

*Coleman v. Kennedy,* 313 F.2d 867 (5th Cir. 1963) (per curiam) ..... 22, 26

*Commissioner v. Tellier,* 383 U.S. 687 (1966) ......................................... 31

*Crosby v. National Foreign Trade Council,* 530 U.S. 363 (2000) ...... 45-46

*Dean v. United States,* 556 U.S. 568 (2009) ............................................ 26

*Doe v. Chao,* 540 U.S. 614 (2004) ........................................................... 38

**CASES (continued):**                                           **PAGE**

*Donaldson v. United States*, 400 U.S. 517 (1971),
  *superseded by statute on other grounds*,
  Tax Reform Act of 1976, Pub. L. No. 94-455,
  90 Stat. 1520 ................................................................................ 18

*Electronic Privacy Info. Ctr. v. United States Dep't of Com.*,
  356 F. Supp. 3d 85 *vacated and remanded on other grounds*,
  928 F.3d 95 (D.C. Cir. 2019) ..................................................... 43-44

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) ……..………..20

*Ex Parte Siebold*, 100 U.S. 371 (1879) ................................................ 45

*Foster v. Love*, 522 U.S. 67 (1997) ...................................................... 45

*Freeman v. Town of Hudson*, 714 F.3d 29 (1st Cir. 2013) ...........12, 35-36

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) .............................. 25

*Heckler v. Chaney*, 470 U.S. 821 (1985) ............................................. 22

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)...........................14-15, 22

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).............................. *passim*

*New Hampshire Motor Transp. Ass'n v. Rowe*,
  448 F.3d 66 (1st Cir. 2006), *aff'd*, 552 U.S. 364 (2008)................. 46

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) .................................................................... 25

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
  587 U.S. 601 (2019) .................................................................... 30

*Prometheus Radio Project v. FCC*, 373 F.3d 372 (3d Cir. 2004)............. 31

**CASES (continued):** **PAGE**

*Public Int. Legal Found., Inc. v. Bellows,*
    92 F.4th 36 (1st Cir.2024)……………………………………………...29

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966)............................3-4

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012).....................43

*United States v. Benson*, 819 F. Supp.3d 753 (W.D. Mich. 2026),
    *aff'd*, 179 F.4th 470 (6th Cir. 2026),
    *petition for reh'g en banc pending*......................................27-28, 34

*United States v. Comley*, 890 F.2d 539 (1st Cir. 1989) ......................34-36

*United States v. Georgia*, No. 1:06-cv-2442
    (N.D. Ga. Oct. 12, 2006) ...................................................33

*United States v. Lynd*, 301 F.2d 818 (1962) ...................................16, 21

*United States v. Powell*, 379 U.S. 48 (1964) .....................................16-20

*United States v. Sturm, Ruger & Co.*, 84 F.3d 1 (1st Cir. 1996) ............20

*Webster v. Doe*, 486 U.S. 592 (1988).......................................................22

**CONSTITUTION:**

U.S. Const. Art. I, § 4, Cl. 1...................................................................45

U.S. Const. Art. VI, Cl. 2........................................................................47

**STATUTES:**

Civil Rights Act of 1960 (CRA)
    52 U.S.C. 20701 *et seq.* ...........................................................1, 3
    52 U.S.C. 20701 ............................................................... *passim*
    52 U.S.C. 20701-20706 …………………………………..……..17, 26

**STATUTES (continued):**                                    **PAGE**

52 U.S.C. 20703 ................................................................*passim*

52 U.S.C. 20704 ......................................................... 4, 7, 30, 47

52 U.S.C. 20705 ......................................................... 4, 13, 18, 47

Pub. L. No. 86-449, § 601, 74 Stat. 90 .........................................26

E-Government Act of 2002

Pub. L. No. 107-347, 116 Stat. 2899 ...........................................41

§ 201 ..................................................................................42-43

§ 208(b)(1)(A)(ii)............................................................. 41, 43, 45

§ 208(b)(1)(B)(i)....................................................................41-43

Help America Vote Act of 2002 (HAVA)

52 U.S.C. 20901 *et seq.* ............................................................1

52 U.S.C. 21083(a)............................................................... 44

52 U.S.C. 21083(a)(1)(A) .......................................................5, 36, 44

52 U.S.C. 21083(a)(1)(A)(i)...................................................32

52 U.S.C. 21083(a)(1)(A)(ii)...................................................32

52 U.S.C. 21083(a)(1)(A)(iv)...................................................32

52 U.S.C. 21083(a)(1)(A)(vi)...................................................33

52 U.S.C. 21083(a)(1)(A)(viii)................................................5, 32

52 U.S.C. 21083(a)(2)(A) ........................................................5

52 U.S.C. 21083(a)(2)(A)(i)-(iii) .................................................6

52 U.S.C. 21083(a)(4) ..........................................................47

52 U.S.C. 21083(a)(5)(A)(i)...................................................6, 32

52 U.S.C. 21083(a)(5)(A)(i)-(ii) .................................................6

52 U.S.C. 21083(a)(5)(A)(iii)....................................................6

52 U.S.C. 21111 ..........................................................20, 38, 47

Pub. L. No. 107-252, 116 Stat. 1666 (2002)...................................27

National Voter Registration Act of 1993 (NVRA)

52 U.S.C. 20501 *et seq.* ............................................................1

52 U.S.C. 20501(a)(3) ..........................................................27

52 U.S.C. 20501(b)(3) ...........................................................5

52 U.S.C. 20507(a)(4) ...........................................................5

52 U.S.C. 20507(i)(1) ..........................................................5, 29

52 U.S.C. 20510(a)...........................................................20, 38

**STATUTES (continued):**                            **PAGE**

Privacy Act of 1974
    5 U.S.C. 552a(e)(4) ...................................................................39
    5 U.S.C. 552a(e)(4)(B) ............................................................40
    5 U.S.C. 552a(e)(7)............................................................38-39
    Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896 ..................................38

26 U.S.C. 7602 (1954 ed.) ...........................................................16

26 U.S.C. 7605(b) (1954 ed.)........................................................19

28 U.S.C. 1291 .........................................................................2

28 U.S.C. 1331 .........................................................................2

28 U.S.C. 1343 .........................................................................2

31 U.S.C. 5314(a) ....................................................................42

44 U.S.C. 3502 ....................................................................42-43

44 U.S.C. 3502(3)(A)(i) ..........................................................42, 44

44 U.S.C. 3502(3)(B) ................................................................43

44 U.S.C. 3502(10) ..................................................................42

44 U.S.C. 3518(c)(1)(B) .............................................................43

44 U.S.C. 3601 ....................................................................42-43

52 U.S.C. 10101 .....................................................................26

**RULES:**

Fed. R. App. P.
    2.................................................................................49-50

**RULES (continued):**                                                    **PAGE**

    40(d)(1) ........................................................................................ 50
    41(b) ............................................................................................. 49

Fed. R. Civ. P. 12(b)(6) ................................................................ 8, 12

**REGULATIONS:**

28 C.F.R. 0.50(a) ............................................................................ 40

68 Fed. Reg. 47,610 (Aug. 11, 2003) ....................................... 39-41

70 Fed. Reg. 43,904 (July 29, 2005) ............................................ 39

82 Fed. Reg. 24,147 (May 25, 2017) ............................................ 39

**LEGISLATIVE HISTORY:**

106 Cong. Rec. 7767 (1960) .......................................................... 26

**MISCELLANEOUS:**

Authority to Obtain & Share Statewide Voter Roll Data,
    50 Op. O.L.C. (2026),
    https://www.justice.gov/olc/media/1440346/dl ............................ 43

*Merriam-Webster's Collegiate Dictionary* (10th ed. 2002) ...................... 44

*The American Heritage College Dictionary* (4th ed. 2002) .................... 44

U.S. Dep't of Just., Civil Rights Division, Voting Section,
    https://www.justice.gov/crt/voting-section
    (last visited July 15, 2026).......................................................... 40

U.S. Dep't of Just., Justice Manual § 9-11.151 (2020) ........................ 41

**MISCELLANEOUS (continued):** **PAGE**

U.S. Dep't of Just., Mem. of Understanding between
the United States and Texas (May 13, 2008), *available at*
https://www.justice.gov/media/1173461/dl?inline
(last visited July 17, 2026) ........................................................... 34

U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA*,
https://www.eac.gov/sites/default/files/HelpAmericaVoteDay/
HAVA_1-Pager_10-22_508.pdf ....................................................... 28

## INTRODUCTION

The United States Department of Justice (DOJ or Department) brought this case against Rhode Island Secretary of State Gregg Amore alleging, *inter alia*, that he violated Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. 20701 *et seq.*, which entitles the federal government to demand certain records pertaining to elections for federal office. Specifically, the DOJ alleged that Secretary Amore violated the CRA by refusing the Attorney General's demand for an electronic, unredacted copy of Rhode Island's Statewide Voter Registration List (SVRL) to determine the State's compliance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq.*, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq.*

The district court granted Secretary Amore's and intervenors' (collectively, defendants) Motions to Dismiss the DOJ's Title III claim and denied the United States' Motion to Compel Production, concluding that the DOJ failed to provide an adequate basis and purpose of the demand. *See* 52 U.S.C. 20703. Because neither of these reasons for granting the Motions to Dismiss and denying the Motion to Compel Production have merit, this Court should reverse the district court's

Judgment and remand with instructions for the district court to order Secretary Amore to produce the requested SVRL.

## STATEMENT OF JURISDICTION

This appeal is from a final judgment in a civil case. The district court had jurisdiction under 28 U.S.C. 1331 and 1343. That court entered a final Memorandum and Order granting defendants' Motions to Dismiss and denying the United States' Motion to Compel Production on April 17, 2026, and a Judgment on April 22, 2026. Add. 1-15.[1] The United States filed a timely Notice of Appeal. App. 230-232. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

1. Whether the DOJ adequately stated the basis and purpose of its demand for an electronic, unredacted copy of Rhode Island's SVRL under Title III of the CRA.

2. Whether federal or state privacy laws prevent the DOJ from demanding an electronic, unredacted copy of Rhode Island's SVRL.

---

[1] "Doc. __, at __" refers to the docket number and internal page numbers on the district court docket sheet, No. 1:25-cv-639 (D.R.I.). "Add. __" refers to page numbers in the Addendum to this Brief. "App. __" refers to the page numbers of the Appendix filed with this brief.

## STATEMENT OF THE CASE

1.a. The CRA was passed by Congress to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such

- 3 -

record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703.

The Attorney General and his representatives are prohibited from disclosing such records or papers except to Congress and its committees, governmental agencies, and in the presentation of a court proceeding. 52 U.S.C. 20704. And, should it be necessary, the Attorney General may seek the aid of a district court: "The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. 20705.

b. Although Congress enacted the CRA, including Title III, with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *Katzenbach*, 383 U.S. at 313, Congress has since enacted additional laws that affect what "records and papers which come into [election officers'] possession," 52 U.S.C. 20701.

Relevant here are the NVRA and the HAVA, which help the federal government ensure that States are overseeing federal elections in a fair

- 4 -

and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3). The NVRA requires each State, with exceptions, "for at least 2 years . . . [to] make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1). The NVRA further requires each State to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . change in the residence of the registrant." 52 U.S.C. 20507(a)(4). Similarly, HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(2)(A).

Of highest importance to this litigation, HAVA requires States to implement a single centralized computerized SVRL, and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). This process includes removing

"individual[s]," "registrant[s]," and "ineligible voters," who should not appear on the lists. 52 U.S.C. 21083(a)(2)(A)(i)-(iii). HAVA also mandates that States may not "accept[] or process[]" an application for voter registration "unless the application includes" particular identifiers— namely, an applicant's "driver's license number" if he or she has one; "the last 4 digits of the applicant's social security number"; or, if the applicant has neither a driver's license nor a social security number, a state-assigned "unique identifying number." 52 U.S.C. 21083(a)(5)(A)(i)-(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements . . . in accordance with State law." 52 U.S.C. 21083(a)(5)(A)(iii).

2. On September 8, 2025, the DOJ sent a letter to Secretary of State Amore (the September 8 Letter), demanding an electronic, unredacted copy of the Rhode Island SVRL. App. 21-24. The letter stated that the SVRL "should contain *all fields*, which . . . must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under HAVA to register individuals for federal elections." App. 22 (citing 52 U.S.C. 21083(a)(5)(A)(i) (footnote omitted)).

- 6 -

The letter explained that "[t]he purpose of this request is to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." App. 23. In response to any federal privacy concerns the Secretary had with the requested information, the DOJ cited Section 304 of the CRA, which precludes, with limited exceptions, the Attorney General, his representatives, and DOJ employees from "disclos[ing] any record or paper . . . or any reproduction or copy" produced pursuant to the DOJ's demand. *Ibid.* (citing 52 U.S.C. 20704).

Secretary Amore refused the DOJ's demand by letter dated September 16, 2025. App. 25-27. The response offered the Department a copy of the publicly available voter registration list but objected to the DOJ's request for personally identifiable information (PII) such as a registrant's state driver's license number or the last four digits of the registrant's social security number. App. 26. Secretary Amore reasoned that the NVRA does not allow requests for voter PII, that such requests violate the Privacy Act and the E-Government Act, and that the CRA "allows access to voter records only in connection with an investigation into the infringement or denial of constitutional voting rights, which is not the basis cited in your letter." App. 26-27.

On December 2, 2025, the DOJ filed a Complaint against Secretary Amore, alleging that his refusal to provide the United States an electronic, unredacted copy of its SVRL violated Title III of the CRA, and a Motion to Compel Production of the SVRL. App. 7-16; Doc. 2. Secretary Amore, along with two sets of intervenor-defendants— (1) Common Cause, Catherine Saunders, Stuart Waldman, and Julia Sanches (collectively, Common Cause), and (2) SEIU District 1199NE, Rhode Island Alliance for Retired Americans, Carolyn Betensky, and Michael "Zack" Mezera (collectively, District 1199NE)—moved to dismiss the DOJ's Complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 25 (Common Cause); Docs. 26, 26-1 (Amore); Doc. 28 (District 1199NE). Defendants argued that the DOJ's demand failed to state a claim under Title III of the CRA, exceeded the scope of production the CRA requires, and violated both state and federal privacy laws. Add. 9.

3. On April 17, 2026, the district court entered a final Memorandum and Order dismissing the DOJ's Complaint and denying the DOJ's Motion to Compel Production. Add. 1-14. The court

- 8 -

subsequently issued a final Judgment in accordance with the Memorandum and Order. Add. 15.

The district court determined as a threshold matter that the ordinary operation of the Federal Rules of Civil Procedure applied and rejected the United States' argument, based on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) and related cases, that its demand for election records initiated a "special statutory proceeding" restricting the court to a "severely limited inquiry." Add. 8-9 (citation and internal quotation marks omitted).

On the merits, the district court solely addressed defendants' argument that the DOJ's demand failed to state a claim under Title III of the CRA. The court first determined that the Attorney General's written demand under Section 303 of Title III must provide "a factual, not legal basis" because to "[t]o read 'basis' as meaning a legal basis would conflate that requirement with the required statement of the demand's 'purpose.'" Add. 11. The court observed that *Lynd* "seems to contemplate a factual basis and a legal purpose under Title III" because the Attorney General based his demand for records in that case on "information . . . tending to show that distinctions on the basis of race or color have been

made with respect to registration and voting within your jurisdiction." Add. 12 (quoting *Lynd*, 306 F.2d at 229 n.6). The court then found that "the Attorney General's demand lacks a legally sufficient basis to satisfy Title III's requirements" because it did not have "any factual allegations suggesting that Rhode Island may be violating the list maintenance requirements of the NVRA and HAVA, let alone the CRA." Add. 12-13.

The court then determined that, even if the Attorney General's demand had specified a sufficient basis, it still would have been inadequate because it "lack[ed] a legally sufficient purpose." Add. 13.[2] In this respect, the court determined that the purpose required in a demand for federal election records under Section 303 of Title III "must relate to a purpose of investigating violations of individuals' voting rights." Add. 13-14 (citation omitted). In the court's view, the Attorney General's stated purpose of "ensur[ing] compliance with the NVRA and HAVA . . . does not plausibly" do so. Add. 14.

---

[2] The district court accordingly denied the United States' alternative request for "leave to send Secretary Amore a 'curing elaboration letter'" that would include a further "factual basis for [the United States'] Title III demand." Add. 13.

## SUMMARY OF THE ARGUMENT

The district court erred in dismissing the DOJ's Title III claim on the ground that the DOJ failed to state an adequate basis and purpose of its demand for an electronic, unredacted copy of Rhode Island's SVRL. The DOJ's assertion that it was trying to ascertain Rhode Island's compliance with the NVRA and HAVA sufficiently stated the basis of its demand. The DOJ was not required to allege specific facts to explain why it believed that the NVRA or HAVA may have been violated and why Rhode Island's unredacted SVRL was necessary for its investigation. This assertion also sufficiently stated a proper purpose of the DOJ's demand, as the NVRA and HAVA are voting-related statutes.

While the district court did not reach defendants' various privacy-related arguments, this Court should now reject these arguments as meritless. The demand did not violate the Privacy Act because the DOJ has an applicable System of Records Notice. The demand also did not violate the E-Government Act because it did not initiate a new collection of information and so did not trigger any need for a privacy impact assessment. Finally, the CRA preempts any contrary Rhode Island privacy law under the Constitution and Supreme Court precedent.

- 11 -

## STANDARD OF REVIEW

This Court "review[s] the grant of a motion to dismiss for failure to state a claim under [Federal] Rule [of Civil Procedure] 12(b)(6) de novo, taking the well-pleaded facts in the complaint as true and drawing all reasonable inferences in favor of the plaintiffs." *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 11 (1st Cir.), *petition for cert. pending*, No. 25-1426 (filed June 25, 2026). With "narrow exceptions," "a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto." *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013) (citation omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Clemente Props.*, 165 F.4th at 11 (alteration and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 679.

## ARGUMENT

**I.    The DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL satisfied Title III's requirements.**

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*), to "retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. 20701 (emphasis added).

Section 303 provides the Attorney General with a correspondingly comprehensive power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. After that written demand has been made, and the State election officer has rejected it, the Attorney General may seek an order from the federal court "with jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. 20705.

Notwithstanding the plain language of these provisions, the district court dismissed the DOJ's Title III claim on the ground that its demand for an electronic, unredacted copy of Rhode Island's SVRL failed to state an adequate basis and purpose. Add. 9-14. This was error. In its September Letter to Secretary Amore, the DOJ stated that "[t]he purpose of this request is to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." App. 23. Title III's plain language and relevant precedents compel the conclusion that the DOJ's demand provided a basis and purpose for its request for the information from Secretary Amore that was sufficient under the statute.

### A. Courts play a limited role in assessing the Attorney General's demand under Title III.

Courts undertake a limited role in evaluating the sufficiency of a demand under 52 U.S.C. 20703. The Attorney General's authority under Title III is a "purely investigative" one, *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General of the U.S.*, 285 F.2d 430 (5th Cir. 1961), and that "investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings," *Kennedy v. Bruce*, 298 F.2d 860,

863 (5th Cir. 1962) (citation omitted).

By seeking records required to be maintained under Section 20701 in court under Title III, the DOJ initiated "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd II*, 306 F.2d at 225. Such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but merely "a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, production, and copying.'" *Id.* at 225-226 (quoting 52 U.S.C. 20703).

Title III's special statutory proceeding limits how the Attorney General's demand for federal election records may be challenged and reviewed. Under the statute's plain language, "[t]here is no place for any . . . procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd II*, 306 F.2d at 226 (quoting 52 U.S.C. 20703). Accordingly, a state official responding to the

- 15 -

Attorney General's demand for federal election records may not utilize litigation tools ordinarily available under the Federal Rules of Civil Procedure to challenge "the reasons why the Attorney General considers the records essential." *Ibid.* Nor is "the factual foundation for, or the sufficiency of," this statement "open to judicial review or ascertainment." *Ibid.*; *see United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (*Lynd I*).

In reaching the contrary conclusion, the district court mistakenly relied on *United States v. Powell*, 379 U.S. 48 (1964), which concerned a court's ability to review the Internal Revenue Service's (IRS) demand for testimony and records from a taxpayer. The Internal Revenue Code (IRC) authorizes the IRS to issue an administrative summons to a taxpayer to appear and provide testimony and records that "may be relevant or material" to its "inquiry" made for one of several authorized "purpose[s]." *Id.* at 53 n.12 (quoting 26 U.S.C. 7602 (1954 ed.)). By its terms, the statute *requires* a reviewing court to intervene to determine if the documents and testimony the Government seeks are relevant or material to an inquiry made for a statutorily authorized purpose.

By contrast, no similar language cabins the Attorney General's

authority to compel records under the CRA. *See* 52 U.S.C. 20701-20706. Instead, the CRA authorizes the Attorney General, upon written demand, to obtain "*all* records and papers which come into [election officers'] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in [a federal] election," that the statute requires election officials to maintain and preserve for 22 months following that election. 52 U.S.C. 20701 (emphasis added), 20703. The CRA authorizes the Attorney General, upon written demand, to obtain a specifically identified set of documents as of right; there is neither a list of authorized purposes nor a requirement that a demand be relevant or material to such a purpose, as there was in *Powell*.

This district court nevertheless concluded that *Powell* applied because it "held that a demand made pursuant to a similar statute authorizing the production of documents by 'appropriate process' could be challenged 'on any appropriate ground,' and that the Government was required to show that they had met all of the statutory criteria for their request." Add. 8-9. To be sure, the CRA provides that after the Attorney General has made a written demand for records that the state election officer has rejected, he may seek an order from the federal court "with

- 17 -

jurisdiction by *appropriate process* to compel the production of such record or paper." 52 U.S.C. 20705 (emphasis added). Appropriate process merely requires, however, that the State election official to whom the Attorney General has made his demand "ha[s] been given reasonable notice of the pendency of the proceeding" and the opportunity to challenge "whether or not any specified particular paper or record comes within [Title III's] broad statutory classification." *Lynd II*, 306 F.2d at 226. There is no dispute that Secretary Amore received the DOJ's written demand for Rhode Island's SVRL, and that he also has received—and will continue to receive—access to the court to resolve disputes as to Title III's coverage or to seek a protective order. That was all the process to which Secretary Amore was entitled.

Consistent with this understanding, the Supreme Court later clarified that "*Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Donaldson v. United States*, 400 U.S. 517, 529 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520.

Contrary to the district court's belief, *Powell* does not compel the

conclusion that "appropriate process" further requires Secretary Amore to receive the opportunity to challenge the Attorney General's demand "on any appropriate ground." *Powell* explained that "a court may not permit its process to be abused" and that judicial inquiry into the IRS's demand for records was appropriate to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. at 58. That inquiry was specifically authorized by Section 7605(b) of the IRC, which prohibited the Government from subjecting a taxpayer "to unnecessary examination or investigations." *Id.* at 52-53 (quoting 26 U.S.C. 7605(b)). The CRA contains no similar statutory prohibition limiting the authority of the Attorney General to demand election records.

Moreover, even adopting the district court's position that *Powell* authorizes Secretary Amore to challenge the Attorney General's demand "on any appropriate ground," this basis is inapplicable here. *Powell* provided the following examples of an "improper purpose" for the IRS's summons that would constitute an abuse of process: "to harass the

taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. at 58. In other words, *Powell* justified judicial inquiry into the IRS's demand where it may have targeted the taxpayer for nefarious reasons having no bearing on law enforcement at all, not where it may have overreached in its understanding of its legitimate law enforcement powers. *See Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943) (holding that a district court had a "duty" to "order . . . production" where "[t]he evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose").

Here, defendants argued that the Attorney General lacked the authority under the CRA to compel Secretary Amore to produce Rhode Island's unredacted SVRL to determine the State's compliance with the NVRA and HAVA. *See* Doc. 26-1, at 16-18; Doc. 28, at 9-12. Because this challenge is to the scope of the Attorney General's authority to enforce the NVRA, *see* 52 U.S.C. 20510(a), and HAVA, *see* 52 U.S.C. 21111, it is not a proper subject for review. *See Endicott Johnson*, 317 U.S. at 509; *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 5 (1st Cir. 1996).

In sum, so long as the Attorney General has stated in writing the

basis and purpose of the demand, Title III is satisfied and the records must be produced. *See* 52 U.S.C. 20703.

## B.    The DOJ provided a valid basis for its demand.

The district court compounded its initial error of applying the wrong analytical framework to the DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL by grafting on Section 303's minimal basis-and-purpose requirement the mandate that the DOJ provide a "factual, not legal basis" for this demand. Add. 11. There is "no justification" for requiring the United States to "allege specific details" underlying its demand. *Lynd I*, 301 F.2d at 822. Accordingly, the court erred in rejecting the DOJ's stated basis of "ascertain[ing] Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA" as legally insufficient because it lacked "any factual allegations suggesting that Rhode Island may be violating the list maintenance requirements of the NVRA and HAVA, let alone the CRA." Add. 11-13 (citation omitted).

Nothing in the statute purports to authorize courts to second-guess or probe the sufficiency or sincerity of the Attorney General's statement. Indeed, the statute provides no meaningful standards that would permit

such judicial review. *Cf. Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute identifies only the scope of the "records and papers" that he may demand, 52 U.S.C. 20701, and a requirement that he communicate "the basis and the purpose" for his request, 52 U.S.C. 20703—not any standard against which to measure his statement of basis and purpose.

Instead, the Attorney General need only "identify in a general way the reasons for his demand," such as that it "was made for the purpose of investigating *possible* violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added; citation omitted); *see, e.g.*, *Bruce*, 298 F.2d at 861 (citation omitted) ("The purpose of this demand is to examine the aforesaid records to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."). Accordingly, the only "matters open for determination" by the court when a recipient of the Attorney General's demand challenges that demand are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226. Additionally, if "a genuine dispute subsequently

- 22 -

arises as to whether or not any specified particular paper or record comes within this broad statutory classification," that too may be addressed by the court. *Ibid.*

The DOJ's demand for an unredacted copy of Rhode Island's SVRL easily satisfied these requirements. In its September Letter, the Department stated that "the purpose of [the Department's] request [for the unredacted SVRL] is to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." App. 23. Under any reasonable interpretation of this statement the basis for the DOJ's written demand is clear—that Rhode Island's list maintenance program may violate the NVRA and HAVA—and thus the demand put Secretary Amore on "reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226. The district court's imposition of an additional requirement that the Attorney General provide a factual basis for his demand because "[t]o read 'basis' as meaning a legal basis would conflate that requirement with the required statement of the demand's 'purpose'" (Add. 11) finds no support in *Lynd II*.

The district court's attempt (Add. 12) to reconcile *Lynd II* with its factual-basis requirement is unavailing. That the United States in that

case based its demand for records on "information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction," 306 F.2d at 229 n.6, merely shows that a demand may include such information. Notably, though, the cited demand provided no details regarding what this "information" in the Attorney General's possession was. *See ibid.*; *see also id.* at 229 n.5 (noting that the demand in a consolidated case was "substantially in the same words").

Indeed, *Lynd II* expressly provides that "the factual foundation for, or the sufficiency of, the Attorney General's statement of the basis and the purpose contained in the written demand *is not open to judicial review or ascertainment.*" 306 F.2d at 226 (emphasis added; internal quotation marks and citation omitted). Accordingly, the district court erred in rejecting the legal sufficiency of the DOJ's stated basis because it lacked "any factual allegations suggesting that Rhode Island may be violating the list maintenance requirements of the NVRA and HAVA, let alone the CRA." Add. 12-13.

**C.    The DOJ's stated purpose of ascertaining Rhode Island's compliance with the NVRA and HAVA was sufficient.**

The district court also erred in concluding that the DOJ failed to state an adequate purpose of its demand for an electronic, unredacted copy of Rhode Island's SVRL because the Attorney General's stated purpose of "ensur[ing] compliance with the NVRA and HAVA . . . does not plausibly relate to individual voting rights" (Add. 14). The court's error was two-fold.

1. The district court's conclusion that a Title III demand must be for the "purpose of investigating violations of individuals' voting rights" (Add. 14 (citation omitted)) finds no support in the statute itself. Interpreting Title III's coverage "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). "[A] court engaged in the task of statutory interpretation must examine the statute as a whole, giving due weight to design, structure, and purpose as well as to aggregate language." *Cablevision of Bos., Inc. v. Public Improvement*

*Comm'n*, 184 F.3d 88, 101 (1st Cir. 1999) (citation omitted). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Dean v. United States*, 556 U.S. 568, 573 (2009) (alteration in original; citation omitted).

Here, no language limiting Title III to violations of individuals' voting rights appears anywhere in the statutory text. *See* 52 U.S.C. 20701-20706. By contrast, Congress made clear elsewhere in the CRA that it intended a remedy to be limited to particular harms—namely, racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (1960) (applying Title VI of the CRA to violations of rights "on account of race or color") (52 U.S.C. 10101). The plain text of Title III provides no limitation on the permissible purpose of the Attorney General's demand. It is sufficient that the Attorney General is "investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868 (quoting 106 Cong. Rec. 7767 (1960) (statement of Sen. Keating)).

2. In any event, the district court further erred in concluding that ensuring Rhode Island's compliance with the NVRA and HAVA does not

plausibly relate to individual voting rights. By broadly authorizing the Attorney General to demand election records from States, "[t]he CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich. 2026), *aff'd*, 179 F.4th 470 (6th Cir. 2026), *petition for reh'g en banc pending* (filed July 8, 2026).

The NVRA was passed based in part on Congress's finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3).

The HAVA, for its part, is a federal statute aimed at protecting voting rights. The statute "establish[es] minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666 (2002) (preamble). Those minimum standards, including accurate voter lists, were created to "address[] a variety of

improvements to voting systems and voter access that were identified following the 2000 election."[3]

Moreover, the Supreme Court has recognized that invalid votes—which can be minimized through the NVRA's and HAVA's procedures—can "dilute the right of citizens to cast ballots that carry appropriate weight." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). Because both the NVRA and the HAVA are federal election laws that protect voting rights, "the DOJ may use the CRA to investigate possible violations of" either statute. *See Benson*, 819 F. Supp. 3d at 767.

Defendants nevertheless argued below that the NVRA precludes the DOJ's demand for an unredacted copy of Rhode Island's SVRL because it was enacted after the CRA and allows redaction of highly sensitive personal information from voter records. *See* Doc. 25, at 16-17, 19; Doc. 26-1, at 26-27; Doc. 28, at 15-18. The NVRA requires that a State, with exceptions, "for at least 2 years . . . make available for public inspection and, where available, photocopying at a reasonable cost, all

---

[3] U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA* 1, https://www.eac.gov/sites/default/files/HelpAmericaVoteDay/HAVA _1-Pager_10-27-22_508.pdf.

records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1). Because of the privacy concerns associated with public inspection, courts have read into this provision an option for States to redact "uniquely or highly sensitive personal information," *Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases). This limitation may apply even when the Attorney General seeks to inspect those same records. And HAVA has no explicit inspection provision, for the Attorney General or otherwise.

Contrary to defendants' contention, the federal courts' interpretation of the NVRA's public-inspection provision, which allows inspection by *any* party, should not guide the interpretation of Title III. There is good reason why the public should not have access to the personal information of individuals, as they have neither the need for such information nor the mandate or means to protect it from unwarranted disclosure. By contrast, the Attorney General requires personal voter information to investigate possible NVRA violations, *see* pp. 31-33, *infra*, and is *prohibited* by Title III from disclosing records or

- 29 -

papers produced under the statute except under limited circumstances, *see* 52 U.S.C. 20704. Because it is well-settled that "Congress legislates against the backdrop of existing law," *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (citation omitted), a better inference is that Congress saw no need to provide an inspection provision for the Attorney General in the NVRA, because the CRA provided a pre-existing investigative tool. Indeed, if Title III only entitled the Attorney General to the same limited information that is fit for public disclosure, there would be little reason to create a CRA-specific privacy provision in Section 20704.

3. Secretary Amore further argued below that, aside from the deficiency of the DOJ's stated purpose, its Complaint also "fail[ed] to allege any facts to plausibly explain how or why an unredacted voter registration list is relevant to . . . assessing Rhode Island's compliance with NVRA's and HAVA's 'reasonable effort' requirements for voter list maintenance." Doc. 26-1, at 19; *see also* Doc. 25, at 12-13 (arguing that the DOJ failed to show that the unredacted SVRL was necessary to accomplish its stated purpose); Doc. 28, at 14 (same). Just as with the basis for the demand, *see* pp. 21-23, *supra*, the CRA does not leave "open

for determination" the "scope of the order to produce insofar as it concerns the nature of the records or papers." *Lynd II*, 306 F.2d at 226. "This is so because the papers and records subject to inspection and demand have been specifically identified by Congress." *Ibid.*

In any event, the DOJ's Complaint plausibly explained why the Department believed the unredacted SVRL to be "relevant" or "necessary" to its enforcement obligations under the NVRA and HAVA. *See, e.g.*, *Commissioner v. Tellier*, 383 U.S. 687, 689 (1966) (explaining that "necessary" in a tax statute means "appropriate and helpful") (citation omitted); *Prometheus Radio Project v. FCC*, 373 F.3d 372, 394 (3d Cir. 2004) (interpreting "necessary" to mean "convenient, useful, or helpful, not essential or indispensable" (internal quotation marks omitted)). The Complaint alleged that the September 8 Letter requested an electronic copy of Rhode Island's SVRL and "advised that the purpose of the request is to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." App. 11 (internal quotation marks and alteration omitted). The Complaint further alleged that the September 8 Letter requested that the SVRL "contain all fields," including the registrant's "state driver's license number, or the last four

digits of the registrant's social security number as required by HAVA to register individuals for federal elections." App. 11-12. Because HAVA prohibits a State from accepting or processing a voter registration application that lacks this information, *see* 52 U.S.C. 21083(a)(5)(A)(i), a court could draw the reasonable inference from these factual allegations that the DOJ needed this information to enforce list-maintenance requirements under the NVRA and HAVA.

Indeed, a closer examination of HAVA makes clear that preventing the DOJ from obtaining an unredacted copy of a State's SVRL would paralyze the United States' ability to enforce various federal voting laws. Because the SVRL is the only statewide mandated record of voters required to conduct every federal election, *see* 52 U.S.C. 21083(a)(1)(A)(viii), it is not just *any* record "requisite to voting," 52 U.S.C. 20701, in an election. Instead, the SVRL must "serve as the single system for storing and managing the official list of registered voters throughout the State," 52 U.S.C. 21083(a)(1)(A)(i), contain "the name and registration information of every legally registered voter in the State," 52 U.S.C. 21083(a)(1)(A)(ii), and be "coordinated with other agency databases within the State," 52 U.S.C. 21083(a)(1)(A)(iv). Moreover, "[a]ll

- 32 -

voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official." 52 U.S.C. 21083(a)(1)(A)(vi). In short, conducting federal elections is simply not possible without the SVRL.

Consequently, to ascertain whether a jurisdiction engages in practices that violate the CRA or HAVA (as well as the NVRA), for example, the Attorney General needs to examine both applications to register to vote and the final voting rolls, including the electronic SVRL, so as to assure himself that the applications are being properly processed and that reasonable list maintenance efforts have been practiced. *See Lynd II*, 306 F.2d at 228. For that reason, in two prior matters against Georgia and Texas, the United States obtained SVRLs that included registrants' state driver's license numbers and the last four digits of their Social Security numbers to evaluate the State's compliance with the NVRA, including that Act's list maintenance requirements.[4]

---

[4] *See* Compl., *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006). The Court entered a consent decree in the Georgia case requiring production of the SVRL. *See* Consent Decree, *Georgia*, *supra* (Oct. 27, 2006). The Texas matter was resolved by a Memorandum of

4. Finally, defendants argued below that the Attorney General's demand for Rhode Island's SVRL does not relate to list maintenance under the NVRA and HAVA but rather is a pretext for establishing a national voter database to target and remove individuals from the voter rolls illegally. *See* Doc. 25, at 2, 5-8, 14-15; Doc. 26-1, at 22; Doc. 28, at 4, 15. As already discussed, *see* pp. 21-23, 30-31, *supra*, 52 U.S.C. 20703 leaves no room for a court to second-guess the stated basis and purpose for the Attorney General's demand. Even if the demand was judicially reviewable, this Court should reject speculative allegations as to the true purpose of the DOJ's request. Under precedents involving administrative subpoenas, *see Benson*, 819 F. Supp. 3d at 765 ("constru[ing] a request for records under the CRA as a form of administrative subpoena"), this Court has held that a party resisting a subpoena based on claims of "bad faith" must support its assertions by "firm evidence." *United States v.*

---

Understanding. *See* U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), *available at* https://www.justice.gov/media/1173461/dl?inline (last visited July 17, 2026).

*Comley*, 890 F.2d 539, 542 (1st Cir. 1989).[5] "In the absence of firm evidence of bad faith, it is not [this Court's] role to intrude into the investigative agency's function," and accordingly, "discovery is improper in a summary subpoena enforcement proceeding" "[e]xcept in extraordinary circumstances." *Id.* at 543 (citations omitted).

Defendants' assertions of pretext fall well short of this standard. Intervenors relied on the fact that the DOJ has demanded from numerous States production of their unredacted SVRLs. Doc. 25, at 5; Doc. 28, at 4. Common Cause alleged that the DOJ has sought for several States to sign a Memorandum of Understanding that would "aggrandiz[e] election administration powers to the DOJ" in violation of the NVRA and HAVA. Doc. 25, at 14-15. And all three defendants have cited (Doc. 25, at 5-8; Doc. 26-1, at 22; Doc. 28, at 4) numerous news articles (largely based on inadmissible hearsay) and irrelevant filings, all of which are not properly subject to judicial notice. *See Freeman v. Town of Hudson*, 714

---

[5] The United States does not agree that these precedents apply to CRA claims because, as the Fifth Circuit has explained, the CRA leaves *no* room for evaluating the sufficiency of the Attorney General's asserted purpose. The United States invokes these precedents for the sake of argument.

F.3d 29, 36 (1st Cir. 2013). None of this shows "firm evidence" of pretext. *Comley*, 890 F.2d at 542-543. For the reasons stated above, the DOJ's stated purpose of its demand—"to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA" (App. 23)—is sufficient to satisfy the CRA and defendants' speculations about the Department's motives should not be part of this proceeding.

### D. Rhode Island's scope-of-production argument is no basis to reject the DOJ's demand.

Rhode Island argued below that the DOJ overstepped Title III by demanding the SVRL be produced "in electronic format." Doc. 26-1, at 28. Section 303 requires that a covered record "be made available for inspection, reproduction, and copying at the principal office of [the] custodian." 52 U.S.C. 20703. Nothing in the text of that statute precludes a demand for "reproduction" of the list, *ibid.*, in electronic form— particularly when the SVRL's native form is required by statute to be contained in a "centralized, interactive computerized" format, *see* 52 U.S.C. 21083(a)(1)(A). Rhode Island's concern that handing over the SVRL in electronic format is akin to giving the DOJ "*control* of the state's voter records" (Doc. 26-1, at 28) is misplaced. The DOJ has not asked for control of the SVRL, and providing a *copy* of the list in electronic format

- 36 -

gives the DOJ control over that copy only. Just as providing the DOJ a paper photocopy of a voter registration would not give the DOJ control over the actual voter registration, neither does giving the DOJ an electronic copy of the SVRL provide the DOJ control over the actual SVRL.[6]

## II. The DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL does not violate federal or state privacy laws.

Because the district court held that the DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL failed to state an adequate basis and purpose, it did not reach defendants' privacy-related arguments. Defendants argued below that the DOJ's demand violated two federal privacy laws—the Privacy Act and the E-Government Act— and Rhode Island privacy laws. *See* Doc. 25, at 14-18; Doc. 26-1, at 29-40; Doc. 28, at 18-22. None of these arguments justifies dismissal of the DOJ's Title III claim.

---

[6] In its Motion to Dismiss below, Rhode Island suggested that the DOJ also failed to honor Section 303's language requiring that documents "be made available . . . at the principal office of [the] custodian," 52 U.S.C. 20703. Doc. 26-1, at 28-29. Rhode Island has never offered to provide an electronic copy of the SVRL if a representative of the Attorney General went to the Secretary's office in person.

## A.     The DOJ's demand complied with the Privacy Act.

The Privacy Act was designed to "protect the privacy of individuals" through regulation of the "collection, maintenance, use, and dissemination of information" by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting the Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896).

1. Secretary Amore argued below that disclosure of the unredacted SVRL threatens the First Amendment rights of voters, which the Privacy Act was enacted to protect, because it identifies a voter's political party, if any, notes which citizens have chosen to register to vote, and shows which voters chose to vote in which elections. Doc. 26-1, at 34-35.

The Privacy Act prohibits a federal agency from "maintain[ing a] record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute . . . or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. 552a(e)(7). Enforcing the NVRA's and HAVA's list-maintenance requirements satisfies the law-enforcement exception. *See* 52 U.S.C. 20510(a), 21111 (giving the Attorney General enforcement authority). However, the United States agrees that certain information,

like an individual's party affiliation and how that individual votes (including for which party), both "describ[es] how an[] individual exercises" his First Amendment rights and is not "pertinent to" the DOJ's investigation. 5 U.S.C. 552a(e)(7). Accordingly, the United States will not object to a redaction of that information in the State's SVRL. Any argument that additional information cannot be provided due to the Privacy Act is an appropriate avenue for inquiry on remand.

2. Defendants argued below that the DOJ failed to identify a System of Records Notice (SORN) required by the Privacy Act, *see* 5 U.S.C. 552a(e)(4), that covers an unredacted SVRL. *See* Doc. 26-1, at 35-37; Doc. 28, at 20-22. Not so. The full list of routine uses for the DOJ's collection of voter information can be found in the SORN titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610, 47,611 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed. Reg. 24,147 (May 25, 2017). The SORN states that "[t]he records in the system of records are kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51." 68 Fed. Reg. at 47,611. And the cited regulation, in turn, makes

clear that the Civil Rights Division is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting." 28 C.F.R. 0.50(a). Accordingly, the SORN covers the NVRA, HAVA, and the CRA as statutes for routine use.[7]

No more persuasive is defendants' argument that the Privacy Act's requirement that a SORN identify "the categories of individuals on whom records are maintained in the system," 5 U.S.C. 552a(e)(4)(B), cannot be read to include all registered voters in Rhode Island and other States. *See* Doc. 26-1, at 36; Doc. 28, at 20-21. The SORN covers a variety of people, including "[s]ubjects of investigations, [and] victims." 68 Fed. Reg. at 47,611. The term "subject[]" is a "term[] of art in the context of DOJ investigations," *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted), which, for as long as the relevant SORN has existed, has included anyone whose "conduct is within the scope of the . . .

---

[7] The SORN further identifies the "Civil Rights Division Web page" as a source for "[t]he delegated legal duties and responsibilities of each section" of the Division. 68 Fed. Reg. at 47,611. And the Voting Section's webpage identifies all three statutes prominently and by name. U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited July 15, 2026).

investigation," U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury#. Persons who appear in a statewide voter registration list are "[s]ubjects of investigations," 68 Fed. Reg. at 47,611, as their voter registrations are within the scope of the Division's investigation into voter fraud. Moreover, because eligible voters' votes may be diluted by votes cast by non-eligible voters, *see Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021), they are potential "victims" of NVRA and HAVA non-compliance, 68 Fed. Reg. at 47,611.

**B.    The E-Government Act does not prevent the DOJ from obtaining data supporting its NVRA and HAVA claims.**

Pursuant to the E-Government Act, agencies must "conduct a privacy impact assessment" (PIA) before "initiating a new collection of information" in particular circumstances "if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons." E-Government Act of 2002, Pub. L. No. 107-347, § 208(b)(1)(A)(ii) and (B)(i), 116 Stat. 2899, 2921-2922 (44 U.S.C. 3501 note) (hereinafter cited without reference to the Statutes at Large or the U.S. Code note). And a "collection of information" is—with certain exclusions noted below—the act of "obtaining, causing to be obtained,

soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for," as relevant here, "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," where a "person" can include a "State." 44 U.S.C. 3502(3)(A)(i) and (10); *see* E-Government Act § 201 (incorporating definitions from 44 U.S.C. 3502 and 3601). The PIA requirement does not apply here for several reasons.

First, the Attorney General has not asked identical questions of nor imposed any reporting requirements on any persons in connection with the Department of Justice's demand for Rhode Island's (or any State's) SVRL. E-Government Act § 208(b)(1)(B)(i); *cf.* 31 U.S.C. 5314(a) (mandating that the Secretary of the Treasury require individuals "to keep records, file reports, or keep records and file reports" whenever individuals engage in transactions or maintain relationships with "any person with a foreign financial agency").

Second, a "collection of information" does not include information collected during an investigation like the type the Department is carrying out here. "The term 'collection of information' . . . shall not include a

collection of information described under [44 U.S.C. 3518(c)(1)]." 44 U.S.C. 3502(3)(B); *see* E-Government Act § 201. And Section 3518(c)(1)(B), in turn, excludes any collection of information "during the conduct of . . . an . . . investigation involving an agency against specific individuals or entities." The Department's investigation into Rhode Island's compliance with the NVRA and HAVA falls squarely within this carve-out. *See* Authority to Obtain & Share Statewide Voter Roll Data, 50 Op. O.L.C., at 33 (2026), https://www.justice.gov/olc/media/1440346/dl.

Third, the Attorney General has not "initiat[ed] a new collection of information." E-Government Act § 208(b)(1)(A)(ii) and (B)(i). "The term 'initiating'" in the E-Government Act "has no statutory . . . definition," *Electronic Privacy Info. Ctr.* (*EPIC*) *v. United States Dep't of Com.*, 356 F. Supp. 3d 85, 87 (D.D.C.), *vacated and remanded on other grounds*, 928 F.3d 95 (D.C. Cir. 2019), nor does the term "new." *See* 44 U.S.C. 3502, 3601. Accordingly, courts give these terms their "ordinary meaning" and may consult dictionary definitions. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566-568 (2012). "Contemporary dictionaries define 'initiate' as '[t]o begin, commence, enter upon; to introduce, set going, give rise to,

- 43 -

originate, 'start' (a course of action, practice, etc.).'" *EPIC*, 356 F. Supp. 3d at 89 (citation omitted; brackets in original) (collecting definitions). The relevant definition of "new" is "[h]aving been made or come into being only a short time ago; recent" or "[n]ever used . . . before now." *The American Heritage College Dictionary* 936 (4th ed. 2002); *see Merriam-Webster's Collegiate Dictionary* 780 (10th ed. 2002) (defining "new" as "having existed or having been made but a short time" or "different from one of the same category that has existed previously").

The demand in this case did not begin any new collection of information. The Attorney General demanded that Secretary Amore provide the State's SVRL, which the State was required to "define[], maintain[], and administer[] at the State level." 52 U.S.C. 21083(a)(1)(A). Ever since the passage of HAVA, an SVRL must "contain[] the name and registration information of every legally registered voter in the State and assign[] a unique identifier to each legally registered voter in the State." *Ibid.*; *see generally* 52 U.S.C. 21083(a). Seeking information already maintained by the State due to *pre-existing* "reporting or recordkeeping requirements," 44 U.S.C. 3502(3)(A)(i) (defining "collection of

information"), is not the "*initiat*[*ion* of] a *new* collection of information," E-Government Act § 208(b)(1)(A)(ii) (emphasis added).

### C. Federal law preempts any contrary Rhode Island privacy law.

Notwithstanding a State's broad constitutional authority over the conduct of federal elections, Congress can override those state choices. U.S. Const. art. I, § 4, cl. 1. The Supreme Court has explained that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Foster*, 522 U.S. at 69 (brackets in original) (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 7-9 & n.1 (2013) (discussing the breadth of the Elections Clause).

A "state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000). Conflict preemption applies both "where it is

- 45 -

impossible for a private party to comply with both state and federal law" and where "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372-373 (brackets in original; citation omitted). Whether a state law poses a sufficient obstacle to implicate preemption is determined "by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* at 373; *see also New Hampshire Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 74 (1st Cir. 2006) ("In every preemption case, the purpose of Congress is the ultimate touchstone." (internal quotation marks and citation omitted)), *aff'd*, 552 U.S. 364 (2008). A state law that "undermines the intended purpose and 'natural effect'" of federal law is preempted. *Crosby*, 530 U.S. at 373.

Congress enacted broad regulations over the conduct of federal elections in the two statutes at issue in this litigation. Title III of the CRA imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). The CRA, moreover, imposes its own privacy protections for records and papers demanded

under Section 20703. *See* 52 U.S.C. 20704. And HAVA requires states to implement a computerized SVRL and establish "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. 21083(a)(4). Section 303 of HAVA mandates that every state "ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Ibid.* Only the United States, through the Attorney General, is authorized to compel records under Title III of the CRA and to enforce Section 303 of HAVA. *See* 52 U.S.C. 20703, 20705 (CRA); 52 U.S.C. 21111 (HAVA).

For the reasons explained above, *see* pp. 13-37, *supra*, the United States is entitled under federal law to compel and inspect Rhode Island's unredacted SVRLs. To the extent that state law prohibits Rhode Island from complying with the DOJ's demands—as defendants insisted below state law does, *see* Doc. 25, at 17-18; Doc. 26-1, at 29-33—that state law must yield. *See* U.S. Const. art. VI, cl. 2; *see also Inter Tribal Council*, 570 U.S. at 15 ("States' role in regulating congressional elections—while

- 47 -

weighty and worthy of respect—has always existed subject to the express

qualification that it 'terminates according to federal law.'" (quoting

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001))).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and denying the Motion to Compel Production, and remand with instructions to order Secretary Amore to immediately produce the requested unredacted SVRL. This Court should make clear that Title III of the CRA authorizes the United States to demand from a State an electronic, unredacted copy of its SVRL to determine the State's compliance with the NVRA, as set forth above.

Further, because the district court's application of an erroneous framework has deprived the DOJ of the "prompt and expeditious inspection" that is required under Title III, the "mandate of this Court sh[ould] issue forthwith." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962); *see* Fed. R. App. P. 2, 41(b). Contrary to arguments raised in opposition to the United States' Motion to Expedite, a decision in August or September still would allow the United States to work with Rhode Island to take real steps to clean up its SVRL, if necessary, prior to the upcoming November 3, 2026, general election. The United States is confident that States will not ignore out-of-hand alerts from the United States that their SVRLs contain ineligible voters.

In the alternative, and for the same reason, the United States requests that the Court shorten the time for filing a petition for rehearing and rehearing en banc. *See* Fed. R. App. 2, 40(d)(1).

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

Date: July 17, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 9786 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: July 17, 2026

## CERTIFICATE OF SERVICE

I certify that on July 17, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
 Attorney

# ADDENDUM

# TABLE OF CONTENTS

**PAGE**

Memorandum and Order Granting
    Defendants' Motions to Dismiss, filed April 17, 2026
    (Doc. 51) ...................................................................................1

Judgment, filed April 22, 2026 (Doc. 52) ...............................................15

52 U.S.C. 20701 .......................................................................................16

52 U.S.C. 20703 .......................................................................................16

52 U.S.C. 20704 .......................................................................................17

52 U.S.C. 20705 .......................................................................................17

Case 1:25-cv-00639-MSM-PAS Document 55 Filed 04/17/26 Page 1 of 14 PageID #: 853

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>GREGG M. AMORE, in his official<br>capacity as Secretary of State for the<br>State of Rhode Island,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 25-cv-00639-MSM-PAS |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

On September 8, 2025, the United States Department of Justice ("DOJ") sent a letter to Rhode Island Secretary of State Gregg Amore requesting an unredacted electronic copy of Rhode Island's statewide voter registration list. (ECF No. 2-2 at 5–7.) This list would include the last four digits of registered voters' Social Security numbers and their Rhode Island driver's license numbers. *Id.* at 5. DOJ has, over the last year, made similar demands to nearly every other state. When Secretary Amore refused to provide a voter registration list containing that sensitive information, the United States sued. (ECF No. 1.)

Before the Court is the United States' Motion to Compel Production (EFC No. 2) of an unredacted copy of Rhode Island's voter registration list. Also before the Court are the Motions to Dismiss of Secretary Amore (ECF No. 26), Intervenors Common Cause, Catherine Saunders, Stuart Waldman, and Julia Sanches (ECF No.

Add. 1

25), and Intervenors SEIU District 1199NE, the Rhode Island Alliance for Retired Americans, Carolyn Betensky, and Michael "Zack" Mezera (ECF No. 28) (collectively, "Defendants"). For the following reasons, the Court DENIES the United States' Motion to Compel Production (ECF No. 2) and GRANTS Defendants' Motions to Dismiss (ECF Nos. 25; 26; 28).

## I. BACKGROUND

The Elections Clause of the United States Constitution provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of [choosing] Senators." U.S. Const. art. I, § 4, cl. 1. The authority delegated to the states in managing elections includes the authority to oversee "notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). Thus, except where federal law provides otherwise, states have substantial discretion in regulating elections, including maintaining voter registration lists. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 8–9 (2013).

Two federal laws require each state to undertake a "reasonable effort" to maintain the accuracy and currency of its statewide voter registration list. First, the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, requires states to "conduct a general program that makes a reasonable effort to remove the names of

Add. 2

ineligible voters from the official lists of eligible voters" who die or change their residence, as well as to send confirmation notices to voters following any change in residence. *Id.* § 20507(a)–(f). To facilitate public oversight, each covered state must "maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," subject to specific exemptions. *Id.* at § 20705(i). Nothing in the NVRA "prohibits the appropriate redaction of uniquely or highly sensitive personal information" from voting registration records. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases).

Second, the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq.*, requires each state to develop a single, computerized official statewide voter registration list that includes a unique identifier for reach registered voter. *Id.* § 21083(a)(1)(A). As part of this requirement, states must also adopt a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." *Id.* at § 21083(a)(4)(A). HAVA has no public disclosure requirements and provides DOJ with no subpoena authority. *See id.* § 21111. HAVA expressly provides that the "specific choices on the methods of complying with [its] requirements . . . shall be left to the discretion of the State." *Id.* 21085.

Add. 3

In 2005, the Rhode Island Secretary of State implemented a statewide central voter register called the Central Voter Registration System ("CVRS"). R.I. Gen. Laws § 17-6-1.2. A person seeking to register to vote must complete a Voter Registration Form, which collects a range of confidential and sensitive personally identifiable information. 410-RICR-20-00-19.5(A). No voter may have more than one voter registration. R.I. Gen. Laws § 17-9.1-19. Registrants must confirm their United States citizenship, residence in Rhode Island, and that they are at least 16 years of age. *Id.* §§ 17-9.1-11, 17-9.1-33. Registrants must provide a Rhode Island driver's license or State ID card number or the last four digits of their Social Security number. 410-RICR-20-00-19.5(A)(1)(d)(1). All registrants must "swear or affirm" that they are a U.S. citizen, live at the address listed on the form, and will be at least eighteen years old before voting in next general election. 410-RICR-20-00-19.5(A)(1)(k). These attestations must be signed under penalty of perjury, and Rhode Island law criminalizes providing false voter registration information. R.I. Gen. Laws § 17-9.1-12.

Rhode Island uses several different methods to prevent duplication, confirm residence, and remove deceased or otherwise ineligible voters from its voter registration list. Voter information, which is by default automatically updated anytime a voter updates their address with the Rhode Island Department of Motor Vehicles, is electronically transmitted daily to the CVRS. R.I. Gen. Laws § 17-9.1-7(d). An online voter registration portal allows citizens to update their voter information at any time. *Id.* § 17-9.1-34. The state requires each city or town's local

Add. 4

board to confirm registered voters' addresses through the mail, and it engages in a confirmation process where mailed confirmation forms are returned as undeliverable. *Id.* §§ 17-9.1-25, 17-9.1-26. Rhode Island verifies voter information through verification mailings conducted each year. *Id.* § 17-9.1-27(b).

The Rhode Island Office of the State Registrar of Vital Records electronically transmits a list of deceased persons eighteen years of age or older monthly, *see id.* § 23-3-5(a)(6); 100-RICR-20-00-5(C)(2), and local boards of canvassers update the list using information provided by the federal Social Security Administration's Death Master File, *see* R.I. Gen. Laws § 17-10-1(c). Rhode Island participates in the Electronic Registration Information Center ("ERIC"), which uses a variety of datasets, including state voter registration and DMV records, to determine the accuracy of states' voter rolls. *See* ECF No. 2-1 at 11 (acknowledging Rhode Island's participation in ERIC). Rhode Island also updates the CVRS to ensure that people who are ineligible to vote because they are incarcerated for a felony conviction are removed from the voter registration list. 100-RICR-20-00-2(2.4)(C)(1-2); 100 RICR-20-00-5(C)(3).

In its September 8, 2025, letter to Secretary Amore (the "Demand Letter"), DOJ stated that the purpose of its demand for an unredacted copy of Rhode Island's statewide voter registration list was "to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and the HAVA." (ECF No. 2-2 at 6.) The Demand Letter did not identify any facts suggesting that Rhode Island has not complied with the NVRA and HAVA, and it did not otherwise expressly identify any

Add. 5

factual basis for DOJ's demand. *See id.* The Demand Letter states that DOJ's authority to request Rhode Island's voter registration list was made pursuant to (1) "the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions"; (2) HAVA . . . via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements"; and (3) Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701, *et seq. Id.* at 5–6.

In response to the Demand Letter, on September 16, 2025, Secretary Amore sent a letter to DOJ offering to supply DOJ with a copy of Rhode Island's publicly available voter registration list but declining to supply the unredacted information specified by DOJ in its demand. *Id.* at 9–10. Secretary Amore's response contended that the authorities cited by DOJ did not authorize its demand. *Id.* Specifically, Secretary Amore asserted that the CRA "allows access to voter records only in connection with an investigation into the infringement or denial of constitutional voting rights" which was not the purpose stated in DOJ's letter. *Id.* at 10.

The United States filed suit against Secretary Amore in his official capacity on December 2, 2025, alleging that his refusal to provide the unredacted voter registration list violated the CRA. (ECF No. 1.) That same day, the United States filed a Motion to Compel Production (ECF No. 2), requesting the Court order Secretary Amore turn over the unredacted voter registration lists pursuant to a "special statutory proceeding" purportedly authorized by the CRA.

Add. 6

The Court subsequently granted unopposed Motions to Intervene (ECF Nos. 5; 15) by two groups of Intervenors. The first group consists of Common Cause—a "non-partisan, good-government organization dedicated to grassroots voter engagement in Rhode Island"—and three Rhode Island voters. (ECF No. 5 at 8.) The second group consists of SEIU District 1199NE and the Rhode Island Alliance for Retired Americans—Rhode Island membership-based organizations asserting an interest in preventing sensitive personal information on Rhode Island's statewide voter list from being disclosed to the federal government—and two Rhode Island voters. Secretary Amore and the Intervenors all move to dismiss the United States' Complaint. (ECF Nos. 25; 26; 28.)

The Court held a hearing on the parties' Motions on March 26, 2026. *See* ECF No. 47 (hearing transcript). In that hearing, the United States proposed that its unprecedented demands for unredacted voting rolls are the result of its "trust but verify" approach to the states' list maintenance efforts. *Id.* at 49. Despite some references to a 2024 Election Assistance Commission report purportedly showing that Rhode Island could conduct more kinds of voter registration list audits than it currently does, *see id.* at 46, 68, 86, the United States acknowledged that the Demand Letter stated no factual basis for DOJ's request, *id.* at 63.

While the present Motions were pending, four other federal district courts issued decisions on nearly identical cases brought by the United States seeking unredacted voter registration information from California, Oregon, Michigan, and Massachusetts. *See United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL

Add. 7

118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026); *United States v. Galvin*, No. CV 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026).  All four courts dismissed the United States' lawsuits.

## II.    STANDARD OF REVIEW

The parties dispute the appropriate standard of review for this case.  According to the United States, it is entitled under Title III of the CRA to a "special statutory proceeding" on its Motion to Compel Production, under which the Court is restricted to a "severely limited" inquiry.  (ECF No. 33 at 5.)  Title III's text does not expressly provide for such a proceeding and instead provides that district courts have jurisdiction over voting records demands "by appropriate process."  52 U.S.C. § 20705. The sole support for the United States' position is a line of Fifth Circuit cases from the 1960s, most notably *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).

Defendants argue that the Federal Rules of Civil Procedure govern this case, and that DOJ is not entitled to any sort of summary or abbreviated procedures for obtaining the information it seeks.  (ECF No. 23–26.)  The Court agrees.  Two years after *Lynd*—a decision that is not binding on this Court and is steeped in the context of 1960s racial discrimination in voter registration—the Supreme Court held that a demand made pursuant to a similar statute authorizing the production of documents by "appropriate process" could be challenged "on any appropriate ground," and that the Government was required to show that they had met all of the statutory criteria

Add. 8

for their request. *See United States v. Powell*, 379 U.S. 48, 57–58 (1964); *see also Weber*, 2026 WL 118807, at *8 ("Contrary to the position the DOJ takes, Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause."); *United States v. Oregon*, 2026 WL 318402, at *8 ("The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*.").[1]

As such, the appropriate standard of review for this case is that common to motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). Under that standard, to avoid dismissal, a plaintiff must set forth a "plausible claim." The reviewing court must assume the truth of all "well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Thomas v. Rhode Island,* 542 F.3d 944 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   DISCUSSION

Defendants challenge the United States' demand as failing to state a claim under Title III of the CRA, exceeding the scope of production required by the CRA, and in violation of both state and federal privacy laws. (ECF No. 26-1 at 25–50.)

---

[1] The Court also shares the *United States v. Oregon* court's doubt that *Lynd* could be applicable here where—unlike *Lynd*, which "appears to contemplate an application directly to the court for the records—the United States "made an affirmative choice to file a complaint and proceed through ordinary litigation." 2026 WL 318402, at *8 (citing *Lynd*, 306 F.2d at 225).

Add. 9

Because this case is resolved by the first of these grounds, the Court focuses its analysis there.

To begin, the Court turns to the context of Title III of the CRA, as explained in *Weber*:

> Title III of the Civil Rights Act of 1960 was passed during the Jim Crow era, when persistent voter suppression was preventing Black Americans from voting. States were utilizing literacy tests, arbitrary registration tactics, voter ID laws, and poll taxes to keep minorities away from the ballot. Black Americans risked intimidation and violence every time they tried to access the polls. To hide their complicity in voter suppression, state officials destroyed the records of Black Americans who had registered to vote, as well as those denied the opportunity to register. The bipartisan Commission on Civil Rights lamented in 1958 that even when records were not destroyed, states refused to turn them over, thwarting efforts by the federal government to investigate whether there was a pattern and practice of disenfranchising Black Americans. Title III was enacted directly in response to these concerns, requiring states to retain and preserve all records pertaining to voter registration, voting applications, and payments of poll taxes.

2026 WL 118807 at *1.

Based on this context, Title III's purpose is to enable the federal government to detect voting-related racial discrimination. *Id.* at *8. To accomplish this, Title III sets out certain requirements regarding federal election records, and penalizes the theft, destruction, or alteration of those records. *See* 52 U.S.C. §§ 20701, 20702. Title III further authorizes the Attorney General to compel the production of those voting records upon a written demand. *Id.* § 20703.

At issue in this case is whether the Attorney General may use § 20703 to demand voting records for purposes unrelated to voting-related racial discrimination. The statute itself does not cabin its application solely to that context. But it does

10

Add. 10

impose one crucial requirement on any voting records demand by the Attorney General: the demand "shall contain a statement of the basis and the purpose therefore." *Id.*

The United States' position is that "the basis for the demand was Title III of the [CRA]," and that "the purpose was 'to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA.'" (ECF No. 33 at 4.) But the Court finds that neither the basis nor the purpose proposed by the United States for its demand is legally sufficient to support a claim under Title III.

First, the Court agrees with *Weber*, *United States v. Oregon*, and *Galvin* that the "basis" contemplated by Title III is a factual, not legal basis. *See Weber*, 2026 WL 118807, at *9; *United States v. Oregon*, 2026 WL 318402, at *8–9; *Galvin*, 2026 WL 972129, at *4.[2] To read "basis" as meaning a legal basis would conflate that requirement with the required statement of the demand's "purpose." As explained in *United States v. Oregon*, "[i]f the purpose is to investigate violations of a statute, the basis must be something else; the statute underlying the investigation is nothing more than a component of the purpose." 2026 WL 318402, at *9; *see also Galvin*, 2026 WL 972129, at *5 ("If Congress sought to direct the Attorney General to include a citation to Title III in demand letters, requiring the letter to contain a 'statement of

---

[2] *Benson* also appears to have contemplated "basis" as meaning a factual basis, but—unlike here—the demand letter there actually did contain at least some factual basis for the records request. *See* 2026 WL 362789, at *8 (reviewing how DOJ's demand letter "pointed to several purported anomalies within Michigan's voter registration data: a high percentage of registered voters, a low confirmation notice rate, a low voter removal rate, and a high duplicate registration rate").

Add. 11

the basis and the purpose therefor' would not be the obvious way to do so."). While the United States suggests that Title III essentially authorizes factually groundless "fishing expeditions," *see* ECF No. 47 at 63, Congress could not have intended Title III to be interpreted in this redundant and circular manner.

This reading is consistent with the line of Fifth Circuit cases, most notably *Lynd*, upon which the United States presses the Court to rely here. In *Lynd*, for example, the court noted that the Attorney General's demand letter made the following statement of basis and purpose:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.

> The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred

306 F.2d at 226 n.6; *see also id.* at 226 (referring to the "factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand"). *Lynd* thus seems to contemplate a factual basis and a legal purpose under Title III.

With that understanding, the Court finds that the Attorney General's demand lacks a legally sufficient basis to satisfy Title III's requirements. Absent from the demand are any factual allegations suggesting that Rhode Island may be violating

Add. 12

the list maintenance requirements of the NVRA and HAVA, let alone the CRA. This alone would be enough to foreclose judicial enforcement of the demand.[3]

Following *Galvin*'s dismissal of the United States' suit in Massachusetts, the United States requested that, should the Court follow *Galvin*, DOJ be permitted leave to send Secretary Amore a "curing elaboration letter" presumably containing some factual basis for its Title III demand. But even were the Demand Letter to contain a factual basis, it would still fail to state a claim under Title III because it lacks a legally sufficient purpose. The Court again finds itself in agreement with both *Weber* and *United States v. Oregon* in determining that Congress cannot have intended Title III as permitting such a demand based on a statement of *any* purpose. *See Weber*, 2026 WL 118807, at *9 (noting that the fact that Title III precedes the NVRA means that it cannot have been passed "as a tool for NVRA compliance"); *United States v. Oregon*, 2026 WL 318402, at *9–10 ("If *any* purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function.") (emphasis in original).

Instead, the Court finds persuasive *United States v. Oregon*'s conclusion that, "[r]eading Title III's text within its larger statutory and historical context, and consistent with . . . case law and legislative history . . . the 'purpose' required in a

---

[3] This would likely be true even were the Court to apply the "special statutory proceeding" described in *Lynd*. Based on *Lynd*, the United States proposes that the Court's review is limited to, *inter alia*, assessing the following question: "did the Attorney General make a written demand for federal records stating the basis and purpose." (ECF No. 33 at 5) (citing *Lynd*, 306 F.2d at 225–26). But if the written demand contains *no* statement of a basis within the meaning of 52 U.S.C. § 20703— that is, a factual basis—then that threshold requirement is not satisfied.

Add. 13

demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights." 2026 WL 318402, at *10. With that established, the purpose stated in the Attorney General's demand—purportedly, to ensure compliance with the NVRA and HAVA—does not plausibly relate to individual voting rights. As such, even were the Court to grant DOJ leave to send its requested "curing elaboration letter" containing a factual basis for its allegation that Rhode Island might be falling short of its obligations under the NVRA or HAVA, that letter would remain legally insufficient to support a Title III records demand because its purpose would fall outside Title III's intended scope.

## IV.    CONCLUSION

Neither the NVRA nor HAVA authorize DOJ to conduct the kind of fishing expedition it seeks here. As such, for the foregoing reasons, the Court DENIES the United States' Motion to Compel Production (ECF No. 2) and GRANTS Defendants' Motions to Dismiss (ECF Nos. 25; 26; 28).

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

April 17, 2026

Add. 14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

USA,

       Plaintiff,

v.

Gregg Amore

       Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 1:25-CV-00639-MSM

**JUDGMENT**

IT IS ORDERED AND ADJUDGED:

Judgment hereby enters in accordance with the Memo and Order of 4/17/2026.

Enter:
/s/ C. Potter
Deputy Clerk
Dated 4/22/2026

Add. 15

**52 U.S.C. 20701. Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation.**

Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

**52 U.S.C. 20703. Demand for records or papers by Attorney General or representative; statement of basis and purpose.**

Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

Add. 16

**52 U.S.C. 20704. Disclosure of records or papers.**

Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

**52 U.S.C. 20705. Jurisdiction to compel production of records or papers.**

The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.

Add. 17