No. 26-1665

# United States Court of Appeals for the First Circuit

UNITED STATES,
*Plaintiff-Appellant*,

v.

GREGG AMORE, in the official capacity as Secretary of State of Rhode Island; COMMON CAUSE; CATHERINE SAUNDERS; STUART WALDMAN; JULIA SANCHES; SEIU DISTRICT 1199NE; RHODE ISLAND ALLIANCE FOR RETIRED AMERICANS; CAROLYN BETENSKY; MICHAEL ZACK MEZERA,
*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Rhode Island, No. 25-cv-639

**BRIEF FOR DEFENDANT-APPELLEE GREGG M. AMORE**

JAMES J. ARGUIN (#39225)
MEGAN ROK (#1225743)
KYLA DUFFY (#1223931)
PAUL MEOSKY (#1210551)
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 (Phone)
(401) 222-2995 (Fax)
jarguin@riag.ri.gov
mrok@riag.ri.gov
kduffy@riag.ri.gov
pmeosky@riag.ri.gov

Dated: August 17, 2026

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

STATEMENT OF THE ISSUES ........ 4

STATEMENT OF THE CASE ........ 5

I. RHODE ISLAND'S VOTER LIST MAINTENANCE EFFORTS ........ 6

II. DOJ'S DEMAND LETTER AND SECRETARY AMORE'S RESPONSE .. 7

III. DISTRICT COURT PROCEEDINGS ........ 8

SUMMARY OF THE ARGUMENT ........ 10

STANDARD OF REVIEW ........ 12

ARGUMENT ........ 14

I. DOJ FAILED TO STATE A CLAIM UNDER TITLE III OF THE CRA .. 14

A. DOJ's complaint is subject to the Federal Rules of Civil Procedure ........ 16

B. The district court correctly dismissed the complaint for failure to state the basis and the purpose of its demand as required by Title III of the CRA ........ 20

1. DOJ failed to provide a statement of the basis for its demand ........ 22

2. DOJ failed to provide a legally sufficient statement of the purpose for its demand ........ 25

a. Title III does not authorize DOJ to demand records for the purpose of ascertaining the State's compliance with NVRA and HAVA ........ 26

b. The purpose for a Title III demand must align with the statutory objective ........ 30

c. DOJ's demand for sensitive and confidential data cannot be reconciled with its stated purpose of assessing Rhode Island's compliance with NVRA and HAVA ........ 32

C. Rhode Island's voter registration list is not a "record" within the meaning of Title III of the CRA ........ 36

II. ALTERNATIVELY, THE DISTRICT COURT'S DECISION SHOULD BE AFFIRMED BECAUSE DOJ'S RECORDS DEMAND VIOLATES FEDERAL AND STATE PRIVACY LAWS ........ 42

A. DOJ's demand violates the Privacy Act ........ 43

B. DOJ's demand violates the E-Government Act ........ 49

C. DOJ's demand violates state privacy laws that are not preempted by Title III ........ 53

CONCLUSION ........ 55

CERTIFICATE OF COMPLIANCE ........ 57

CERTIFICATE OF SERVICE ........ 57

# TABLE OF AUTHORITIES

## Cases

*Albright v. United States*, 631 F.2d 915 (D.C. Cir. 1980) ........................ 43

*Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617 (1st Cir. 2019) ........................ 13

*Amyndas Pharm., S.A. v. Zealand Pharma A/S*, 48 F.4th 18 (1st Cir. 2022) ........................ 21

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) ........ 54

*Becker v. United States*, 451 U.S. 1306 (1981) ........................ 17

*BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, 166 F.4th 197 (1st Cir. 2026) ........................ 20

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) ........................ 43

*Bufkin v. Collins*, 604 U.S. 369 (2025) ........................ 21

*Calderon v. Thompson*, 523 U.S. 538 (1998) ........................ 55

*Cangrejeros De Santurce Baseball Club, LLC v. Liga De Beisbol Pro. De P.R.*, 146 F.4th 1 (1st Cir. 2025), *cert. denied*, 146 S. Ct. 1780 (2026) ........................ 13

*Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582 (2011) ........................ 54

*Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683 (D.C. Cir. 2017) ........................ 21

*Department of Agriculture v. Kirtz*, 601 U.S. 42 (2024) ........................ 27

*Donaldson v. United States*, 400 U.S. 517 (1971) ........................ 19

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm 'n on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017) ................................ 50

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ... 27, 28

*Fischer v. United States*, 603 U.S. 480 (2024) ....................................... 39

*Foss v. E. States Exposition*, 149 F.4th 102 (1st Cir. 2025) .................... 13

*Garris v. FBI*, 937 F.3d 1284 (9th Cir. 2019) .......................................... 45

*Goncalves v. Reno*, 144 F.3d 110 (1st Cir. 1998) ..................................... 31

*Hewes v. Pangburn*, 162 F.4th 177 (1st Cir. 2025) ................................. 20

*Honeycutt v. United States*, 581 U.S 443 (2017) ..................................... 38

*In re Curran*, 855 F.3d 19 (1st Cir. 2017) ............................................... 12

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ................................. 21

*Kennedy v. Lynd,* 306 F.2d 222 (5th Cir. 1962) ............................. passim

*League of Women Voters v. U.S. Dep't of Homeland Security*, No. 25-3501 (SLS), 2026 WL 1784297 (D.D.C. June 22, 2026) ........... 34

*MacPherson v. Internal Revenue Service*, 803 F.2d 479 (9th Cir. 1986) .................................................................................... 45

*McCloskey v. Mueller*, 446 F.3d 262 (1st Cir. 2006) ............................... 45

*Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019) ................ 16

*Pub. Interest Legal Found., Inc. v. Bellows,* 92 F.4th 36 (1st Cir. 2024) ............................................................................. 28, 54

*Pub. Interest Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ...... 5

*Pub. Interest Legal Found. v. N.C. State Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021)....................28

*Rivera v. Kress Stores of P.R., Inc.,* 30 F.4th 98 (1st Cir. 2022)............12

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)....................31

*Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85 (1st Cir. 2025)....42, 44

*Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018)....................40

*Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)....................44

*Ryan v. Schad*, 570 U.S. 521 (2013)....................55

*Smiley v. Holm*, 285 U.S. 355, 366 (1932)....................5

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
508 U.S. 439 (1993)....................32

*Ungar v. Arafat*, 634 F.3d 46 (1st Cir. 2011)....................13, 36

*United States v. Bellows*, No. 1:15-cv-00468-LEW, 2026 WL 1430481
(D. Me.), *appeal filed*, (1st Cir. No. 26-1676, June 15, 2026)..........2, 29

*United States v. Benson,* 179 F.4th 470 (6th Cir.), *reh'g denied*,
(6th Cir. Aug. 14, 2026....................passim

*United States v. Board of Elections of the State of N.Y.*,
No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921
(N.D.N.Y. July 10, 2026)....................41

*United States v. Caldwell,* No. CV 26-2025 (ZNQ) (JTQ),
2026 WL 2186515 (D.N.J. July 29, 2026)....................51

*United States v. Carrasco de Jesus*, 589 F.3d 22 (1st Cir. 2009)...........23

*United States v. Evans*, No. CV 25-4403 (RDM), 2026 WL 2267774 (D.D.C. Aug. 6, 2026) .......... 2, 29, 30

*United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass.), *appeal filed*, (1st Cir. No. 26-1657, June 9, 2026) .......... 2, 23

*United States v. George*, 886 F.3d 31 (1st Cir. 2018) .......... 36

*United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006) .......... 35

*United States v. Griswold*, No. 25-cv-03967-PAB-TPO, 2026 WL 2235374 (D. Colo. Aug. 3, 2026) .......... 41

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995) .......... 17

*United States v. Oregon*, 828 F.Supp.3d 1092 (D. Or. 2026) .......... 25, 31

*United States v. Powell*, 379 U.S. 48 (1964) .......... 17, 18, 19, 20

*United States v. Rivera*, 131 F.3d 222 (1st Cir. 1997) .......... 32

*United States v. Scanlan*, No. 25-cv-371-JL, 2026 WL 1864054 (D.N.H.), *appeal filed*, (1st Cir. No. 26-1783, July 7, 2026) .......... 2

*United States v. Schmidt*, No. 2:25-cv-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026) .......... 40

*United States v. Walker*, 665 F.3d 212 (1st Cir. 2011) .......... 21

*United States v. Weber*, 816 F.Supp.3d 1168 (C.D. Cal. 2026) .......... 14, 30, 35

*United States v. Will*, 671 F.2d 963 (6th Cir. 1982) .......... 18

*Wilmer Cutler Pickering Hale and Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d 127 (D.D.C. 2025) .......... 36

*Wright v. Martin*, 158 F.4th 286 (1st Cir. 2025) .......... 12

**Statutes**

5 U.S.C. § 552a ........ passim

17 U.S.C. §1703 ........ 39

26 U.S.C. § 7604 ........ 17

44 U.S.C. § 3518 ........ 52

52 U.S.C. § 20501(a)-(f) ........ 5

52 U.S.C. § 20703 ........ passim

52 U.S.C. § 20704 ........ 55

52 U.S.C. § 20705 ........ 15, 16

52 U.S.C. § 20901 ........ 6

52 U.S.C § 21085 ........ 6, 29

52 U.S.C. § 21111 ........ 28

52 U.S.C. § 20702 ........ 40, 41

R.I. Gen. Laws § 17-6-1.2 ........ 7, 38

R.I. Gen. Laws § 17-9.1-11 ........ 6

R.I. Gen. Laws § 17-9.1-25 ........ 7

R.I. Gen. Laws § 17-9.1-33 ........ 6

R.I. Gen. Laws § 17-9.1-34 ........ 6, 38, 53

R.I. Gen. Laws § 17-10-1 ........ 7

**Regulations**

68 Fed. Reg. 47,610 (Aug. 11, 2003) .......... 46

70 Fed. Reg. 43,904 (July 29, 2005) .......... 46, 47

82 Fed. Reg. 24,147 (May 25, 2017)) .......... 46, 47

100-RICR-20-00-2 .......... 7

100-RICR-20-00-5 .......... 7

410-RICR-20-00-19.5(I)(1) .......... 53

**Rules**

Fed. R. App. P. 2 .......... 56

Fed. R. App. P. 35(c) .......... 56

Fed. R. App. P. 40(a) .......... 56

Fed. R. App. P. 41(b) .......... 55

Fed. R. Civ. P. 12(b)(6) .......... 10

Fed. R. Civ. P. 81(a)(5) .......... 17

**Other Authorities**

"Acquire," Webster's Third New International Dictionary 18 (1961) .... 38

"Obtain," 7 Oxford English Dictionary 37 (1933) .......... 38

"Receive," Webster's Third New International Dictionary 1894 (1961) .......... 38

Black's Law Dict., "basis" (12th ed. 2024) ............................................. 23

H.R. Rep. No. 86-956 (1959) ............................................................ 30

Off. of Mgmt. & Budget, Circular No. A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication Under the Privacy Act* at 5 (2016) ............................................................ 48

OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002 (Sept. 26, 2003) ........................................... 53

Reply to Response in Opposition to Emergency Motion to Expedite at 6, *United States v. Benson*, No. 26-1225 (6th Cir. Mar. 10, 2026) .......... 34

S. Rep. No. 93-1183 (1974), reprinted in 1974 U.S.C.C.A.N. ................. 43

U.S. Dep't of Just. Manual § 9-11.151 (2020) ........................................ 48

U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), ............................................................ 35

## INTRODUCTION

This is a case about federalism and the separation of powers. The Elections Clause of the U.S. Constitution entrusts states, not the federal government, with the administration of elections. U.S. Const. art. I, § 4, cl. 1. Since the framing of the Constitution, this division of power has served as a check against centralized power and control over the democratic process.

The United States, through its Department of Justice (DOJ), seeks to upset this balance by asserting federal executive control over state election systems. DOJ filed the underlying civil action against Rhode Island Secretary of State Gregg M. Amore to compel the production of an electronic copy of the state's complete voter registration list, assertedly pursuant to Title III of the Civil Rights of 1960 (CRA), 52 U.S.C. § 20703. Secretary Amore offered to provide DOJ with a publicly available list that, consistent with state and federal privacy protections, redacted sensitive personal information like state driver's license and Social Security numbers. DOJ ignored this offer and filed suit to compel compliance with its unlawful demand. The district court granted Secretary Amore's motion to dismiss and denied its parallel motion to compel. Add. 25.

DOJ's lawsuit against Secretary Amore is part of an unprecedented effort to collect sensitive information about voters from nearly every state plus the District of Columbia. *United States v. Evans*, No. CV 25-4403 (RDM), 2026 WL 2267774, *1 (D.D.C. Aug. 6, 2026). To date, 20 other federal district courts have dismissed substantively identical complaints filed by DOJ against state officials who refused to produce confidential voter information. *See id. at* *10 n.4 (collecting cases). Appeals from similar dismissal orders issued by district courts in Maine, Massachusetts, and New Hampshire are currently pending before this Court. *See United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass.), *appeal filed*, (1st Cir. No. 26-1657, June 9, 2026); *United States v. Bellows*, No. 1:15-cv-00468-LEW, 2026 WL 1430481 (D. Me.), *appeal filed*, (1st Cir. No. 26-1676, June 15, 2026); *United States v. Scanlan*, No. 25-cv-371-JL, 2026 WL 1864054 (D.N.H.) *appeal filed*, (1st Cir. No. 26-1783, July 7, 2026). Additionally, the Sixth Circuit recently affirmed the dismissal of DOJ's demand against Michigan, *United States v. Benson,* 179 F.4th 470 (6th Cir.), *reh'g denied*, (6th Cir. Aug. 14, 2026), and appeals from other district court dismissal orders are currently pending before the Second, Fourth, and Ninth Circuits. *See Evans*, 2026 WL 2267774, at *10 n.4.

All of the courts to consider DOJ's demand for unredacted copies of state voter registration lists have held, like the district court here, that its demand is contrary to the CRA's text, context, and history, which authorizes inspection of individual voter-registration records in certain circumstances which are inapplicable here. Separately, DOJ's demand also violates two federal privacy statutes and state confidentiality provisions. The Privacy Act of 1974, 5 U.S.C. § 552a, constrains DOJ's ability to collect, maintain, and disseminate sensitive citizen data such as that contained in registered voting lists. Likewise, the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, requires a privacy assessment before an agency like DOJ collects sensitive electronic data on 10 or more persons. State law similarly protects against the disclosure of confidential voter information, including state driver's license and Social Security numbers. DOJ's unprecedented attempt to compile personally identifiable information on nearly 700,000 active registered voters in Rhode Island (and millions of registered voters in other states) violates all of these protections. *See* Rhode Island Voter Registration, *available at* https://datahub.sos.ri.gov/RegisteredVoter.aspx (showing 691,603 active registered voters in Rhode Island as of August 2026).

## STATEMENT OF THE ISSUES

1. Whether a bare asserted interest in investigating state voter-list maintenance efforts under the National Voter Registration Act (NVRA), 52 U.S.C. § 20507, and Help America Vote Act (HAVA), 52 U.S.C. § 21083, constitutes a valid basis and purpose to seek records under Title III of the CRA, which pertains to individual voter-registration records?

2. Whether an electronic copy of a state's entire unredacted voter registration list constitutes a voting "record and paper" that "comes into" a state's possession "relating to any application, registration, payment of poll tax, or other act requisite to voting" within the meaning of Title III, 52 U.S.C. § 20701?

3. Whether DOJ's unbounded request for an electronic copy of a state's complete unredacted voter registration list, without notice in the Federal Register or a privacy assessment, violates the Privacy Act of 1974, 5 U.S.C. § 552a, the E-Government Act, Pub. L. No. 107-347, § 208(a)and state law?

## STATEMENT OF THE CASE

The U.S. Constitution entrusts states with determining the "Times, Places and Manner of holding Elections." Art. 1, § 4, cl. 1. That authority includes the power to oversee "registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, [and] counting of votes." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). As the district court stated: "Except where federal law provides otherwise, states have substantial discretion in regulating elections, including maintaining voter registration lists." Add. 2.

Congress passed two laws regulating state voter registration lists that are relevant to this appeal: NVRA and HAVA. Both statutes require states to make "a reasonable effort" to maintain the accuracy of state voter registration lists. Pursuant to the NVRA, states must "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20501(a)-(f). The "reasonable effort" requirement is modest; a state program suffices if it reflects a "serious attempt that is rational and sensible." *Pub. Interest Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025). HAVA requires states to develop a computerized official

statewide voter registration list with a unique identifier for each voter, and a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 20901(a)(1)-(4). The statute expressly provides, as it must under the Constitution, that "specific choices on the methods of complying with requirements...shall be left to the discretion of the state." 52 U.S.C § 21085.

## I. Rhode Island's Voter List Maintenance Efforts

Rhode Island has undertaken the required "reasonable effort" to comply with both HAVA and NVRA. In 2005, Rhode Island created a digital statewide voter register called the Central Voter Registration System. R.I. Gen. Laws § 17-6-1.2. To register, each voter must complete a voter registration form, where they confirm their United States citizenship, residence in Rhode Island, and that they are at least 16 years old. *Id.* §§ 17-9.1-11, 17-9.1-33. The prospective voter must provide a Rhode Island Driver's license, state ID card number, or the last four digits of their Social Security number. App. 22. Rhode Island automatically and manually updates its rolls with updated addresses submitted to the Department of Motor Vehicles, R.I. Gen. Laws § 17-9.1-

34, deaths recorded by the state Registrar of Vital Records and the federal Social Security Administration, *id*. § 17-10-1(c), and felony incarcerations, 100-RICR-20-00-2(2.4)(C)(1-2); 100-RICR-20-00-5(C)(3). Rhode Island also participates in the Electronic Registration Information Center ("ERIC"), which confirms the roll's accuracy by a variety of datasets, including state voter registration and DMV records, Add. 5, and requires local boards to regularly confirm addresses through the mail, R.I. Gen. Laws § 17-9.1-25 to -26.

## II. DOJ's Demand Letter and Secretary Amore's Response

On September 8, 2025, DOJ sent a letter ("DOJ's demand letter") to Secretary Amore demanding an unredacted copy of Rhode Island's statewide voter registration list. The letter's stated purpose was to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and the HAVA." App. 23. DOJ's demand letter "did not identify any facts suggesting that Rhode Island has not complied with the NVRA and HAVA, and it did not otherwise expressly identify any factual basis for DOJ's demand." Add. 5-6.

Secretary Amore responded to DOJ's letter on September 16, 2026, offering to provide DOJ a copy of Rhode Island's publicly available voter

registration list. App. 26. However, Secretary Amore declined to provide an unredacted copy of Rhode Island's voter registration list, noting that the CRA "allows access to voter records only in connection with an investigation into the infringement or denial of constitutional voting rights" and that the demand letter did not identify any such purpose. App. 27; Add. 6. Secretary Amore further noted that DOJ's demand failed to demonstrate compliance with the procedural safeguards Congress established under the Privacy Act and E-Government Act, relating to the collection and use of personally identifiable information on Americans. *Id.* DOJ did not respond to Secretary Amore's September 16th letter nor did it address his concerns relating to the disclosure of personally identifiable information on hundreds of thousands of Rhode Island voters.

## III. District Court Proceedings

Instead, on December 2, 2025, DOJ filed the underlying civil action, seeking to compel production of Rhode Island's complete voter registration list, without redaction. The Complaint alleged that Secretary Amore's refusal to comply with its demand letter violated Title III of the CRA. App. 10-13. Contemporaneously, DOJ filed a motion to compel production of the unredacted voter registration list. App. 1 at 2.

Secretary Amore moved to dismiss DOJ's Complaint under Fed. R. Civ. P. 12(b)(6).[1] App. 34, 38, 41. In relevant part, Secretary Amore argued that DOJ's demand failed to meet Title III's statutory requirements of providing an adequate "statement of the basis and the purpose" for DOJ's demand, and that DOJ's effort to collect sensitive personal information on Rhode Island's registered voters violated both state and federal privacy protections. Add. 9.

On April 17, 2026, the district court granted Secretary Amore's motion and dismissed DOJ's Complaint, as well as its parallel motion to compel. Add. 1-14. The district court first rejected DOJ's argument that its demand for Rhode Island's unredacted voter registration list was not subject to judicial review, holding instead that DOJ's demand was subject to the usual rules of Federal Rules of Civil Procedure, including Rule 12(b)(6). Add. 8-9. The district court proceeded to find that DOJ's Complaint failed to state a claim under Title III of the CRA because the demand letter did not set forth a factual basis nor a "legally sufficient

[1]The intervenor-defendants, Common Cause, Catherine Saunders, Stuart Waldman, Julia Sanches, SEIU District 1199NE, Rhode Island Alliance for Retired Americans, Carolyn Betensky, and Michael Mezera, likewise filed motions to dismiss DOJ's complaint. App. 1-4.

purpose," both of which are required by the CRA's text. Add. 12-14. Specifically, the demand letter was insufficient because its only stated purpose—"ensur[ing] compliance with the NVRA and HAVA"—provided no facts establishing the basis or reason for such an investigation, Add. 12-13, and in any case, did not plausibly relate to the CRA's statutory purpose, Add. 14. Final judgment entered on April 22, 2026. Add. 15

## SUMMARY OF THE ARGUMENT

DOJ premises its demand for an unredacted, electronic version of Rhode Island's statewide voter registration list exclusively on Title III of the CRA. The district court properly rejected DOJ's threshold claim that its records demand was essentially unreviewable and not subject to the usual rules of Federal Civil Procedure because the CRA expressly states that a records demand is enforceable only by "appropriate process," not any summary proceeding. *See infra* at 16-20. And the Supreme Court has clearly held that the Federal Rules of Civil Procedure apply to all civil actions seeking enforcement of subpoenas issued by federal agencies. *Id.*

The district court also correctly determined that DOJ failed to state a plausible claim under the CRA because it failed to comply with the CRA's statutory prerequisites of providing a statement of "the basis" and

"the purpose" for its request. *See infra* at 20-36. DOJ provided no factual basis at all for its request, leading the district court to conclude that DOJ's request was nothing more than an unbridled fishing expedition. *Id.* DOJ's statement of the purpose was likewise inadequate because its purported need to assess Rhode Island's compliance with NVRA and HAVA list maintenance requirements was beyond the scope of the CRA. *Id*. And DOJ's demand for production of an unredacted version of Rhode Island's voter registration list conflicted with this Court's and other courts' interpretations of those later-enacted statutes as allowing for redaction of sensitive voter information like that requested here. *Id.* Consistent with fundamental rules of statutory construction, the district court rejected DOJ's effort to read the CRA's record demand provision in isolation from its statutory objective and to the exclusion of protections against the disclosure of confidential information afforded by later enacted statutes. *Id.*

Alternatively, the Court should affirm the district court's dismissal of DOJ's CRA claim because a state's voter registration list is not a record within the meaning of the CRA. *See infra* 37-42. In this regard, the Court should adopt the reasoning of the Sixth Circuit and other courts that

have held that a state's voter registration list is not a record because it does not "come into" a state election official's possession; instead, state election official's "maintain" the list and "establish" its content. *Id.*

Lastly, even if DOJ's reliance on the CRA were legally cognizable, the CRA does not require the disclosure of sensitive personal information relating to all registered voters in Rhode Island and doing so would violate privacy protections afforded by both state and federal law. *See infra* at 42-56. For any one of these reasons, the district court's judgment should be affirmed. *Id.*

**STANDARD OF REVIEW**

This Court reviews "'*de novo* a district court's allowance of a motion to dismiss for failure to state a claim under Rule 12(b)(6).'" *Wright v. Martin*, 158 F.4th 286, 290 (1st Cir. 2025) (quoting *Rivera v. Kress Stores of P.R., Inc.,* 30 F.4th 98, 102 (1st Cir. 2022)). To survive a motion to dismiss, a complaint "'must contain sufficient factual matter to state a claim to relief that is plausible on its face.'" *Id. (*quoting *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017)). "[C]onclusory legal allegations and factual assertions that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture" are not sufficient.

*Cangrejeros De Santurce Baseball Club, LLC v. Liga De Beisbol Pro. De P.R.,* 146 F.4th 1, 11 (1st Cir. 2025)*, cert. denied,* 146 S. Ct. 1780 (2026) (cleaned up). Applying this standard, the district court correctly determined that DOJ's records demand pursuant to the CRA failed as a matter of law. Add. 14.

Given its decision on the CRA claim, the district court did not need to address Secretary Amore's alternative argument that DOJ's records demand was also contrary to federal and state privacy protections. *See Foss v. E. States Exposition*, 149 F.4th 102, 108 (1st Cir. 2025) (it is "'well settled in this circuit that a motion to dismiss may be granted on the basis of an affirmative defense . . . as long as the facts establishing the defense [are] clear on the face of the plaintiff's pleadings'") (quoting *Álvarez-Maurás v. Banco Popular of P.R.,* 919 F.3d 617, 628 (1st Cir. 2019)). This Court, however, is "not wedded to the trial court's reasoning" and "may affirm a judgment on any independently sufficient ground made manifest in the record." *Ungar v. Arafat*, 634 F.3d 46, 51 n.4 (1st Cir. 2011).

# ARGUMENT

## I. DOJ Failed to State a Claim Under Title III of the CRA

The district court's judgment and dismissal of DOJ's Title III claim should be affirmed. DOJ's complaint does not plausibly allege that it is entitled to enforcement of its letter requesting production of hundreds of thousands of Rhode Island registered voters' sensitive personal information.

Title III of the CRA was not "passed as an unrestricted means for the Executive to collect highly sensitive information about the American people." *United States v. Weber*, 816 F.Supp.3d 1168, 1175 (C.D. Cal. 2026). Rather, as the district court recognized, it was passed:

> during the Jim Crow era, when persistent voter suppression was preventing Black Americans from voting. States were utilizing literacy tests, arbitrary registration tactics, voter ID laws, and poll taxes to keep minorities away from the ballot...To hide their complicity in voter suppression, state officials destroyed the records of Black Americans who had registered to vote, as well as those denied the opportunity to register.

Add. 10 (citing *id.* at *1).

"[E]ven when records were not destroyed, states refused to turn them over, thwarting efforts by the federal government to investigate whether there was a pattern and practice of disenfranchising Black

Americans." *Id.* Section 20701 of the CRA was "enacted directly in response to these concerns, requiring states to retain and preserve all records pertaining to voter registration, voting applications, and payments of poll taxes." *Id.*

To support this purpose, the CRA requires election officers, like Rhode Island's Secretary of State, to "retain and preserve, for a period of twenty-two months from the date of any [federal] . . . election . . . all records and papers which come into [the officer's] possession relating to any application, registration, . . . or other act requisite to voting in such election[.]" 52 U.S.C. § 20701. Under § 20703, any record required to be retained under § 20701, "shall, upon demand in writing by the Attorney General. . . be made available for inspection, reproduction, and copying at the principal office of such custodian. . . ." 52 U.S.C. § 20703. To gain access to and inspect those records, the CRA specifically requires DOJ to provide "a statement of the basis and the purpose therefor," *id.*, and grants federal courts jurisdiction to compel production pursuant to "appropriate process." *Id.* at § 20705.

### A. DOJ's complaint is subject to the Federal Rules of Civil Procedure

This district court correctly rejected DOJ's threshold contention that its records demand was essentially unreviewable because it was allegedly subject to "special statutory procedures" exempt from the usual Federal Rules of Civil Procedure. DOJ Br. 15; Add. 9. Contrary to DOJ's contention, Title III's text states that a district court "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). There is no mention of any "special statutory procedures," let alone any procedures that would diminish the federal judiciary's role to a "rubber stamp" approval for any records demand DOJ may seek to compel.

Title III's use of the phrase "by appropriate process" clearly indicates that some measure of judicial scrutiny is required to test the sufficiency of DOJ's proffered "statement of the basis and the purpose" for any CRA records demand. *See Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 476 (2019) (courts "generally presum[e] that statutes do not contain surplusage") (internal citation and quotation marks omitted)). Indeed, the Supreme Court has squarely held that the "Federal Rules apply 'to proceedings to compel the . . . production of documents in

accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings.'" *Becker v. United States*, 451 U.S. 1306, 1308 (1981) (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 81(a)(5) (same); *cf. United States v. Markwood*, 48 F.3d 969, 975-76 (6th Cir. 1995) (characterizing a civil false claims investigative demand as an administrative subpoena because it is "at its essence, a subpoena issued by an administrative agency").

Only two years after the Fifth Circuit's decision in *Kennedy v. Lynd*, the principal case on which DOJ relies, the Supreme Court interpreted an enforcement provision that, like the CRA's records demand provision, provided federal courts with jurisdiction to enforce an IRS summons for the "production of books, papers, records, or other data" by "appropriate process." 26 U.S.C. § 7604(a); 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II).* The Supreme Court did not merely rubber stamp the IRS Commissioner's summons or rely on any so-called "special statutory procedures" to enforce it. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964). Instead, it required the IRS Commissioner to establish that all statutory

requirements for issuing the summons were met, allowed the taxpayer an opportunity to "challenge the summons on any appropriate ground," and recognized the court's authority to "inquire into the underlying reasons" for the IRS summons. *Id.*; *see also, e.g., United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (allowing summons recipient opportunity to rebut government's *prima facie* case); *Lynd II*, 306 F.2d at 230 (anticipating that "'appropriate process to compel the production' of . . . records and papers will include the power and duty to issue protective orders") (quoting former 42 U.S.C. § 1974d)).

DOJ incorrectly argues that the "appropriate process" addressed in *Powell* is distinguishable because it was meant solely to review whether the criteria "may be relevant or material," while Title III does not have a relevance requirement. DOJ Br. at 16. But the Court drew no such distinction in *Powell*. Instead, in interpreting language analogous to the CRA's record demand provision, it held that it was permissible for a "court [to] inquire into the underlying reasons for the examination" and doing so was necessary to prevent abuse of court process, such as an instance where "the summons had been issued for an improper purpose." *Powell*, 379 U.S. at 57-58. This holding was in no way limited to the IRS

statute's "relevant or material" provision. *See Powell*, 379 U.S. at 57-58 ("Nor does our reading of the statutes mean that under no circumstances may the court inquire into the underlying reasons for the examination....a court may not permit its process to be abused....[such as] if the summons had been issued for an improper purpose").

DOJ also erroneously relies on *Donaldson v. United States*, 400 U.S. 517 (1971), a case that actually supports the district court's ruling. There, the Supreme Court reaffirmed that the Federal Rules of Civil Procedure apply to administrative subpoena enforcement proceedings and, as part of its review, confirmed that federal courts may "limit the application of the rules in a summons proceeding" when appropriate. *Id*. at 529-530, DOJ Br. at 18. Here, the district court found no good reason to limit application of the Federal Rules of Civil Procedure because DOJ's records demand was facially deficient and contrary to the CRA's plain text. As *Donaldson* reasoned, reviewing courts must ensure that "the rights of the party summoned are protected and an adversary hearing, if requested, is made available." 400 U.S. at 529. Thus, under binding precedent, DOJ cannot avoid settled rules governing pleading, which require it to include

"enough facts to state a claim to relief that is plausible on its face." *Hewes v. Pangburn*, 162 F.4th 177, 189 (1st Cir. 2025).

The district court, therefore, correctly concluded that the CRA did not create any special statutory procedure that would allow DOJ to evade judicial review of its compliance with the statutory requirements for a CRA records demand. To the extent *Lynd II* suggests otherwise, it has been overruled on this point by *Powell* and, in any event, is not binding on this Court. *See BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, 166 F.4th 197, 225 (1st Cir. 2026) ("out-of-circuit caselaw . . . doesn't bind us").

**B. The district court correctly dismissed the complaint for failure to state the basis and the purpose of its demand as required by Title III of the CRA**

Applying the appropriate standard for a motion to dismiss under the Federal Rules of Civil Procedure, the district court correctly determined that DOJ failed to state a claim under Title III of the CRA. Under Section 20703 of the CRA, the statutory requirements that underscore investigative requests from DOJ are clear: "This demand shall contain a statement of the basis and the purpose therefor." 52 U.S.C. §20703. A plain reading of § 20703 requires both a statement of basis *and*

of purpose. *See Benson*, 179 F.4th at 483 ("the statutory context suggests that any demand must contain both [basis and purpose]"). The use of the definite article "the" in requiring a statement of "the basis and the purpose" renders each requirement distinct. *See Amyndas Pharm., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 32 (1st Cir. 2022) ("the definite article 'the' particularizes the subject spoken of, suggesting...refer[ence] to a single object") (internal quotation marks removed). Moreover, the use of the conjunctive "and" indicates both criteria are necessary. *See United States v. Walker*, 665 F.3d 212, 224 (1st Cir. 2011) ("when a rule lists two requirements in the conjunctive, both must be satisfied"). The verb "'shall' imposes a mandatory command": both "the basis" and "the purpose" are distinct criteria required for there to be a lawful demand. *Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("'Shall' means 'must.'"). Without a complete statement of the basis and the purpose for DOJ's records demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of the [DOJ] and whether the information sought is reasonably relevant." *Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 691 (D.C. Cir. 2017); *see also In re Gordon*, 218 F. Supp. 826, 827

(S.D. Miss. 1963) (CRA Title III requests cannot be "used without restraint"). Here, as discussed below, DOJ's demand did not provide *any* statement of the basis and failed to provide a legally sufficient statement of the purpose. Specifically, the demand letter's stated purpose was to "ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and the HAVA" and did not identify any factual basis for the demand. App. 23. As such, DOJ's demand letter failed to make a request for records that comports with Title III's statutory prerequisites, and thus DOJ failed to state a claim in moving to compel enforcement of its demand.

*1. DOJ failed to provide a statement of the basis for its demand*

The district court correctly held that DOJ's demand did not provide a "statement of the basis" as required by Title III. First, DOJ has not identified a "statement of the basis" for the demand, instead pointing to their statement of purpose to fulfill both functions. Second, to qualify as a "basis" such a statement would need to provide the factual predicate or circumstances underlying the request, a function completely absent from the demand. These failures are fatal to their claim. Add. 11; 52 U.S.C. §20703; *see also Benson*, 179 F.4th at 483 ("that letter does not state a

basis for the request"); *Galvin*, 830 F. Supp. 3d at 127 ("Because the Court concludes that the Attorney General's letter failed to contain a statement of the basis for the demand as required by law, the Court need not reach the parties' other arguments") (internal quotation marks removed).

DOJ cannot rely on its statement of purpose to meet the separate statutory requirement of providing "the basis" for its demand because the structure of the statute prohibits it. Add. 12-14. Moreover, the statement of purpose—and DOJ's demand letter to Rhode Island in its entirety—failed to allege any underlying facts or conditions whatsoever. *Id*. 12-13. The plain meaning of the word "basis" requires a statement of the "underlying factor or condition" giving rise to the records demand. *See* Black's Law Dict.,"basis" (12th ed. 2024); *see also United States v. Carrasco de Jesus*, 589 F.3d 22 (1st Cir. 2009) ("basis" denotes a foundation or support on which something else rests). That "the basis" must be of a factual nature was understood at the time Title III was enacted and demonstrated through demands made shortly thereafter. For example, in *Lynd II*, the Attorney General provided a statement of basis that referenced facts underpinning the demand: "this demand is

based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made...." 306 F.2d at 229 (1962).

DOJ protests that courts should not "second-guess or probe the sufficiency or sincerity of the Attorney General's statement," *see* DOJ Br. at 2, but that would reduce the federal judiciary's role to a mere rubber stamp as noted above. *Supra* at 16-20. Furthermore, even if that absurd proposition had any merit, it is irrelevant and unavailing where, as here, DOJ provided no statement of the basis at all. As the district court correctly found, "[a]bsent from the demand are any factual allegations suggesting that Rhode Island may be violating the list maintenance requirements of the NVRA and HAVA, let alone the CRA." Add. 12. Without any statement of the basis, DOJ's records demand amounted to a "factually groundless 'fishing expedition'" that was not authorized by the CRA. *Id.*

Acknowledging the absence of facts in its demand letter, DOJ suggests that the Court could divine as "the basis" that Rhode Island has improperly registered voters because DOJ has sought to obtain the state's voter registration list. DOJ Br. at 32. But this contorts the Title

III requirement: the statutory text requires DOJ to plainly state the factual basis underlying its request, and the reasonable inference when DOJ fails to do so is that no factual basis exists. The statutory prerequisite for a records demand under Title III cannot be plausibly met where DOJ wholly fails to state the basis. For this reason alone, the district court's decision should be affirmed. Add. 13 (holding that this reason "alone would be enough to foreclose judicial enforcement of the demand").

2. *DOJ failed to provide a legally sufficient statement of the purpose for its demand*

The district court also correctly held that DOJ's demand failed to provide a legally sufficient statement of "the purpose thereof" as required by Title III. By stating that "Congress cannot have intended Title III as permitting such a demand based on a statement of *any* purpose," the district court properly rejected DOJ's assertion that there is "no limitation on the permissible purpose of the Attorney General's demand." Add. 13; DOJ Br. at 26; *see also United States v. Oregon*, 828 F.Supp.3d 1092, 1104 (D. Or. 2026) ("If any purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function"). Rather, the

purpose of a records demand based on DOJ's authority under Title III must align with Congress' purpose in conferring such authority to DOJ and not exceed the scope of that granted authority.

The only alleged purpose stated in DOJ's demand letter is "to ascertain Rhode Island's compliance with the list maintenance requirements of NVRA and HAVA." App. 23. That statement is legally insufficient to support a demand by DOJ to the State's unredacted voter registration list based on the CRA because (a) it is an attempt to co-opt Congress' grant of authority under the CRA to create a new role in the enforcement of the NVRA or HAVA, which were passed decades later and provide their own, separate enforcement mechanisms; (b) it does not align with Congress' objective for the CRA; and (c) it cannot be reconciled with a demand for sensitive and confidential voter data.

a. Title III does not authorize DOJ to demand records for the purpose of ascertaining the State's compliance with NVRA and HAVA

The district court correctly held that ascertaining compliance with NVRA and HAVA cannot serve as a legally sufficient purpose for a records demand under Title III of the CRA. Both statutes—passed decades after Title III—have their own, separate enforcement

mechanisms that provide the exclusive authority for seeking records for such purposes.

"At the time a statute is enacted, it may have a range of plausible meanings," but over time, "subsequent acts can shape or focus those meanings." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000). The "implications of a statute may be altered by the implications of a later statute," particularly where the "scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand." *Id.* When confronted with such a situation, a court's task is to harmonize the two statutes in a way that gives effect to both. *Department of Agriculture v. Kirtz*, 601 U.S. 42, 63 (2024) ("Mindful our role is to apply the law, not rewrite it—we approach federal statutes touching on the same topic with a "strong presumption" they can coexist harmoniously....Our duty lies not in preferring one over another but in giving effect to both.").

In this case, NVRA "more specifically" addresses the topic of NVRA enforcement than could the CRA. This Court and other courts have interpreted NVRA to permit (if not require) state officials to redact sensitive personal information relating to voters before producing it. *Pub.*

*Interest Legal Found., Inc. v. Bellows,* 92 F.4th 36, 56 (1st Cir. 2024) (stating NVRA does not prohibit "the appropriate redaction of uniquely or highly sensitive personal information"); *Pub. Interest Legal Found. v. N.C. State Bd. of Elections*, 996 F.3d 257, 264 (4th Cir. 2021) ("while NVRA "does not contain an explicit exemption from disclosure for sensitive information subject to potential abuse…the term "all records" in the disclosure provision does not encompass any relevant record from any source whatsoever"). These decisions reflect a "specific policy embodied in a later federal statute," *i.e.*, NVRA, that "should control [the] construction of the [earlier] statute," *i.e.*, Title III of the CRA. Consistent with this fundamental rule of statutory construction, this Court should accordingly reject DOJ's boundless interpretation of Title III's record demand provision as allowing it to obtain unredacted voter registration lists for the purpose of assessing NVRA compliance when NVRA's own enforcement provision does not allow such a demand. *FDA,* 529 U.S. at 143.

DOJ's demand likewise conflicts with HAVA's enforcement provisions that do not independently allow DOJ to demand a state's current, unredacted voter registration list. *See* 52 U.S.C. § 21111

(authorizing the Attorney General to "bring a civil action against any State...as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements," which encompass HAVA's requirement that states build their own electronic voter registration database). Furthermore, HAVA repeatedly specifies that the list must be "defined, maintained, and administered at the State level"—not by the federal government, and leaves "to the discretion of the States...[t]he specific choices on the methods of complying with" the statute's requirements. *Id.*; *id.* § 21085; *see also id.* § 21083(a)(2) (directing "[t]he appropriate State or local election official" to "perform list maintenance with respect to the computerized list on a regular basis").

Importantly, "when Congress did address voter registration list maintenance under the NVRA and HAVA, it did not give the Attorney General administrative subpoena authority to investigate violations of those statutes." *Evans*, 2026 WL 2267774, at *10; *see also Bellows*, 2026 WL 1430481, at *8–9. "The NVRA contains only a public disclosure provision authorizing the Department and the public alike to procure certain registration records, *see* 52 U.S.C. § 20507(i), and HAVA does not

contain any disclosure provision at all." *Evans*, 2026 WL 2267774, at *10. To the extent DOJ "disagrees with Congress's judgment as to the records necessary to carry out its enforcement duties under either HAVA or the NVRA, it needs to lodge that objection with Congress." *Id.*

b. The purpose for a Title III demand must align with the statutory objective

The district court correctly held that Title III's text must be read "within its larger statutory and historical context, and consistent with...case law and legislative history" to determine what constitutes a legally sufficient purpose. Add. 13. As the district court observed, Title III of the CRA was enacted directly in response to concerns about states "thwarting efforts by DOJ to investigate whether there was a pattern and practice of disenfranchisement of Black Americans." Add. 10, citing *Weber*, 816 F.Supp.3d at 1175; *supra* at 14-15. Congress deemed Title III of the CRA "a necessary supplement to part IV of the Civil Rights Act of 1957, which prohibits threats or intimidation designed to prevent persons from exercising their right to vote" as it would "implement Federal enforcement of this protection." H.R. Rep. No. 86-956, at 7, 26 (1959). By 1960, Congress recognized the necessity of obtaining individual voting registration records to demonstrate how state and local

officials treated applicants differently based on race. *Evans*, 2026 WL 2267774 at, *18-21 (recounting the historical context prompting Congress to authorize the Attorney General to obtain voter registration materials needed "to effectively investigate and gather evidence of discriminatory denials of the right to vote."). Congress' purpose in conferring to DOJ the authority to demand records under Title III of the CRA is both clear and targeted: to enable federal enforcement of the rights of all qualified citizens to vote in elections without discrimination on account of race. The district court thus properly reasoned that "the 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights." Add. 13-14, citing *Oregon*, 828 F. Supp. 3d at 1105.

As the First Circuit has held, "'[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole,"' not by looking at statutory terms in isolation." *Goncalves v. Reno*, 144 F.3d 110, 127-8 (1st Cir. 1998) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Thus, the "meaning of statutory language, plain or not, depends on context."' *Id.* (quoting *United*

*States v. Rivera*, 131 F.3d 222 (1st Cir. 1997) (en banc). *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (statutory construction "must account for a statute's full text, language as well as punctuation, structure, and *subject matter*") (emphasis added). Yet, contrary to settled cannons of statutory construction, DOJ urges this Court to disregard the CRA's statutory objective by focusing exclusively on Title III's text, which does not specifically mention civil rights or discriminatory voting practices. DOJ Br. at 25. Such an approach would distort Congress' plain meaning and stated intent by depriving the words of their historical context and should be rejected. Accordingly, the district court correctly determined that the purpose required for a records demand under Title III of the CRA must align with the statute's objective of investigating and enforcing the rights of individuals to vote; the purpose stated in DOJ's demand letter does not plausibly do so.

c. DOJ's demand for sensitive and confidential data cannot be reconciled with its stated purpose of assessing Rhode Island's compliance with NVRA and HAVA

Even if assessing compliance with NVRA and HAVA was a legally sufficient purpose for a Title III demand—which it is not—DOJ's demand

of confidential and sensitive information to enable it to perform list maintenance directly cannot be reconciled with that purported purpose.

DOJ's complaint fails to plausibly allege how sensitive personal information relating to voters is relevant to DOJ's stated purpose of assessing compliance with NVRA, which requires states to maintain a "general program" that makes "reasonable efforts" to remove the names of registered voters who become ineligible due to death or change in residence. *See* 52 U.S.C. § 20507(a)(4). Nor does DOJ's complaint plausibly allege how sensitive voter information is relevant to the purpose of assessing compliance with HAVA, as HAVA requires a "system of file maintenance" that makes "reasonable effort" to remove ineligible registrants from its registered voting list. 52 U.S.C. § 21083(a)(1)(A). As DOJ has acknowledged, compliance with NVRA and HAVA is assessed by determining whether Rhode Island conducts any program that makes "reasonable effort," DOJ Br. at 30, 47, and compliance is not plausibly assessed by scrutinizing individual registrations on the list by using sensitive personal information in undisclosed manners, the reliability of which Rhode Island has had no opportunity to assess.

Despite acknowledging their lack of authority to assess compliance on anything but a programmatic level, during the district court hearing, DOJ counsel advised the district court that "our intention" is to run voters' information "against DHS's SAVE database" and that the SAVE database would be used to "cross-check" whether the voter registration list contained noncitizens. App. 165-166; *see also* Reply to Response in Opposition to Emergency Motion to Expedite at 6, *United States v. Benson*, No. 26-1225 (6th Cir. Mar. 10, 2026), (similar U.S. DOJ representation about SAVE database). That modified SAVE system has been found unlawful by the District Court for the District of Columbia, which noted that it was "haphazardly" slapped together with "citizenship data that [the Administration] knew to be unreliable." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-3501 (SLS), 2026 WL 1784297, at *1-2 (D.D.C. June 22, 2026).

Furthermore, as discussed above, and as the district court held, neither NVRA nor HAVA requires the production of confidential and sensitive information. *Supra* at 28-30; Add. 3 (stating that "[n]othing in the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information" and "HAVA has no public disclosure

requirements and provides DOJ with no subpoena authority"). Even a central case on which DOJ relies recognizes that Title III was intended to provide DOJ access to "public records which ought ordinarily to be open to legitimate reasonable inspection" and not "confidential, private papers and effects." *Lynd II*, 306 F.2d at 231. State driver's license numbers and partial Social Security numbers "were not required for voter registration until the passage of HAVA in 2002 so Congress could not have conceived for this highly sensitive information to be at DOJ's disposal through the passage of Title III four decades prior." *Weber*, 816 F.Supp.3d at 1183.

DOJ suggests that because other states have produced unredacted voter registration lists that included registrants' state driver's license numbers and the last four digits of their Social Security numbers, Rhode Island should do the same. DOJ Brief at 33.[2] However, that other states have chosen to provide such documents—through settlement or voluntarily—does not mean that the CRA or any other law entitles DOJ

[2] In both prior matters cited by DOJ, the state voting registration lists were produced by agreement of the parties, not by order of the court. *See United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006); *see also* U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), available at https://www.justice.gov/media/1173461/dl?inline.

to *Rhode Island's* list. *Cf. Wilmer Cutler Pickering Hale and Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d 127, 151–52 (D.D.C. 2025) (permanently enjoining as unconstitutional Executive Order targeting law firm's protected speech despite "[o]ther firms facing similar Executive Orders . . . capitulat[ing]"). Each sovereign state is entitled to make its own assessment, taking into consideration relevant provisions of state law protecting the confidentiality of such information.

DOJ has drawn no connection between its request for all fields of Rhode Island's voter registration list—including driver's license numbers and the last 4 digits of Social Security numbers—and its purported purpose of assessing compliance with the statutory obligations set forth in NVRA and HAVA.

### C. Rhode Island's voter registration list is not a "record" within the meaning of Title III of the CRA

Even if this Court disagrees with the district court's conclusion that DOJ failed to provide a legally sufficient statement of the basis and the purpose for its records demand, this Court should affirm the judgment on the alternative ground that Rhode Island's voter registration list is not a "record" within the meaning of Title III of the CRA. *See United States v. George*, 886 F.3d 31, 39 (1st Cir. 2018); *Ungar*, 634 F.3d at 51.

DOJ acknowledges that whether a requested record meets Title III's statutory classification is a matter open for determination by the court. DOJ Brief at 22-23 (citing *Lynd II*, 306 F.2d at 226). Title III provides "any record or paper required by section 20701 of this title to be retained or preserved shall, upon demand in writing by the Attorney General or his representative....be made available for inspection, reproduction, and copying" when the Attorney General meets the prerequisites of stating the basis and the purpose for the demand. 52 U.S.C. § 20703. Several district courts, and the Sixth Circuit, have held that statewide voter registration lists are not records required by section 20701 to be retained or preserved, and thus not subject to a demand from DOJ under Title III.

Rhode Island's voter registration list is not a record or paper that satisfies Section 20701's criteria for retention or preservation, and by extension review by DOJ pursuant to a Title III demand. Under the statute, an election official must: "retain and preserve...all records and papers which *come into his possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). Secretary Amore did not "come into" the possession of the state's voter registration list. Because

Title III does not define the term "come into," the court should look to its ordinary meaning: to "acquire," "obtain," or "receive." *Benson*, 179 F.4th at 478, citing *Honeycutt v. United States*, 581 U.S 443, 449 (2017); *see* "Acquire," Webster's Third New International Dictionary 18 (1961) ("to come into possession, control, or power of disposal of"); "Obtain," 7 Oxford English Dictionary 37 (1933) ("to come into the possession or enjoyment of (something)"); "Receive," Webster's Third New International Dictionary 1894 (1961) ("to come into possession of: acquire")." Rather, Rhode Island law makes clear the origin of the voter registration list: "the Secretary of State shall establish, maintain, and administer a portal for electronic voter registration." R.I. Gen. Laws, § 17-9.1-34. *See* R.I. Gen. Laws § 17-6-1.2 (which states there is "a statewide database maintained by the Secretary of State" of voter registration information that the electronic portal feeds into). The Secretary did not "come into" possession of the voter registration list, because he was the one to "maintain" the list and thus "establish" its contents. *Id; see Benson,* 179 F.4th at 479 ("the qualified voter file did not 'come into [the official's] possession' as that term is ordinarily understood").

A simple example illustrates the difference between the meaning of "come into" and "establish." Consider the ordinary meaning of a statute with similar language stating that it is a felony for a postal service officer or employee to destroy or open mail "which shall come into his possession, and which was intended to be conveyed by mail." 17 U.S.C. §1703(a). Under the statute, the postal officer may not open or destroy any letter that he receives or obtains, but he may open or destroy a letter that he wrote himself and that thus did not "come into" his possession. *See Benson*, 179 F.4th at 482.

Examining the type of records retained under Title III in the past further supports this reading of "come into." Historically, under this statute election officials would retain voter registration applications, voting receipts, and the receipt that a voter would receive after paying a poll tax. *Id. a*t 479. In some states, such as Arkansas and Texas, receipts from a poll tax were the only records of registration and equivalent to registration. *Id.* Given the statutory interpretation principle of ejusdem generis, any records that "come into his possession relating to any...other act requisite to voting in such election" should be of the same kind as those covered in the first three categories. *See Fischer v. United States*,

603 U.S. 480, 509 (2024) (Barrett, J., dissenting) (ejusdem generis applies when after "an enumeration of specifics," a catchall phrase should "embrace only objects similar in nature to those objects enumerated by the preceding specific words").

Furthermore, interpreting Rhode Island's voter registration list to be such a record would violate Section 20702 of Title III. "One of the most basic interpretive canons [is] that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018). Section 20702 states that any person "who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title" shall be fined, imprisoned, or both. 52 U.S.C. § 20702. As noted in the Statement of the Case, as part of NVRA and HAVA compliance, election officials constantly alter Rhode Island's voter registration list to add new voters who register and remove those who have moved out of the state or are otherwise no longer eligible to vote. *See* https://vote.sos.ri.gov/Elections/Administration. The system is not static but "subject to additions, subtraction and revisions" and, thus, not a record as defined under Title III. *See United States v. Schmidt*,

No. 2:25-cv-01481-CB, 2026 WL 1850016, *2 (W.D. Pa. June 27, 2026); *Benson,* 179 F.4th at 479 ("That Michigan election officials and others must constantly change information in the qualified over file shows that it is not subject to Title III"). Interpreting Rhode Island's voter registration list to be a "record or paper required by section 20701" would render Section 20702 inoperative and lead to the absurd conclusion that any maintenance of Rhode Island's voter registration list is unlawful. *Id.* Such interpretation would also directly conflict with the provisions within NVRA and HAVA that require states to constantly maintain their voter registration lists, the very same provisions with which DOJ purports to ascertain state compliance through its demand. *See United States v. Griswold*, No. 25-cv-03967-PAB-TPO, 2026 WL 2235374, *12 (D. Colo. Aug. 3, 2026) ("if §20701's definition of records includes Colorado's [voter registration list], then § 20701 would be in conflict with other statutes that regulate the maintenance of voter registration records"); *United States v. Board of Elections of the State of N.Y.*, No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921, *9 (N.D.N.Y. July 10, 2026) ("interpreting § 20701 to include the [New York State] Voter List would not be harmonious with an adjacent provision, 52 U.S.C. § 20702"). Thus,

this Court should affirm the holding below on the alternative grounds that Rhode Island's voter registration list is not a "record" within the meaning of Title III and, as such, not properly subject to DOJ's records demand.

## II. Alternatively, the district court's decision should be affirmed because DOJ's records demand violates federal and state privacy laws

Even if DOJ had the authority to demand Rhode Island's voter registration list under Title III, which they clearly do not, the Privacy Act, E-Government Act, and Rhode Island privacy laws do not authorize DOJ to collect sensitive information on Rhode Island's registered voters. Thus, were this Court to disagree with the district court's resolution of DOJ's CRA claim, it should nevertheless affirm the judgment because DOJ's demand violates federal and state privacy laws protecting Rhode Islanders' right to express their political beliefs without fear of retaliation. *See Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 90 (1st Cir. 2025) (noting that this Court is "free to affirm the district court's ruling 'on any ground made manifest by the record, including one not reached by the District Court.'").

**A. DOJ's demand violates the Privacy Act**

The Privacy Act was enacted to protect First Amendment rights of voters and citizens. Specifically, it prohibits federal agencies from maintaining any "record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity[.]" 5 U.S.C. § 552(a)(e)(7). The Act also requires agencies to provide notice in the Federal Register when invoking the narrow exceptions to create such a record and to publish the character of the records they are collecting and how the records will be used. *Id.* § 552a(e)(4). These restrictions demonstrate "Congress' own special concern for the protection of First Amendment rights," *Albright v. United States*, 631 F.2d 915, 919 (D.C. Cir. 1980), particularly against "the creation of secret information systems or data banks on Americans by . . . the executive branch," S. Rep. No. 93-1183 (1974), reprinted in 1974 U.S.C.C.A.N. 6916, 6917. Simply registering to vote is a choice that "implicates political thought and expression," *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999), and there is no real dispute that

the voting records DOJ seeks relate to Rhode Islanders' political expression as protected by the First Amendment. DOJ Br. at 38-39 (agreeing that at least some of the information requested "describes how an individual exercises his First Amendment rights") (cleaned up). *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69, 75-76 (1990) (expression of political beliefs and association through party affiliation protected by First Amendment). These records inarguably implicate the First Amendment concerns lying at the heart of the Privacy Act.

Here, DOJ's attempt to collect sensitive voter information is neither authorized by the Privacy Act's narrow exceptions nor compliant with the Act's notice requirements. The Act's sweeping language, which covers "any item, collection, or grouping of information about an individual that is maintained by an agency," 5 U.S.C. § 552a(a)(4), imposes requirements on federal agencies that create or maintain a "system of records," *id.* at (e), and thus protects all information associated with a voter's record, not just their party affiliation or choices in past elections. Because the voter registration list information is protected by the Privacy Act's plain language, DOJ cannot access the list without the consent of the individuals affected or without "an authorized law enforcement activity."

5 U.S.C. § 552a(e)(7). The law enforcement exception is read narrowly in keeping with the Act's primary goals of protecting individual privacy and First Amendment rights. *MacPherson v. Internal Revenue Service*, 803 F.2d 479, 482 (9th Cir. 1986). DOJ bears the burden of demonstrating "good reason to believe" that the records are "relevant" to the claimed law enforcement action. *Garris v. FBI*, 937 F.3d 1284, 1299, 1301 (9th Cir. 2019). Otherwise, an agency could engage in a "fishing expedition," and the exception "would swallow the rule." *Id.* at 1299 n.3 (quoting *MacPherson*, 803 F.2d at 484); *see, e.g., McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("plaintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have"). Even assuming that ensuring NVRA compliance constitutes an "authorized law enforcement activity," DOJ has provided no evidence that an unredacted voter registration list is "pertinent to" and "within the scope" of that purpose. *Id.* at 1299, 1301; *see supra* at 22-25 (explaining how DOJ has offered no plausible basis for demanding the voter registration list). Indeed, DOJ admits in its briefing that at least some of the voter registration list information is *not* pertinent to DOJ's alleged investigation, DOJ Br. at 39, and as explained *supra* at 33-36,

none of the sensitive information the Secretary declined to produce is necessary to determine whether Rhode Island complies with NVRA and HAVA list maintenance requirements. DOJ provides no explanation to the contrary. *See* DOJ Br. at 38-39 (simply concluding, without explanation, that "[e]nforcing the NVRA's and HAVA's list-maintenance requirements satisfies the law enforcement exception").

Moreover, even if the Privacy Act did not prohibit the collection of Rhode Island's unredacted voter registration lists—which it does—DOJ has failed to comply with the procedures it must follow pursuant to the Privacy Act for permissible collections of information. Specifically, DOJ is required to issue a notice prior to the creation or revision of a system of records identifying which records will be collected, where they will be collected from, how those records will be used, and who will be impacted. 5 U.S.C. § 552a(e)(4). DOJ does not dispute the Privacy Act's System of Records Notice (SORN) requirement applies to its request, *see* DOJ Br. at 39, but it insists that it complied via its earlier Federal Register notices about DOJ's "Central Civil Rights Division Index File," *id*. (citing 68 Fed. Reg. 47,610 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); 82 Fed. Reg. 24,147 (May 25, 2017)). However, these notices, the most recent of

which is almost a decade old, do not tell Rhode Islanders that this sensitive voter information would be collected for the purposes allegedly behind this request, namely, confirming the state's compliance with NVRA and HAVA. The first notice limits itself to records consisting of "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division," and identifies individuals covered by these records as "[s]ubjects of investigations, victims, [and] potential witnesses." 68 Fed. Reg. at 47,611. The second and third notices allow DOJ to disclose information from these same records after an investigation is closed, 70 Fed. Reg. at 43,904, or in response to a data breach, 82 Fed. Reg. at 24,147. None of these notices give Rhode Islanders reason to believe that DOJ would collect their voting records to check the state's NVRA and HAVA compliance, particularly where, as here, there is no reason to believe the state is out of compliance.

DOJ's attempt to convince this Court otherwise stretches the plain meaning of those notices past the breaking point. For example, even assuming that DOJ is right that the records it collects on "subjects" of investigation includes anyone whose "conduct is within the scope of the . . .

investigation," DOJ Br. at 40-41 (quoting U.S. Dep't of Just. Justice Manual § 9-11.151 (2020)), the only conduct allegedly under investigation here is the *State*'s maintenance of the *State*'s voter rolls, not any conduct by the voters. Nor does DOJ cite any authority construing voters as "victims" of their State's efforts to maintain accurate voter lists.

Even assuming those notices did in some way relate to voting records and NVRA/HAVA compliance, the Act still requires DOJ to publish another notice before "revis[ing]" its pre-existing system of records to include the voting records of hundreds of thousands of Rhode Islanders. 5 U.S.C. § 552a(e)(4); *see also* Off. of Mgmt. & Budget, Circular No. A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication Under the Privacy Act* at 5 (2016), https://perma.cc/QZZ3-EB67 (explaining that an agency must provide notice in the Federal Register when "making significant changes to an existing system of records," including a "substantial increase in the number, type, or category of individuals about whom records are maintained," or a "change that expands the types of categories of records maintained"). The privacy concerns are multiplied by DOJ's admission to the district court that it intends to share these records with the Department of Homeland

Security and other agencies for general "law enforcement and governmental purposes" and that it cannot control what other agencies may do with that information. App. 179-81. Thus, even if DOJ had issued a SORN related to its election-related investigation, which it did not, it admits that it wouldn't confine the records' use to that investigation and thus voters would have no notice of how the federal government is using their records, in violation of 5 U.S.C. 552a(e)(4)(D). Allowing DOJ to drastically expand its database on American citizens without any notice of that fact would eviscerate the Privacy Act's transparency requirement and a vital check against federal overreach.

**B. DOJ's demand violates the E-Government Act**

DOJ's demand also violates the E-Government Act's requirement to prepare a Privacy Impact Assessment (PIA) before collecting sensitive information about Rhode Island voters. The E-Government Act generally requires federal agencies to conduct a PIA before "initiating a new collection of information" that includes "information in an identifiable form permitting the physical or online contracting of a specific individual." Pub. L. No. 107-347, § 208(b)(1)(A)(11), (Be), 116 Stat. 2899, 2921-2922; *see Elec. Priv. Info. Ctr. v. Presidential Advisory Comm 'n on Election*

*Integrity*, 878 F.3d 371, 375 (D.C. Cir. 2017). The PIA must address, at minimum: "what information is to be collected", "why the information is being collected", "the intended use of the ... information", "with whom the information will be shared", "what notice or opportunities for consent would be provided to individuals regarding what information is collected and how that information is shared", "how the information will be secured", and whether the information will be maintained in a system of records under the Privacy Act. Pub. L. No. 107-347, § 208(b)(2)(B)(ii). If practicable, the agency shall "make the privacy impact assessment publicly available." *Id.* § 208(b)(l)(B)(iii).

DOJ admits that it did not conduct a PIA, as required by the E-Government Act, before demanding Rhode Island's unredacted voter registration list. DOJ Br. at 11. However, it makes several spurious arguments to justify its failure to do so. All of these arguments fail on their face.

First, the E-Government Act requires a PIA whenever an agency collects identical information encompassing 10 or more persons. Pub. L. No. 107-347, § 208(b)(1)(A)(ii)(II). DOJ's attempt to evade this requirement by seizing that information through a third party—here, the

state—rather than directly from voters cannot be reconciled with the express purpose of the PIA requirement, which is "to ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." Pub. L. No. 107-347, § 208(a). The PIA requirement would provide precious little protection if federal agencies were allowed to collect whatever information they liked so long as they did not request that information directly from the individuals whose privacy the government is invading. In any case, the PIA requirement is still triggered because DOJ has, in fact, made the same request for voter registration lists from ten or more States and localities, which are "persons" under the statute. *See* Pub. L. No. 107-347, § 208(b)(1)(A)(ii)(II) (applying the "10 or more persons" rule to anyone "other than agencies, instrumentalities, or employees of DOJ"); *United States v. Caldwell,* No. CV 26-2025 (ZNQ) (JTQ), 2026 WL 2186515, *1 (D.N.J. July 29, 2026) (noting that there are "over two dozen lawsuits" brought by the United States seeking voter registration data from states and localities).

Second, there is no applicable statutory PIA exemption. DOJ points to 44 U.S.C. § 3518(c)(1)(B), but 44 U.S.C. § 3518(c)(2) expressly *includes*

the "collection of information during the conduct of general investigations . . . undertaken with reference to a category of individuals or entities," such as DOJ's nationwide investigation into state voter rolls.

Third, DOJ "initiat[ed] a new collection of information" by requesting information from the State that would be new to DOJ. Pub. L. No. 107-347, § 208(b)(1)(A)(ii). Congress enacted the E-Government Act to "make DOJ more transparent and accountable," *id.* § 2(b)(9) (emphasis added), and to "ensure sufficient protections for the privacy of personal information," *id.* § 208(a). DOJ's creative interpretation of "initiate" to exclude information gathered from records maintained by other entities would render the PIA requirement a nullity for the vast amount of information DOJ collects from pre-existing records, whether held by the States, private organizations, or the individuals themselves. Indeed, as the Office of Management and Budget (OMB) has explained, assessments are required when a federal agency's collection of information "*creates new privacy risks*," including when an agency incorporates into existing information systems "databases of information . . . obtained from . . . public sources." OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, M-03-22, Att. A § II(B)(b), (6) (Sept. 26,

2003), https://perma.cc/E6PW-YQTP. If a privacy impact assessment is required whenever compiling data from public sources, agencies surely must do the same when demanding sensitive voter information that is not otherwise public.

### C. DOJ's demand violates state privacy laws that are not preempted by Title III

Finally, Rhode Island election law further protects the sensitive voter information DOJ now demands, and on appeal, DOJ does not argue otherwise. *See* DOJ Br. at 47. R.I. Gen. Laws § 17-9.1-34 makes confidential "information and data" obtained in the voter registration process. It prohibits the Secretary from using or transmitting this "information or data" for any purpose "except for voter registration purposes or pursuant to a court order." *Id.* The confidentiality of voter registration records is further protected by 410-RICR-20-00-19.5(I)(1), which specifically protects applicants' driver's license numbers, state ID numbers, and last four digits of social security numbers. The Secretary, therefore, is not allowed to share the state's voter registration list without redacting at least this much information.

DOJ asks this Court to sweep aside these confidentiality protections for Rhode Island voters by claiming conflict preemption, but

DOJ fails to meet the "high threshold" of proving that the state cannot comply with both federal and state law in this case. *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011). Congress's authority over federal elections preempts state law only "so far as it is exercised, and no farther." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013). If state and federal obligations "can be read to operate harmoniously," state law is not preempted. *Id.*

In this case, it is easy to harmonize state and federal election law because no federal law entitles DOJ to an unredacted copy of Rhode Island's voter registration list. The list is not a record under Title III, as explained *supra* at 37-42, and even if it were, DOJ failed to follow the necessary procedures to properly demand the list in this case, *supra* at 20-36. Moreover, Title III says nothing about redaction or state confidentiality provisions, and where federal voting laws are silent regarding such provisions, this Court has already held that conflict preemption does not apply. *Bellows*, 92 F.4th at 56 (permitting redaction of "sensitive personal information" where "nothing in the text of the NVRA prohibits" such redaction). Indeed, this Court concluded that the "proper redaction of certain personal information in the [state voter files]

can further assuage the potential privacy risks implicated by the public release of the [state voter files].” *Id*. The same reasoning applies to HAVA, and DOJ provides no explanation for why it requires this sensitive voter information to ensure compliance with the “minimum standards” set by that law, particularly as DOJ has not brought an enforcement action under HAVA nor made any credible allegation that Rhode Island is falling short of those standards. Far from conflicting with federal objectives, state confidentiality laws complement federal privacy protections in the CRA, *see* 52 U.S.C. § 20704, as well as in the Privacy Act and E-Government Act, as explained in subsections A-B above.

## CONCLUSION

The judgment of the district court should be affirmed. The Court should also reject DOJ’s request that, contrary to the timeline specified in Fed. R. App. P. 41(b), the mandate issue immediately. DOJ Br. at 49. “Deviation from normal mandate procedures is a power ‘of last resort, to be held in reserve against grave, unforeseen contingencies.’” *Ryan v. Schad*, 570 U.S. 521, 525 (2013) (quoting *Calderon v. Thompson*, 523 U.S. 538, 550 (1998)). No such grave circumstances have been demonstrated here, particularly as this Court previously denied DOJ’s request to

expedite this appeal. Order (July 6, 2026). For the same reason, DOJ has not established good cause to shorten the time period established by Fed. R. App. P. 35(c) and 40(a) for filing a petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 2 (good cause required to suspend provision of rules).

Respectfully submitted,

Defendant-Appellee GREGG M. AMORE, in his official capacity as Secretary of State for the State of Rhode Island,

By:

PETER F. NERONHA
ATTORNEY GENERAL

/s/ James J. Arguin
James J. Arguin (#39225)
Megan Rok (#1225743)
Kyla Duffy (#1223931)
Paul T.J. Meosky (#1220164)
Special Assistant Attorneys General
Office of the Attorney General
150 South Main Street
Providence, RI
(401) 274-4000 (Phone)
(401) 222-2995 (Fax)
jarguin@riag.ri.gov

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f):

   ✓ this document contains 11,230 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ✓ This document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in size 14 Century Schoolbook font.

*/s/ James J. Arguin*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August 2026, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that all of the parties or their counsel of record are registered as ECF filers and that they will be served by the CM/ECF system.

/s/ James J. Arguin