No. 26-1665

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

GREGG AMORE, in the official capacity as Secretary of State of Rhode Island; COMMON CAUSE; CATHERINE SAUNDERS; STUART WALDMAN; JULIA SANCHES; SEIU DISTRICT 1199NE; RHODE ISLAND ALLIANCE FOR RETIRED AMERICANS; CAROLYN BETENSKY; MICHAEL ZACK MEZERA,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

# REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

HARMEET K. DHILLON
Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

## TABLE OF CONTENTS


**PAGE**

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL satisfied Title III's requirements .......... 2

A. Courts play a limited role in assessing the Attorney General's demand under Title III .......... 3

B. The DOJ provided a valid basis for its demand .......... 8

C. The DOJ's stated purpose of ascertaining Rhode Island's compliance with the NVRA and HAVA was sufficient .......... 11

D. Rhode Island's SVRL is a record or paper that Title III requires the State to retain and preserve and to produce upon the Attorney General's demand .......... 18

II. The DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL does not violate federal or state privacy laws .......... 22

A. The DOJ's demand complied with the Privacy Act .......... 23

B. The E-Government Act does not prevent the DOJ from obtaining data supporting its NVRA and HAVA claims .......... 27

**TABLE OF CONTENTS (continued):** **PAGE**

C. Federal law preempts any contrary Rhode Island privacy law ........ 29

III. If this Court reverses, it should instruct the district court to order immediate production of the SVRL ........ 31

CONCLUSION ........ 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*American Oversight v. United States Dep't of Just.*,
45 F.4th 579 (2d Cir. 2022) ........................................................ 26

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) ........................................................ 6

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021) ........................................................ 26

*Buckley v. American Const. Law Found., Inc.*,
525 U.S. 182 (1999) ........................................................ 23

*Coleman v. Kennedy*,
313 F.2d 867 (5th Cir. 1963) (per curiam) ........................................ 8

*Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) ........................................................ 15

*Donaldson v. United States*, 400 U.S. 517 (1971),
*superseded by statute on other grounds*,
Tax Reform Act of 1976, Pub. L. No. 94-455,
90 Stat. 1520 ........................................................ 7

*Fischer v. United States*,
603 U.S. 480 (2024) ........................................................ 22

*Holsum de P.R., Inc. v. ITW Food Equip. Grp. LLC*,
116 F.4th 59 (1st Cir. 2024) ........................................................ 9

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ........................................ *passim*

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014) ........................................................ 14

**CASES (continued):** **PAGE**

*Public Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ....................16-17

*Sandoz Inc. v. Amgen Inc.*,
582 U.S. 1 (2017) ....................29

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966) ....................13

*Southwest Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ....................13

*Teles de Menezes v. Rubio*,
156 F.4th 1 (1st Cir. 2025) ....................12

*United States v. Benson*,
819 F. Supp. 3d 753 (W.D. Mich.),
*aff'd*, 179 F.4th 470,
*reh'g en banc denied*, No. 26-1225,
2026 WL 2364306 (6th Cir. Aug. 14, 2026) .................... 11, 17, 20

*United States v. Freeman*,
147 F.4th 1 (1st Cir. 2025),
*cert. denied*, 146 S. Ct. 1616 (2026)....................19

*United States v. Powell*,
379 U.S. 48 (1964) ....................3-5

*United States v. Taylor*,
487 U.S. 326 (1988) ....................8

*United States v. Trahan*,
111 F.4th 185 (1st Cir. 2024),
*cert. denied*, 145 S. Ct. 1206 (2025)....................19

**CASES (continued):** **PAGE**

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ........................................................ 20

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) ........................................ 22

**CONSTITUTION:**

U.S. Const. Art. VI, Cl. 1 ................................................. 30

**STATUTES:**

Civil Rights Act of 1960 (CRA)
52 U.S.C. 20701 ................................................... *passim*
52 U.S.C. 20702 ........................................................ 22
52 U.S.C. 20703 ................................................... *passim*
52 U.S.C. 20704 ............................................... 6, 14, 30
52 U.S.C. 20705 .......................................................... 4

E-Government Act of 2002
§ 208(b)(1)(A)(ii) ..................................................... 29
§ 208(b)(1)(B)(i) ...................................................... 29
Pub. L. No. 107-347, § 208, 116 Stat. 2921-2922
(44 U.S.C. 3501 note) ............................................ 27

Help America Vote Act of 2002 (HAVA)
52 U.S.C. 21111 ........................................................ 13

National Voter Registration Act of 1993 (NVRA)
52 U.S.C. 20507(i)(1) ............................................... 14
52 U.S.C. 20510(a) ................................................... 13

Privacy Act of 1974
5 U.S.C. 552a(e)(4) ............................................. 24-25
5 U.S.C. 552a(e)(7) ....................................... 23-24, 31

**STATUTES (continued):** **PAGE**

26 U.S.C. 7602(a)(1) .......... 4

26 U.S.C. 7605(b) .......... 4-5

44 U.S.C. 3502(3)(A)(i) .......... 28

44 U.S.C. 3518(c)(2) .......... 28

**RULE:**

Fed. R. Civ. P. 81(a)(5) .......... 7

**REGULATIONS:**

28 C.F.R. 0.50(a) .......... 25-26

68 Fed. Reg. 47,610 (Aug. 11, 2003) .......... 25-27

70 Fed. Reg. 43,904 (July 29, 2005) .......... 25

82 Fed. Reg. 24,147 (May 25, 2017) .......... 25

**MISCELLANEOUS:**

Authority to Obtain & Share Statewide Voter Roll Data, 50 Op. O.L.C. (May 12, 2026), https://www.justice.gov/olc/media/1440346/dl .......... 28-29

*Webster's New World Dictionary of the American Language* (8th coll. ed. 1960) .......... 19

*Webster's Third New International Dictionary* (1966 ed. unabridg.) .......... 21

## INTRODUCTION

Accurate voter rolls are an essential precondition for a verifiable and trustworthy elections process. The Department of Justice (DOJ) seeks to obtain Rhode Island's statewide voter registration list (SVRL) to ensure that Rhode Island is conducting its federal elections in a manner that will ensure the public of a trustworthy process. The DOJ is not doing anything particularly new. The DOJ's request for the State's SVRL is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960 (CRA), and it is made for the lawful purpose of ensuring the State's compliance with the list maintenance requirements of the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA).

This Court should reverse and remand because the district court erred in concluding that the DOJ's demand for election records failed to state an adequate basis and purpose. U.S. Br. 13-37.[1] Defendants'

[1] "U.S. Br. __" refers to the page numbers of the United States' Opening Brief filed with this Court. "Amore Br. __" refers to the page numbers of Secretary Amore's Response Brief filed with this Court. "Common Cause Br. __" refers to the page numbers of the Response Brief filed with this Court by Common Cause, Catherine Saunders, Stuart Waldman, and Julia Sanches (Common Cause defendants). "District 1199NE Br. __" refers to the page numbers of the Response Brief filed

arguments on appeal reiterate the district court's mistakes, and their proposed alternative bases to affirm lack merit and should be rejected. This Court should reverse the dismissal order and remand with instructions directing the district court to compel Secretary Amore to produce the requested SVRL to the DOJ forthwith.

## ARGUMENT

### I. The DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL satisfied Title III's requirements.

Title III of the CRA imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), to "retain and preserve" election records that "come into [their] possession," 52 U.S.C. 20701, and to disclose them to the Attorney General upon his written demand, 52 U.S.C. 20703. For the reasons the United States sets forth in its Opening Brief (at 13-37), the CRA compels Secretary Amore to disclose Rhode Island's unredacted SVRL to the DOJ. Defendants' arguments to the contrary miss the mark.

---

with this Court by SEIU District 1199NE, Rhode Island Alliance for Retired Americans, Carolyn Betensky, and Michael "Zack" Mezera (District 1199NE defendants). "App. __" refers to the page numbers of the Appendix the United States filed with its Opening Brief.

### A. Courts play a limited role in assessing the Attorney General's demand under Title III.

As a threshold matter, the federal court hearing on the DOJ's demand for federal election records is a "special statutory proceeding" not subject to the ordinary pleading standards and panoply of Federal Rules of Civil Procedure. *Lynd*, 306 F.2d at 225-226. Instead, the Attorney General need only make a "simple statement" that the State election official against whom an order of reproduction is sought has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (quoting 52 U.S.C. 20703 (formally 42 U.S.C. 1974b)). "There is no place" for the State election official to challenge, or the court to review or require discovery regarding, "the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Ibid.* (quoting 52 U.S.C. 20703 (formally 42 U.S.C. 1974b)). Title III is satisfied so long as the Attorney General states in writing the basis and purpose of the demand, as happened here. U.S. Br. 20-21.

1. Defendants reiterate the district court's mistaken conclusion that *United States v. Powell*, 379 U.S. 48 (1964), which involved an Internal Revenue Service (IRS) administrative summons under the Internal

Revenue Code (IRC), overrides *Lynd* and compels application of the Federal Rules of Civil Procedure. Amore Br. 17-19; Common Cause Br. 28-29; District 1199NE Br. 20-23. The Supreme Court explained in *Powell* that judicial inquiry was appropriate to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. at 58. That inquiry was permitted because it was specifically authorized by Section 7605(b) of the IRC, which prohibited the IRS from subjecting a taxpayer "to unnecessary examination or investigations," *id.* at 52-53 (quoting 26 U.S.C. 7605(b)), and limited the IRS to documents that "may be relevant or material" to its "inquiry," 26 U.S.C. 7602(a)(1). The absence of similar statutory language limiting the Attorney General's authority to compel records under the CRA readily distinguishes *Powell*. U.S. Br. 16-19.

Defendants nevertheless argue that *Powell*—and its mandate for application of the Federal Rules—controls because the CRA, like the IRC, authorizes the Government to seek judicial enforcement of its phrase "by appropriate process," 52 U.S.C. 20705, and does not set forth the

procedure for a court to follow. Not so. Contrary to their contention (Amore Br. 18-19; Common Cause Br. 28-29; District 1199NE Br. 23), the IRC's limitation on the Government to demand documents that "may be relevant or material," is an important distinction. So too is the lack of statutory language imposing a "necessary" requirement on a Title III demand. *Cf. Powell*, 379 U.S. at 52-53 (quoting 26 U.S.C. 7605(b)). Because the CRA does not contain similar statutory prohibitions to those in *Powell* limiting the DOJ's authority to demand election records, there are no grounds upon which Secretary Amore can mount a challenge to the DOJ's demand under *Powell*.

Because *Powell* is inapplicable, this Court should consider *Lynd* as persuasive authority. Defendants attempt to distinguish *Lynd* on factual grounds—namely, that the Attorney General's demand in that case stated a proper basis and purpose, related to an investigation into voting-related racial discrimination, and concerned production of public records. Amore Br. 35; Common Cause Br. 31-34; District 1199NE Br. 24. These distinctions say nothing about whether proceedings called for by the statute are or are not summary in nature—only whether the statute was

satisfied in a given case.

Moreover, the Fifth Circuit's observation that the Attorney General demanded "public records which ought ordinarily to be open to legitimate reasonable inspection," as opposed to "confidential, private papers and effects," *Lynd*, 306 F.2d at 231, was not a description of the scope of Title III. *Contra* Amore Br. 35. Rather, the court explained that the district court's "delay" in allowing "inspection and copying" was unwarranted given the nature of the records sought in that case. *Lynd*, 306 F.2d at 230-231. If Title III were limited to "public records" that contained no sensitive information, then there would no need for Title III's non-disclosure provision. 52 U.S.C. 20704.[2]

2. Defendants further argue that the Federal Rules apply by default to proceedings in federal court, including those to compel the production

[2] The Common Cause defendants further attempt to distinguish *Lynd* on the ground that it "was decided before sensitive personal identifying information such as Social Security numbers or driver's license numbers was widely required as part of a person's voter registration record, and before any federal laws had been passed to protect and constrain access to personal information." Common Cause Br. 33; *see also* Amore Br. 35; District 1199NE Br. 44. Congress's "expectations" of how a statute may be applied in light of present circumstances do not control the meaning of the statute. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020).

of documents in accordance with a Government subpoena. Amore Br. 16-17; Common Cause Br. 29-30; District 1199NE Br. 20, 23. To be sure, that is the general case. *See* Fed. R. Civ. P. 81(a)(5). In *Donaldson v. United States*, however, the Supreme Court observed that, although the Rules of Civil Procedure "have an application to a summons proceeding," they "are not inflexible in this application"; and, moreover, precedent does not suggest those rules should be used to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." 400 U.S. 517, 528-529 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520; U.S. Br. 18. Such is the case here, where the "matter should be set down without delay for suitable hearing on the matters open for determination"—in particular, "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd*, 306 F.2d at 226.

Secretary Amore argues (at 19) that *Donaldson* nevertheless supports the district court's ruling because it provides courts discretion to limit the application of the Federal Rules in a summary proceeding

and the district court found "no good reason" to do so here. Even if that is so, a district court's exercise of discretion is not "unfettered by meaningful standards or shielded from thorough appellate review." *United States v. Taylor*, 487 U.S. 326, 336 (1988) (citation omitted). And 52 U.S.C. 20705's summary procedure, combined with its lack of any meaningful standard against which to judge the Attorney General's demand (U.S. Br. 21-22) dictate that a district court steps beyond its authority in attempting to evaluate the sufficiency of the Attorney General's written demand.

**B. The DOJ provided a valid basis for its demand.**

The requirement that the Attorney General provide an adequate basis for his demand for federal election records under Title III is simple to satisfy. The Attorney General need only "identify in a general way the reasons for his demand," such as that it "was made for the purpose of investigating *possible* violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (emphasis added). The only matters for a court to resolve are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of

the proceeding." *Lynd*, 306 F.2d at 226. That occurred in this case, and the district court's additional requirement that the Attorney General allege the factual basis for his demand finds no support in *Lynd*. U.S. Br. 23-24.

The Common Cause defendants argue (at 40-41) that the United States waived its argument that its demand satisfied a factual-basis requirement by failing to argue it in the district court. As the United States argued in its Opening Brief (at 21-24), Title III does not require a factual, as opposed to a legal, basis. And, as the United States argued both in its Opening Brief (at 21) and below (App. 178), the demand's stated basis of "ascertain[ing] Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA" is sufficient to satisfy the statute's "basis" requirement. Even if the United States had waived the issue below, the United States may respond to the district court's contrary reasoning on appeal. *See Holsum de P.R., Inc. v. ITW Food Equip. Grp. LLC*, 116 F.4th 59, 66 (1st Cir. 2024) ("When a district court addresses an argument, even one that a party has not presented squarely, that action undermines the justifications for enforcing what might otherwise be a party's waiver.").

Equally unpersuasive is defendants' argument that the DOJ's demand was deficient because it stated a purpose but no basis, contrary to Section 303's requirement that the demand contain a separate basis and purpose. Amore Br. 20-22; Common Cause Br. 39; District 1199NE Br. 25. Section 303 requires that a demand "contain a statement of the basis and the purpose therefor." 52 U.S.C. 20703. To repeat, the touchstone of a sufficient Title III demand under *Lynd* is "reasonable notice." *See* pp. 8-9, *supra*. Nothing in Section 303 mandates a formalistic incantation of the words "basis" and "purpose" to pass statutory muster where, as here, the statement provided the election officer with reasonable notice of the basis of the United States' demand—that Rhode Island's list maintenance procedures may violate the NVRA and HAVA—and the clear statutory authority for the demand (the CRA). U.S. Br. 23.

Along similar lines, defendants argue that the DOJ's demand failed to state an adequate basis because it did not allege the underlying facts supporting the demand. Amore Br. 22-25; Common Cause Br. 41-43; District 1199NE Br. 25-28. In defending the district court's grafting of a factual-basis requirement on to Section 303's minimal basis-and-purpose requirement, defendants rely on statutory interpretation (Amore Br. 23;

District 1199NE Br. 26) and rhetorical questions (Common Cause Br. 41). Conspicuously absent from defendants' argument is any meaningful attempt to grapple with the holdings of the relevant cases, which do not require that the United States allege a factual basis of its demand. *See* U.S. Br. 22-24; pp. 8-9, *supra*. Instead, defendants suggest (Amore Br. 23-24; Common Cause Br. 43; District 1199NE Br. 27) that *Lynd*'s holding is limited to the facts of the case—a position that finds no support in the decision itself. *See* pp. 5-6, *supra*.

### C. The DOJ's stated purpose of ascertaining Rhode Island's compliance with the NVRA and HAVA was sufficient.

The DOJ also stated a proper purpose for its demand for Rhode Island's unredacted SVRL: "to ascertain Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA." App. 23. The district court erred in holding that Title III solely addresses violations of individual voting rights. U.S. Br. 25-26. Indeed, "nothing in the statute's text . . . limits the purposes for which the DOJ may request the records." *United States v. Benson*, No. 26-1225, 2026 WL 2364306, at *4 (6th Cir. Aug. 14, 2026) (*Benson III*) (Murphy, J., concurring). Even accepting the district court's mistaken gloss on Title III's purpose

requirement, ensuring Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA *does* relate to individual voting rights. U.S. Br. 26-28. None of the defendants' rejoinders have merit.

1. Echoing the district court's holding, defendants contend that the Attorney General may only invoke Title III for the purpose of investigating possible violations of individual voting rights. *See* Amore Br. 30-32; Common Cause Br. 44-45; District 1199NE Br. 32-35. Yet they offer no textual basis for these limitations, claiming instead that Title III's historical context overrides the statute's plain language. Amore Br. 30-32; District 1199NE Br. 32-33. Defendants correctly recognize that in interpreting a statute this Court "generally accord[s] statutory text its ordinary meaning, but . . . also must take account of the specific context in which that language is used, and the broader context of the statute as a whole." *Teles de Menezes v. Rubio*, 156 F.4th 1, 12 (1st Cir. 2025) (internal quotation marks and citations omitted). But they draw the wrong conclusion about Title III's scope from this principle.

It is both unsurprising and unilluminating that Title III's legislative history, upon which defendants construct their historical-

context argument, focuses on racial discrimination in voting. Title III was passed to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General" to thwart "public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966); U.S. Br. 3. The legislative history focuses on racial discrimination as a permissible purpose for Title III investigations because that was the primary concern of the day. *See* U.S. Br. 3. But courts "have no warrant to elevate vague invocations of statutory purpose over the words Congress chose." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022). And since the CRA, other election statutes have been passed against the backdrop of Title III, and nothing in Title III suggests that enforcement of these later statutes cannot provide a proper "purpose" under 52 U.S.C. 20703.

2. Indeed, defendants properly acknowledge elsewhere in their briefs that the subsequently enacted NVRA and HAVA must be harmonized with the CRA. They err in concluding, however, that Title III does not authorize the DOJ to demand records to assess a State's compliance with the list maintenance requirements of the NVRA and HAVA because the separate enforcement mechanisms of these statutes,

*see* 52 U.S.C. 20510(a) (NVRA), 21111 (HAVA), provide the exclusive authority for the DOJ to seek records for that purpose. Amore Br. 26-30; District 1199NE Br. 28-32.

Contrary to defendants' contention (Amore Br. 27-29; District 1199NE Br. 29-30; *see also* Common Cause Br. 54-55), the NVRA's *public*-inspection provision, 52 U.S.C. 20507(i)(1), says nothing about the Attorney General's Title III authority to demand an SVRL to assess a State's NVRA compliance. U.S. Br. 29-30. This provision covers a different-in-kind inspection process and thus cannot be deemed as "more specifically address[ing] the topic of NVRA enforcement than could the CRA." Amore Br. 27 (internal quotation marks omitted). The statute that regulates the Attorney General's ability to demand documents related to voting (that are specifically not subject to public disclosure, 52 U.S.C. 20704)—remains 52 U.S.C. 20703. This interpretation gives effect to the Supreme Court's directive that when two separate statutes "are complementary and have separate scopes and purposes," the "greater specificity" of one matters only if both "cannot be implemented in full at the same time." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 118 (2014).

Equally unpersuasive is Secretary Amore's argument that HAVA's lack of a document-inspection provision compels the conclusion that Title III does not grant the DOJ the authority to demand an SVRL to assess a State's HAVA compliance. Amore Br. 28-30. The DOJ's authority to enforce HAVA does not operate in a vacuum, separate from the Attorney General's preexisting Title III investigative authority. Said differently, Title III gives the Attorney General investigative powers; HAVA gives him enforcement powers. There is a "strong presumption" that these statutes, which both concern voting rights, "can coexist harmoniously" and a court's duty is to "giv[e] effect to both." *Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63-64 (2024) (citation omitted). The lack of a tool for records inspection by the Attorney General in HAVA comparable to 52 U.S.C. 20703 *supports* the DOJ's position because it is implausible that Congress intended for the Attorney General to lack the ability to inspect complete records so pertinent to his enforcement authority under HAVA. *See* U.S. Br. 32-33.

3. Defendants further argue that the DOJ failed to plausibly allege how Rhode Island's unredacted SVRL is relevant to its demand's stated purpose of assessing the State's compliance with the list maintenance

requirements of NVRA and HAVA. Amore Br. 32-36; Common Cause Br. 46-49. Not so. As the United States explained in its Opening Brief (at 31-32), its Complaint plausibly alleged that the Department needed a registrant's state driver's license number or the last four digits of the registrant's social security number to assess compliance, because HAVA requires that information to accept or process a voter registration application.

Defendants nevertheless contend that this confidential and sensitive information is not relevant to determining whether Rhode Island is making a "reasonable effort" to remove ineligible registrants from its voter registration list under the NVRA and HAVA. Amore Br. 33; Common Cause Br. 46-47. The personal information of individuals the DOJ seeks is certainly relevant or helpful to determining whether a State is making a "reasonable effort" attempt to maintain a voter list free of ineligible individuals. While neither the NVRA nor HAVA demands perfection, the presence of significant, preventable, or numerous inaccuracies in the voter rolls may suggest that a State is not fulfilling its obligations. Because "whether voter registration rolls are accurate and current cannot be determined without inspecting the [SVRL]," *Public*

*Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 49 (1st Cir. 2024), the United States needs access to the SVRL and the identifying information required by HAVA to ensure that ineligible people are not on the list.

4. Finally, the Common Cause defendants erroneously assert that the Attorney General's stated purpose of assessing Rhode Island's compliance with the list maintenance requirements of the NVRA and HAVA is pretextual and that his true motives are to establish a national voter database to target and remove individuals from the voter rolls illegally and to enforce immigration laws. Common Cause Br. 49-52. As the United States explained in its Opening Brief (at 34-36), defendants' allegations of pretext constitute speculations that fall well short of "firm evidence of bad faith."

As an initial matter, the Common Cause defendants' allegation of bad faith "goes to the truth of the DOJ's allegations and cannot be addressed on a motion to dismiss." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich.) (*Benson I*), *aff'd*, 179 F.4th 470 (*Benson II*), *reh'g en banc denied*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026). Indeed, the District 1199NE defendants concede as much. District 1199NE Br. 48-49. In any event, the Common Cause defendants' claim

also fails on the merits. As evidence of pretext, they rely on the fact that the DOJ has demanded unredacted SVRLs from numerous States and asked States to sign Memoranda of Understanding in connection with those demands; public representations by Department attorneys in other cases as to what the DOJ intended to do with the voter information; and commentary on the United States' alleged intentions by another district court. Common Cause Br. 49-51. Because the cited DOJ's actions are consistent with the demand's stated purpose of assessing a State's compliance with the NVRA and HAVA, they are not evidence, much less firm evidence, of a pretextual motive.

### D. Rhode Island's SVRL is a record or paper that Title III requires the State to retain and preserve and to produce upon the Attorney General's demand.

In the alternative, defendants argue for the first time that Rhode Island's SVRL is not a record within the meaning of Title III because it is created by the State and thus does not "come into . . . possession" of an election official as Section 301 requires. Amore Br. 36-42; Common Cause Br. 20-26; District 1199NE Br. 35-43. This argument is without merit.

1. Section 301 of the CRA requires an election official to "retain and preserve, for a period of twenty-two months from the date of any" covered

election, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. Defendants do not appear to dispute that Rhode Island's SVRL is a record or that "the phrase 'relating to' has a broadening effect." *United States v. Trahan*, 111 F.4th 185, 197 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 1206 (2025). By any measure, an SVRL is a "record[] . . . relating to any application[ or] registration . . . to vot[e]." 52 U.S.C. 20701.

This disagreement boils down, then, to what it means to "come into . . . possession" of a document. This Court "interpret[s] a statute's words based on their plain and ordinary meaning at the time of the statute's enactment." *United States v. Freeman*, 147 F.4th 1, 13 (1st Cir. 2025) (citation omitted), *cert. denied*, 146 S. Ct. 1616 (2026). According to dictionary definitions contemporaneous with the CRA's passage, an officer "come[s] into . . . possession" of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New World Dictionary of the American Language* 291 (8th coll. ed. 1960); *see id.* at 1140 (defining "possess" and "possession"). When officers within Secretary Amore's office aggregate individual voter

records into an SVRL, they get or acquire a new document and retain it within their control—thus coming into possession of the SVRL. *See United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 145 (1989) ("By control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties.").

Though a panel of the Sixth Circuit disagreed with the United States' argument, *Benson II*, 179 F.4th at 478-482, a majority of the judges on the Sixth Circuit concluded that an election officer in Secretary Amore's position "comes into . . . possession" of an SVRL, *Benson III*, 2026 WL 2364306, at *2 (Murphy, J., concurring); *id.* at *7-10 (Griffin, J., dissenting); *id.* at *13-14 (Thapar, J., dissenting). There is no "external-source limitation" in the text, *Benson II*, 179 F.4th at 485 n.3; *Benson III*, 2026 WL 2364306, at *7 (Griffin, J., dissenting). *Contra* Amore Br. 39-40. And even if there were, Secretary Amore would have come into possession of the SVRL upon receiving it from other election officers. *Benson III*, 2026 WL 2364306, at *2 (Murphy, J., concurring); *id.* at *8-9 (Griffin, J., dissenting); *id.* at *13-14 (Thapar, J., dissenting).

2. Defendants argue that the examples of records and papers Section 301 lists is evidence that the statute covers only documents that

voters submit to election officials. Amore Br. 39-40; Common Cause Br. 24; District 1199NE Br. 37-38. Even assuming that the example documents are all records that election officials receive rather than create, the statutory text goes well beyond those example documents by requiring retention and preservation of all records and papers "*relating to*" any of the examples. 52 U.S.C. 20701 (emphasis added).

No more persuasive is the contention of the Common Cause defendants (at 24-25) and District 1199NE defendants (at 38-39) that applying Section 301 to an SVRL would render the phrase "come into" surplusage. Congress used the phrase "*come* into his possession" rather than "*are* in his possession," not to impose an unwritten carve-out for records or documents that are self-generated, but to focus on *how* and *when* the officer gains possession of the records or documents in the first instance. 52 U.S.C. 20701; *see Webster's Third New International Dictionary* 453 (1966 ed. unabridg.) (defining "come into" as "to enter upon or into possession of: acquire esp. as an inheritance"). The absence of any origin source in the phrase "come into . . . possession" intentionally encompasses *any source* from which an official could come into possession of the relevant record.

Finally, defendants mistakenly contend that interpreting Section 301 to cover an SVRL that is constantly altered to comply with the NVRA and HAVA would create a conflict with Section 302, which prohibits "willfully steal[ing], destroy[ing], conceal[ing], mutilate[ing], or alter[ing] any record or paper" covered by Section 301, 52 U.S.C. 20702. Amore Br. 40-41; Common Cause Br. 25-26; District 1199NE Br. 39-40. Defendants fail to grapple with the associated words surrounding "alter" in Title III, which must be understood as "actions that, by their nature, impair the integrity or availability of records, documents, or objects." *Fischer v. United States*, 603 U.S. 480, 481 (2024). Performing list maintenance under the NVRA and HAVA is thus not "alter[ing]" the SVRL at all, 52 U.S.C. 20702, but instead "retain[ing] and preserv[ing]" it, 52 U.S.C. 20701; *see Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1085 (10th Cir. 2025) (applying similar analysis to the NVRA's obligation that States "maintain" records).

## II. The DOJ's demand for an electronic, unredacted copy of Rhode Island's SVRL does not violate federal or state privacy laws.

The district court did not reach defendants' privacy-related arguments, but defendants argue that the district court's opinion can be

affirmed on those bases. Amore Br. 42-55; Common Cause Br. 57-58; District 1199NE Br. 43-48. The court should reject these arguments.

### A. The DOJ's demand complied with the Privacy Act.

Defendants make two challenges to the DOJ's demand based on the Act, one substantive and one procedural. Neither challenge has merit.

1. Secretary Amore argues that disclosure of the unredacted SVRL threatens the First Amendment rights of voters, which the Privacy Act protects, *see* 5 U.S.C. 552a(e)(7), because it shows which Rhode Island citizens have chosen to register to vote and thus their "political expression as protected by the First Amendment." Amore Br. 43-44. Secretary Amore further contends that the DOJ cannot collect this information as part of an "authorized law enforcement activity," 5 U.S.C. 552a(e)(7). Amore Br. 44-46.

This argument misses the mark. The case upon which Secretary Amore bases his contention that the mere act of registering to vote constitutes protected First Amendment expression, *Buckley v. American Const. Law Found., Inc.*, 525 U.S. 182 (1999), struck down a Colorado statute that required initiative-petition circulators be registered voters as burdening political expression because it "limit[ed] the number of

voices who will convey the [initiative proponents'] message." *Id.* at 194-195 (citation omitted; second alteration in original). Secretary Amore fails to allege, must less show, how requiring disclosure of an SVRL—shorn of information on an individual's party affiliation and on how that individual votes (*see* U.S. Br. 38-39)—imposes a similar burden. Indeed, the Privacy Act prohibits maintenance of records "describing *how* any individual exercises [First Amendment] rights" and not *whether* the individual does. 5 U.S.C. 552a(e)(7).

Moreover, an unredacted SVRL is clearly "pertinent to" and "within the scope" (Amore Br. 45 (citation omitted)) of DOJ's cited law-enforcement activity: "[e]nforcing the NVRA's and HAVA's list-maintenance requirements" (U.S. Br. 38). *See* pp. 15-17, *supra*.

2. Defendants further argue that the DOJ failed to comply with the maintenance provision's requirement that it publish a System of Records Notice (SORN) in the Federal Register before "establish[ing] or revis[ing]" a "system of records," 5 U.S.C. 552a(e)(4). Amore Br. 46-49; Common Cause Br. 57-58; District 1199NE Br. 45-48. As the United States explained in its Opening Brief (at 39-41), however, an electronic, unredacted copy of Rhode Island's SVRL is covered by the existing SORN

titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610, 47,611 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed. Reg. 24,147 (May 25, 2017).

Defendants respond that this SORN is insufficient. The District 1199NE defendants argue that the SORN "does not even *mention* the NVRA, HAVA, or the CRA." District 1199NE Br. 46. But as explained (U.S. Br. 39-40), the SORN applies to records "kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51," 68 Fed. Reg. at 47,611, which grant the Civil Rights Division responsibility for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting," 28 C.F.R. 0.50(a).

The District 1199NE defendants' accusation that the SORN "does not disclose what the United States intends to do with the voter data it collects" (District 1199NE Br. 46) incorrectly faults the DOJ for not meeting a heightened level of notice not required by the Privacy Act. The Act requires the United States to disclose "each routine use of the records . . . and the purpose of such use." 5 U.S.C. 552a(e)(4). Again,

the United States made clear that the records will be used to enforce civil-rights statutes, "including those pertaining to elections and voting." 28 C.F.R. 0.50(a).

No more persuasive is defendants' argument that the SORN's coverage of "[s]ubjects of investigations, [and] victims," 68 Fed. Reg. at 47,611, cannot be read to cover Rhode Island registered voters. Amore Br. 47-48; Common Cause Br. 57-58; District 1199NE Br. 46-47. The District 1199NE defendants' overwrought suggestion (at 47) that designating voters as "subjects" would "trigger a well-advised recipient to seek criminal defense counsel" mistakenly conflates "targets," who are individuals for whom the prosecutor or grand jury "has substantial evidence linking him or her to the commission of a crime," and "subjects." *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted). U.S. Br. 40-41. And no defendant explains why eligible voters are not potential "victims" of NVRA and HAVA non-compliance, 68 Fed. Reg. at 47,611, when their votes may be diluted by that non-compliance. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021).

Lastly, the District 1199NE defendants assert that the SORN covers only “case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws” and therefore does not encompass the SVRL. District 1199NE Br. 47 (quoting 68 Fed. Reg. at 47,611). This language is not limited to “run-of-the-mill files,” *ibid.*, but extends to all “matters” relating to the enforcement of civil-rights laws.

**B. The E-Government Act does not prevent the DOJ from obtaining data supporting its NVRA and HAVA claims.**

Secretary Amore argues that the DOJ’s demand violated the E-Government Act because the DOJ failed to conduct a privacy impact assessment (PIA) required by the statute before initiating the collection of personal voter information. Amore Br. 49-53; *see* E-Government Act of 2002, Pub. L. No. 107-347, § 208, 116 Stat. 2921-2922 (44 U.S.C. 3501 note). As the United States explained in its Opening Brief (at 41-45), the Act by its plain language does not cover the DOJ’s demand for several separate and independent reasons. None of Secretary Amore’s rejoinders have merit.

First, Secretary Amore argues that the DOJ’s demand constituted a “collection of information” because it has “made the same request for

vote registration lists from ten or more States and localities." Amore Br. 51. But the statute requires that the Government seek "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," 44 U.S.C. 3502(3)(A)(i), and Secretary Amore has not explained how demanding production a pre-existing document is akin to asking a question or imposing a reporting or recordkeeping requirement. *See* U.S. Br. 42.

Second, Secretary Amore argues that the statutory exclusion for investigations (*see* U.S. Br. 42-43) does not apply because the DOJ's investigation is a "general investigation[]" as described in 44 U.S.C. 3518(c)(2)—*i.e.*, one "other than information collected in an antitrust investigation . . . undertaken with reference to a category of individuals or entities such as a class of licensees or an entire industry." Amore Br. 51-52 (citing 44 U.S.C. 3518(c)(2)). "[T]he phrasing of that proviso—and particularly the exclusion of antitrust actions—indicates that a 'general investigation' of a class or industry refers to an investigation *of the group as a group* rather than a widespread investigation of such a group or industry's members, such as [the] investigation in to HAVA and NVRA compliance by various states." Authority to Obtain & Share Statewide

Voter Roll Data, 50 Op. O.L.C. (May 12, 2026) (slip op. at 33), https://www.justice.gov/olc/media/1440346/dl.

Third, Secretary Amore argues that the DOJ "initiat[ed] a new collection of information," E-Government Act § 208(b)(1)(A)(ii) and (B)(i), by requesting information from the State that would be new to DOJ. Amore Br. 52. He has no response to the United States' textual argument that the DOJ's demand did not begin a new collection of information (U.S. Br. 43-45) and so argues that the United States's position is "creative" and "would render the PIA requirement a nullity for the vast amount of information DOJ collects from pre-existing records" (Amore Br. 52). This policy argument "c[annot] overcome the statute's plain language, which is [a court's] primary guide to Congress' preferred policy." *Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1, 21 (2017) (internal quotation marks and citation omitted).

### C. Federal law preempts any contrary Rhode Island privacy law.

Congress enacted broad regulations over the conduct of federal elections in the two statutes at issue in this litigation pursuant to its authority under the Elections Clause. U.S. Br. 45-48. Title III imposes a "sweeping" obligation on election officials to preserve and, on demand of

the Attorney General, to produce registration records pertaining to federal elections, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), and imposes its own privacy protections for such under Section 20703, *see* 52 U.S.C. 20704. To the extent Rhode Island privacy law poses a barrier to the Attorney General's demand under Title III for Rhode Island's unredacted SVRL, the CRA preempts that state law. *See* U.S. Const. Art. VI, Cl. 1.

Defendants contend that there is no conflict between federal and state law because Title III does not require the disclosure of personal and sensitive voter information. Amore Br. 53-55; District 1199NE Br. 43-44. To this end, defendants insist that the interpretation of Title III's coverage should be guided by the interpretation of the public-inspection provision of the later-enacted NVRA, which allows redactions of personal voter information. Amore Br. 54-55; District 1199NE Br. 44. As the United States explained in its Opening Brief (at 29), however, this argument fails because the reasons underlying this Court's holding that the NVRA's public-inspection provision allows for redactions do not carry over to Title III's inspection provision for the Attorney General. U.S. Br. 29-30. Indeed, if Title III only entitled the Attorney General to records

redacted of personal information, there would be no reason for Section 20704, which prohibits him from disclosing produced records except under limited circumstances. U.S. Br. 29-30.

## III. If this Court reverses, it should instruct the district court to order immediate production of the SVRL.

For the foregoing reasons, this Court should reverse the district court's Order dismissing the United States' Title III claim and denying the United States' Motion to Compel and remand with instructions to order Secretary Amore to immediately produce the requested unredacted SVRL. Contrary to the contention of the District 1199NE defendants (at 48-49), there is no need to remand for discovery into whether the United States' asserted purpose is pretextual. As the United States explained in its Opening Brief (at 21-23, 30-31), defendants may not challenge the factual accuracy of the basis and purpose for the DOJ's demand.

Also, the United States has not "invite[d] remand proceedings on its compliance with the Privacy Act." District 1199NE Br. 49. The United States acknowledged the possibility that, to the extent the district court found particular information must be withheld based on 5 U.S.C. 552a(e)(7), it could tailor its order accordingly. That acknowledgement does not open up the issue of compliance with the Privacy Act because

the United States has so complied. Moreover, such tailoring would in no way alter the State's obligation to comply with the Attorney General's demand. *See Kennedy v. Lynd*, 306 F.2d 222, 230 (5th Cir. 1962) (acknowledging district courts' authority to issue protective orders in enforcing 52 U.S.C. 20705).

## CONCLUSION

For the reasons stated in this brief and the United States' Opening Brief, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and remand with instructions to order Secretary Amore to immediately produce the requested unredacted SVRL.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

Date: September 4, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 6421 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: September 4, 2026

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney